UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

YEHUDA SIGALIT,                                    Case No.: 1:21-cv-08921(AT)

                        Plaintiff,

-against-                                          ANSWER WITH AFFIRMATIVE
                                                   DEFENSES AND
                                                   COUNTERCLAIMS

JOSSEF KAHLON,

                        Defendant.
------------------------------------------------------------------x
JOSSEF KAHLON,

                Counterclaim-Plaintiff,

-against-

YEHUDA SIGALIT AND AVRAHAM YEHUDA,

                Counterclaim-Defendants.

-------------------------------------------------------------------x

      Defendant and Counter-claim Plaintiff Jossef Kahlon ("Kahlon"), by his attorneys, Naidich

Wurman, LLP., as and for his Answer with Affirmative Defenses and Counterclaims to the

complaint of Yehuda Sigalit ("Complaint") respectfully shows and alleges as follows:

      1.   Denies the allegations contained in paragraph 1 of the Complaint and specifically denies

that there ever were any unauthorized or unmatched distributions to Kahlon or any other assets, or

valuable benefits received, accrued, or taken by him improperly.

      2.   Admits the allegations contained in paragraph 2 of the Complaint but avers that the

plaintiff's name is actually Sigalit Yehuda and that she is the wife of Avraham Yehuda and is

acting as his agent or straw person in the pursuit of this action.

3. Admits the allegations contained in paragraph 3 of the Complaint.

4. That the allegations contained in paragraph 4 of the Complaint assert legal conclusions to which no response is required, however, Kahlon does not contest this Court's jurisdiction.

5. That the allegations contained in paragraph 5 of the Complaint assert legal conclusions to which no response is required, however, Kahlon does not contest venue in this Court.

6. Denies the allegations contained in paragraph 6 of the Complaint and avers that even if Sigalit was a 50% member of TJ Management Group, LLC., ("the Company") that she is not entitled to any receipt of income, property or assets from the Company as she made no investment in the Company, paid nothing for her pleaded membership interest, and there is no other agreement that would entitle her to share in any income, proceeds or assets of the Company.

7. Admits the allegations contained in paragraph 7 of the Complaint and respectfully refers the Court to a deed dated September 10, 2007, executed on behalf of Capital TT LLC as the sole member of the grantor and the Company as grantee.

8. Denies the allegations contained in paragraph 8 of the Complaint.

9. Denies information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 9 of the Complaint except denies that Kahlon sold the property as described to Project Verte, Inc.

10. Denies the allegations contained in paragraph 10 of the Complaint and specifically denies that Kahlon received any consideration for the property and avers that the $10,000,000.00 referenced therein did not constitute a purchase price for land, either in whole or in part, but instead represented consideration due to Kahlon for services rendered.

11. Admits that Kahlon had not distributed any monies to Sigalit but denies that Sigalit is entitled to receive any monies from Kahlon, whether related to any net proceeds of the claimed

sale or for any other reason, and further avers that Sigalit is not entitled to an accounting and specifically denies that any written demand for an accounting was made on April 29, 2021 or on any other date.

12.    Defendant denies the allegations contained in paragraph 12 of the Complaint.

13.    That the allegations contained in paragraph 13 of the Complaint assert legal conclusions to which no response is required, however, Kahlon denies that Sigalit has any interest in the Company and its assets, specifically denies that they have equal interests.

14.    Admits the allegations of paragraph 14 of the Complaint to the extent that at all relevant times Kahlon has participated in the management of all bank transactions, finance activities and tax matters related to the Company and avers that Avraham Yehuda (hereinafter "Avi" or "Avraham") has been a primary actor in connection with the Company, its business, assets, activities, and its receipt of income and profits.

15.    Denies the allegations contained in paragraph 15 of the Complaint in that there was no sale of the property to Project Verte, denies that Sigalit and Kahlon are co-members of the Company, denies that Sigalit is entitled to a verified accounting and denies that Sigalit is entitled to any order or judgment in her favor in the amount of one-half (or any percentage) of any property, income or other assets or valuable benefits, and further denies that Kahlon ever received any unauthorized or improper distributions of any kind.

16.    That the allegations of paragraph 16 of the Complaint assert a legal conclusion for which no response is required, however, Kahlon avers that Sigalit is not entitled to any remedy as there is no basis for liability to her and she has not sustained any damages or losses.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

17.     Kahlon repeats and realleges the allegations contained in paragraphs 1-16 of this answer with the same force and effect as if fully set forth at length herein.

18.     That the Complaint fails to state a legitimate cause of action for which relief may be granted either in law or equity.

19.     That by reason of the foregoing, the Complaint should be dismissed.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

20.     Kahlon repeats and realleges the allegations contained in paragraphs 1-19 of this answer with the same force and effect as if fully set forth at length herein.

21.     That one or more defenses to this action are founded upon documentary evidence.

22.     That by reason of the foregoing, the Complaint should be dismissed.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

23.     Kahlon repeats and realleges the allegations contained in paragraphs 1-22 of this answer with the same force and effect as if fully set forth at length herein.

24.     That the relief sought in the Complaint is barred by the applicable statute of limitations.

25.     That by reason of the foregoing, the Complaint should be dismissed.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

26.     Kahlon repeats and realleges the allegations contained in paragraphs 1-25 of this answer with the same force and effect as if fully set forth at length herein.

27.     That Sigalit has not sustained any compensable damages and has otherwise failed to mitigate whatever she could have sustained.

28.     That by reason of the foregoing, the Complaint should be dismissed.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

29.     Kahlon repeats and realleges the allegations contained in paragraphs 1-28 of this answer with the same force and effect as if fully set forth at length herein.

30.     That Sigalit allegedly became a member of the Company in 2004, the putative sale or transfer of the property took place in 2007, and Sigalit only asserted her claims no earlier than April 21, 2021, during which the position of Kahlon changed to his prejudice, such that the claims asserted in the Complaint are barred by the doctrine of laches.

31.     That by reason of the foregoing, the Complaint should be dismissed.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

32.     Kahlon repeats and realleges the allegations contained in paragraphs 1-31 of this answer with the same force and effect as if fully set forth at length herein.

33.     That the relief sought in the Complaint is barred by the doctrine of failure of consideration.

34.     That by reason of the foregoing, the Complaint should be dismissed.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

35.     Kahlon repeats and realleges the allegations contained in paragraphs 1-34 of this answer with the same force and effect as if fully set forth at length herein.

36.     That Sigalit has already received whatever monies or payments she might possibly be entitled to by virtue of payments made directly to her husband Avraham Yehuda, such that the relief sought in the Complaint is barred by the doctrine of payment.

37.     That by reason of the foregoing, the Complaint should be dismissed.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

38.     Kahlon repeats and realleges the allegations contained in paragraphs 1-37 of this answer with the same force and effect as if fully set forth at length herein.

39.     That the relief sought in the Complaint is barred by the doctrine of waiver.

40.     That by reason of the foregoing, the Complaint should be dismissed.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

41.     Kahlon repeats and realleges the allegations contained in paragraphs 1-40 of this answer with the same force and effect as if fully set forth at length herein.

42.     That the relief sought in the Complaint is barred by the doctrine of estoppel.

43.     That by reason of the foregoing, the Complaint should be dismissed.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

44.     Kahlon repeats and realleges the allegations contained in paragraphs 1-43 of this answer with the same force and effect as if fully set forth at length herein.

45.     That the relief sought in the Complaint is barred by the doctrine of unclean hands.

46.     That by reason of the foregoing, the Complaint should be dismissed.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

47.     Kahlon repeats and realleges the allegations contained in paragraphs 1-46 of this answer with the same force and effect as if fully set forth at length herein.

48.     That the relief sought in the Complaint is barred because Avi is the real party in interest, if any, concerning the claims asserted therein, and Sigalit has failed to join a necessary and indispensable party without whom complete relief cannot be accorded.

AS AND FOR A FIRST COUNTERCLAIM

49.    Kahlon repeats and realleges the allegations contained in paragraphs 1-48 of this answer with the same force and effect as if fully set forth at length herein.

50.    Counterclaim-defendant and plaintiff Sigalit Yehuda is a citizen of the State of Israel and by virtue of being a plaintiff in the within action is subject to personal jurisdiction in the United States District Court for the Southern District of New York.

51.    Counterclaim-defendant Avraham Yehuda ("Avi") is a citizen of the State of Israel, a former citizen and resident of the State of New York who has availed himself, and currently avails himself, of access to the Courts of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York as a plaintiff, such that he has subjected himself to jurisdiction within the State of New York by availing himself of access to the Courts and also by the receipt of income from within the State, his ownership of and participation in a limited liability company organized and existing under the laws of the State of New York, and his conduct of business within the State, both in person, and by the use of United States mail, telephone communications and electronic communications, all pursuant to CPLR § 302 such that he is subject to long arm jurisdiction within this State and this Court.

52.    That because both the counterclaim-defendant/plaintiff Sigalit Yehuda and the other counter-claim defendant, Avi Yehuda, the husband of the plaintiff, are both citizens of the State of Israel and the defendant Jossef Kahlon is a citizen of the State of New York, there is complete diversity between the parties and because more than $75,000.00 is at issue in connection with the counterclaims, not only personal jurisdiction but subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332.

53.     That venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391, in that Sigalit maintains that this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, and because the counterclaims are inextricably intertwined with the claims and because Avraham, is the principal of Sigalit, who is his agent wife and co-conspirator, and with whom he is united in interest.

54.     That in addition, Avi is the real owner and member in interest of the 50% interest claimed by Sigalit in the Complaint, such that Avi and Sigalit are co-conspirators, and Sigalit is Avi's agent within the meaning of CPLR §302 thereby conferring personal jurisdiction over Avi based upon an alternate legal and factual basis.

55.     That Avi was previously sued as a defendant by Kahlon in a court located in the State of New York and caused the action to be dismissed for a claimed lack of jurisdiction.

56.     That in order to bring an action against Kahlon without subjecting himself to New York jurisdiction, Avi and Sigalit entered into a conspiracy as aforesaid for the purpose of deceiving the Court and counsel and Kahlon and the Company as described below in a fraudulent scheme in order for Avi to surreptitiously assert claims against Kahlon using Sigalit as his agent as part of that conspiracy.

57.     That Sigalit actually has no legal right to the membership interest that she claims, as she is aware and has always been aware that it is Avi who has been the member, the result being that Sigalit has perpetrated and is perpetrating tortious conduct within the State of New York consisting of malicious prosecution, abuse of process, prima facie tort, and fraud.

58.     That there is thus a conspiracy between Avi and Sigalit based upon those primary torts, a corrupt agreement between the two of them, an overt act in furtherance of that agreement, and intentional participation by the two of them in furtherance of the plan, and resultant damage or

injury to Kahlon by the imposition of a fraudulent lawsuit upon him with the attendant legal fees, court proceedings, discovery proceedings, and the negative impact of being a defendant in an action of public record casting him in a false light and accusing him of fraudulent actions and conduct.

59.     That based upon this conspiracy and an agreement between Avi and Sigalit to intentionally use deception and misrepresentations in an effort to not only misappropriate Kahlon's funds but also confidential financial information and documents to which Sigalit is not entitled, thereby causing injuries both to Kahlon and the Company.

60.     That at all times relevant herein Avi has been a 50% member of TJ Management LLC a domestic limited liability company duly organized and existing under the laws of the State of New York and has been a primary actor and *de facto* manager and managing member of the Company with full participation in, knowledge of and approval of all of the actions and activities of the Company, whether undertaken solely or partially by Kahlon or by Avi individually.

61.     That while in this action Sigalit claims to be a 50% owner of the Company, such allegation is in direct conflict with the allegations of Sigalit's attorney in this action, who, by correspondence dated April 23, 2020, and otherwise, has represented that Avi is the owner of such 50% interest in other litigation, thereby revealing the deceptive nature of Sigalit's claims in this action and demonstrating the fraudulent conspiracy between Avi as principal and Sigalit as agent.

62.     That the allegations of Sigalit's attorney in this action are in direct contradiction and conflict with the allegations of the same attorney representing Avi in other litigation and otherwise, such that both Sigalit and Avi have consented to and are subject to jurisdiction in the Southern District of New York and are a proper subject of the counterclaims asserted herein.

63.     That Avi has received, from time to time, 50% of the profits of the business operations of the Company, including but not limited to the receipt of income from so called "504 transactions".

64.     That around 2005, the Company began functioning as a private equity group after being funded in part by $200,000 received from Avi.

65.     That the Company purchased stock in private offerings and then sold the shares on the public market for a profit consistent with its business model and operation.

66.     That in August 2005, the Company registered as a foreign limited liability company, and the Company acquired a registered agent in Texas and a Texas mailing address and facilitated maintenance and repairs on a parcel of vacant property near downtown Dallas, Texas.

67.     That between 2008 and July 2010, the Company purchased penny stocks from eleven companies at a price below market rate and then expeditiously sold those stocks in the public market at market rates earning substantial profits.

68.     That neither the initial purchase nor the resales of the stock were registered in accordance with the Securities Act of 1933, as the Company and its members were operating under a good faith belief that they had a valid exemption to registration.

69.     That at all times relevant, Avi, acting on his own and for his own benefit and or jointly with Sigalit and for the mutual benefit of them both, became a primary actor in all of these endeavors, participating in the transactions and sharing the profits on an equal basis with Kahlon.

70.     That Avi's shares of the profits were delivered to him as Form 1099 income, at Avi's request, even though the distributions were in fact distributions of profit received by Avi from the "504 transactions" as a co-owner of the Company and participant in the transactions.

71.     That at all times relevant herein, Kahlon acted in good faith with respect to the legal requirements for such sales based on the facts in existence at the time, the advice of counsel, and in reliance upon existing federal case law decisions and other applicable legal authority.

72.     That after the fact, one or more staff members in the Chicago office of the United States Securities and Exchange Commission ("SEC") based upon investigations in unrelated matters, took the position that the Company was not entitled to use Rule 504 of Regulation D and that therefore the purchase and resale of the stocks in question was not permissible under the Federal Securities Laws, and that any profits received from such sales by the Company or its members should be disgorged to the SEC.

73.     That by Memorandum Opinion and Order dated September 30, 2015, the United States District Court for the Eastern District of Texas granted the motion by the SEC for summary judgment in an action entitled "United States Securities and Exchange Commission v. Yossef Kahlon and TJ Management Group LLC."

74.     That at all times relevant, Kahlon on behalf of the Company and on behalf of himself and in the joint interests and for the mutual benefit of Avi and Sigalit, defended that action vigorously with competent and specialized counsel in a good faith effort to defeat the claims of the SEC, or failing such defeat to reduce and mitigate the claims of the SEC.

75.     That although Avi and Sigalit were on notice of the claims of the SEC and the existence of that action, they took no steps to participate in its defense or to contribute to the cost of the defense or to indemnify Kahlon or to contribute to either the cost of legal defense or the damages sought by the SEC, despite due demand by Kahlon for such relief.

76.     That at the conclusion of the action, the SEC imposed a disgorgement amount of $7,758,178.00, representing profits gained as a result of the 504 sales together with pre-judgment

interest of $1,522,895.00 for a total obligation of $9,281,073.00 which was confirmed by the United States District Court in a final judgment dated September 30, 2016, which was distributed by the Company and/or Kahlon and whom are now entitled to restitution and recovery of that amount.

77.    That at all times relevant herein Avi and/or Sigalit received Avi's share of the profits for which Kahlon and the Company were held jointly and severally liable for disgorgement such that Avi and Sigalit received $3,879,089.00.

78.    That upon information and belief, the profits were actually received by Avi, who may or may not have shared them with Sigalit, and Sigalit is actually a nominee or straw person acting on behalf of Avi as the true member and in accordance with Avi's direction and instruction.

79.    That Kahlon and the Company were compelled to disgorge by judgment Avi's and Sigalit's shares of the profits that had been distributed to and received by them without any contribution by Avi or Sigalit.

80.    That as a result of continuing steadfast and good faith efforts and negotiations Kahlon, on behalf of himself individually, on behalf of the Company, and on behalf of Avi and Sigalit obtained an agreed upon reduction of the disgorgement amount by way of a Memorandum of Settlement under which the SEC agreed to accept a total settlement of $2,300,000.00 to be paid with an initial lump sum payment of $900,000.00 by November 1, 2018 followed by annual payments of $200,000.00 per year for seven years for a total disgorgement of $2,300,000.00 plus 6% interest in the event of any delinquent payment.

81.    That Kahlon has complied with the terms and provisions of the Memorandum of Settlement and made all payments required thereunder which has benefited both Sigalit and Avi

as their joint obligation has been greatly reduced and Kahlon has paid those portions of the settlement that should have been paid by Avi and Sigalit.

82.     That because Avi received 50% of the profits from all of the 504 transactions that were the subject of the SEC action, which was shared and participated in by Sigalit, Kahlon is entitled to contributions from Avi and/or Sigalit, jointly and severally, of 50% of the total amount of the final disgorgement settlement, which has been or will be paid by Kahlon, such 50% equaling $1,150,000.00 plus any interest that Kahlon has paid or will be liable for payment in the future.

83.     That both Avi and Sigalit are liable over to Kahlon jointly and severally for the amount of $1,150,000.00 plus interest pursuant to the doctrine of equitable contribution.

84.     That by reason of the foregoing, Kahlon demands judgment, jointly and severally, against Avi and Sigalit in the amount of $1,150,000.00, together with pre-judgment interest from the dates of payment of the settlement amount by Kahlon or the dates from which interest began to run against Kahlon on such settlement amount.

AS AND FOR A SECOND COUNTERCLAIM

85.     Kahlon repeats and realleges the allegations contained in paragraphs 1-84 of this answer with the same force and effect as if fully set forth at length herein.

86.     That by reason of the forgoing, Kahlon is entitled to and demands judgment against Avi and Sigalit jointly and severally for the amount of $1,150,000.00 plus interest as described above under the doctrine of common law indemnification.

AS AND FOR A THIRD COUNTERCLAIM

87.     Kahlon repeats and realleges the allegations contained in paragraphs 1-86 of this answer with the same force and effect as if fully set forth at length herein.

88.     That the counterclaim defendants have been enriched by the receipt of income and monies, the retention of which would be unjust.

89.     That by reason of the foregoing, Kahlon is entitled to and demands judgment against Avi and Sigalit jointly and severally for $1,150,000.00 plus applicable interest under the doctrine of unjust enrichment.

## AS AND FOR A FOURTH COUNTERCLAIM

90.     Kahlon repeats and realleges the allegations contained in paragraphs 1-89 of this answer with the same force and effect as if fully set forth at length herein.

91.     That the New York Limited Liability Company Law provides in relevant part that members of a limited liability company shall share profits and losses equally in accordance with their relative interests.

92.     That at all times relevant herein Avi and Sigalit received their relative share of profits as described above and they now must reimburse the Company and/or Kahlon for their relative share of losses.

93.     That by reason of the foregoing, Kahlon demands judgment against Avi and Sigalit jointly and severally for disgorgement of the profits that they received which are now losses of the Company for which Avi and Sigalit are liable over to Kahlon in the amount of $1,150,000.00 plus applicable interest.

## AS AND FOR A FIFTH COUNTERCLAIM

94.     Kahlon repeats and realleges the allegations contained in paragraphs 1-93 of this answer with the same force and effect as if fully set forth at length herein.

95.     That during the defense of the action brought by the SEC, and during the settlement and negotiations process that followed and the reduction of disgorgement that was obtained by Kahlon

and counsel retained by himself and the Company, Kahlon and the Company paid or expended $750,000 in legal fees to competent counsel whose services benefited Sigalit and Avi as members of the Company and recipients of the profits from the 504 transactions.

96.    That by reason of the foregoing, Kahlon demands and is entitled to judgment against Avi and Sigalit jointly and severally for their pro rata share of legal fees paid or incurred, that amount being the amount of $375,000.00, together with interest, by way of contribution, indemnification under the common law or by contract, unjust enrichment, or recoupment of losses paid or incurred by the Company.

## AS AND FOR A SIXTH COUNTERCLAIM

97.    Kahlon repeats and realleges the allegations contained in paragraphs 1-96 of this answer with the same force and effect as if fully set forth at length herein.

98.    That as co-owners of the Company, Siglait and Avi were and remain in a confidential or fiduciary relationship with Kahlon, owing Kahlon the duties of loyalty, confidentiality and trust respecting all matters involving or affecting the Company and its assets, income and lawsuits.

99.    That at all relevant times Avi has been a primary actor in the conduct and activities of the Company and has received at his direction 50% of all profits arising from the same.

100.    That by reason of the receipt of such profits by Avi and/or Sigalit as his nominee, Kahlon is entitled to a verified accounting from Avi and Sigalit setting forth a statement of account of their dealings with the Company and its property and earnings including without limitation their share of the net proceeds and profits of the Company's 504 sales.

101.    That following such accounting, Kahlon is entitled to an order adjudicating his objections to such an accounting and to final judgment in his favor in the amount of the receipts of income and property by Avi and Sigalit, their share of which was disgorged by Kahlon to the

SEC, and the value of benefits received or accrued by Avi and/or Sigalit, whether the receipt of profits, disgorgement of profits by Kahlon, payment of legal fees by Kahlon, or otherwise, under the doctrine of equitable accounting.

## AS AND FOR A SEVENTH COUNTERCLAIM

102.     Kahlon repeats and realleges the allegations contained in paragraphs 1-101 of this answer with the same force and effect as if fully set forth at length herein.

103.     That between 2007 and the date hereof, Kahlon on behalf of the Company, or the Company itself on behalf of all of its members, paid or incurred certain sums consisting among other things of real estate taxes, maintenance, and ancillary expenses in connection with the real property owned by the Company and described in the Complaint as 3450 East Ledbetter Drive, Dallas, TX.

104.     That pursuant to the Common Law, the limited liability company law of the State of New York, and agreements between the parties, express or implied, Siglait and Avi, jointly and severally are liable to the Company and Kahlon for their pro rata share of such expenses, which preserved the property for the benefit of all, including Avi and Sigalit, and to which Avi and Sigalit contributed nothing.

105.     That the amount of such expenses and real estate taxes paid or incurred equals the amount of $60,000.00 for real estate taxes alone for the period of 2010 to date.

106.     That the Complaint alleges that the Company invested $800,000.00 in the Texas property which is actually accurate and 50% of which was paid directly or indirectly by Avi by way of deduction from monies that he had received or was to receive from the Company, such that Avi recognized and acknowledged by word and deed that he was responsible for reimbursing Kahlon for 50% of all such expenses.

107.     That by reason of the foregoing, Kahlon demands judgment against Avi and Sigalit, jointly and severally in the amount of $60,000.00, representing their pro rata 50% share of the said expenses and taxes together with interest, under the doctrines of unjust enrichment and equitable recoupment, and pursuant to the agreement between the parties.

## AS AND FOR AN EIGHTH COUNTERCLAIM

108.     Kahlon repeats and realleges the allegations contained in paragraphs 1-107 of this answer with the same force and effect as if fully set forth at length herein.

109.     That by reason of various writings between the parties, oral agreements, and the conduct of the parties, a contract was formed between the parties, the terms of which was that Kahlon on the one hand and Avi and Sigalit on the other hand would share and be responsible equally for all profits and losses and income and expenses as *de facto* partners and/or joint venturers.

110.     That Avi and Sigalit have breached their contractual obligations and fiduciary duty by failing to pay or reimburse Kahlon and/or the Company for their share of losses and expenses as described hereinabove.

111.     That in addition to the $2,300,000.00 of disgorgement, the $750,000.00 of legal fees and the $60,000.00 of real estate taxes and expenses, Kahlon and the Company also sustained losses in the form of loss of investment of various stocks that had been purchased on behalf of all parties and for their account which became worthless as a result of the belated and unexpected SEC disgorgement action .

112.     That Kahlon, with the knowledge and consent of Avi, utilized his own personal funds to permit the Company to purchase such stocks from time to time with the expectation that

the stocks would be sold at a profit and that the profits would be equally divided between Kahlon and Avi who had agreed that all profits and losses would be shared equally.

113.    That because of the actions of the SEC, it became necessary to cancel the sale of the stocks that had been purchased with Kahlon's funds, the result being that the stocks became virtually worthless and the entire investment of $3,290,000.00 derived from Kahlon's personal funds were irretrievably lost.

114.    That by virtue of the provisions of the limited liability company law, the agreements between the parties, the conduct of the parties, and the fact that Avi is responsible for 50% of the losses sustained, Kahlon is entitled to judgment against Avi for the sum of $1,645,000.00 plus interest from the date of the loss.

115.    That as a result of the foregoing, the parties collectively lost in investment in various stocks totaling $3,290,000.00, 50% of which should be allocated and incurred by Siglat and Avi.

116.    That by reason of the foregoing, Kahlon demands judgment against Siaglit and Avi jointly and severally for the sum of $1,645,000.00.

<u>AS AND FOR A NINTH COUNTERCLAIM</u>

117.    Kahlon repeats and realleges the allegations contained in paragraph 1–116 of this answer with the same force and effect as if fully set forth at length herein.

118.    That the counterclaim-defendants, Avi and Sigalit, are liable to Kahlon for the sum of $1,150,000.00 under the doctrine of money had and received.

119.    That by reason of the foregoing, Kahlon demands judgment against Siaglit and Avi jointly and severally for the sum of $1,500,000.00.

## AS AND FOR A TENTH COUNTERCLAIM

120.     Kahlon repeats and realleges the allegations contained in paragraph 1–119 of this answer with the same force and effect as if fully set forth at length herein.

121.     That at all times relevant, there was a confidential and/or fiduciary relationship between Avi and Kahlon as partners in business and members of the Company.

122.     That at all times relevant, Avi promised, either expressly or by implication through words and deeds, that he would restore any monies, properties, or distributions that he received from the Company to the Company and for Kahlon's benefit if such circumstances would arise that would call for such a restoration.

123.     That in reliance upon their confidential relationship and the promises described, Kahlon caused the Company to distribute and pay over to Avi monies in the amount of $3,879,089.00 as described hereinabove.

124.     That Avi had breached the promises described herein with the result being that Avi has been unjustly enriched.

125.     That by reason of the foregoing, Kahlon demands and is entitled to the imposition of a constructive trust over the funds, proceeds and distributions received by Avi totaling $3,879,089.00.

126.     That Kahlon has no adequate remedy at law.

WHEREFORE, Defendant and counterclaiming Plaintiff demands judgment as follows:

A. Judgment dismissing the Complaint in its entirety;

B. Judgment for the sum of $1,150,000.00 plus interest on the First Counterclaim;

C. Judgment for the sum of $1,150,000.00 plus interest on the Second Counterclaim;

D. Judgment for the sum of $1,150,000.00 plus interest on the Third Counterclaim;

E.  Judgment for the sum of $1,150,000.00 plus interest on the Fourth Counterclaim;

F.  Judgment for the sum of $375,000.00 plus interest on the Fifth Counterclaim;

G.  Judgment awarding an equitable accounting on the Sixth Counterclaim;

H.  Judgment for the sum of $60,000.00 plus interest on the Seventh Counterclaim;

I.  Judgment for the sum of $1,645,000.00 plus interest on the Eighth Counterclaim;

J.  Judgment for the sum of $1,150,000.00 plus interest on the Ninth Counterclaim;

K.  Judgment imposing a constructive trust on all funds received by Avi in the approximate

sum of $3,879,089.00 for the Tenth Counterclaim; and

L.  Together with interest, the costs and disbursements of this action, and such other and

further relief as to the Court may seem just and proper.

Yours, etc.

Naidich Wurman LLP.
Attorneys for
Defendant/Counterclaim Plaintiff
111 Great Neck Road – Suite 214
Great Neck, NY 11021
(516) 498-2900

TO:   Steven R. Haffner
GORDON & HAFFNER, LLP.
Attorneys for Plaintiff
480 Mamaroneck Avenue
Harrison, New York 10528
(718) 631-5678