**GORDON & HAFFNER, LLP**
**Attorneys at Law**
480 Mamaroneck Avenue
Harrison, New York 10528
----------
(718) 631-5678

December 18, 2022

<u>VIA</u> <u>ECF</u> and EMAIL: Torres_NYSDChambers@nysd.uscourts.gov
Hon. Analisa Torres
United States District Judge
United States District Court
40 Foley Square, Room 240
New York, NY 10007

Re:    *Sigalit Yehuda v. Jossef Kahlon,* 21-cv-08921 (AT)

Dear Judge Torres:

We represent the Plaintiff and Counterclaim Defendants in the above-referenced case. I write, pursuant to your Honor's Individual Rule III (A)(ii) and III (C) (iii) ("Rule"), in response to defense counsel's pre-motion letter dated December 9, 2022 (DE #51)[1] ("Pre-Motion Letter").

***Counterstatement of Facts Alleged, All of Which Are Undeniable or Can Be Proven***

Plaintiff became a 50% member of TJ Management Group LLC (the "Company") in or about 2004 and, to this date, remains a 50% shareholder in the Company. Defendant Jossef Kahlon owns, and at all relevant times owned, the other 50% membership interest. In or about 2007, the Company acquired title to real property known as 3450 Ledbetter Drive, Dallas, Texas (the "Property"). Around April 2020, Plaintiff learned that Defendant had offered to sell the Property to Project Verte, Inc. ("PVI"), and that PVI had agreed to purchase it, for $10,000,000.  In lieu of cash consideration, at Defendant's request, PVI issued 50% of its capital stock, valued at $10,000.000, to Defendant's corporation, TNJ Holdings, Inc. ("TNJ"), upon receipt of which TNJ became a 50% founding shareholder of PVI. Defendant's subsequent denials that Plaintiff has any interest in TNJ or in PVI, and his rejections of her written demand to account for the Company's PVI transaction (and others), led to this lawsuit. Contrary to Defendant's contention, Plaintiff does not seek a final judgment of $5,000,000. Rather, Plaintiff seeks, *inter alia*, a declaration that she has a one-half interest in and claim to the PVI shares received by TNJ.

***Defendant's Asserted Grounds for Summary Judgment***

    A.  <u>Failure to State a Cause A Cause of Action</u>

Initially, dismissal for "failure to state a cause of action" is relief available under Fed. R. Civ. Proc., 12, not under Fed. R. Civ. Proc 56. The *Ustian, Parker and F.D.I.C.* cases cited in Defendant's Pre-Motion Letter (p. 2) are inapposite, since all decided motions under FRCP 12(b)(6), not under FRCP 56.

---

[1] Unfortunately, a client emergency, i.e., a NYC DOB emergency tear down order, prevented my filing this letter Friday. I apologize and ask that this short delay, which caused no prejudice to Defendant, be excused.

Hon. Analisa Torres
December 18, 2022
Page 2

Turning to the merits, Defendant's pre-motion letter is entirely conclusory and thus subverts the very purpose of your Honor's Rule. In particular, Defendant has failed to identify a single element of Plaintiff's equitable accounting claim -- the only cause of action asserted in the Complaint (DE #1) -- which he believes is inadequately pled or otherwise defective. The letter thus fails to promote any sort of informed consideration or discussion of the subject motion.

In fact, the Complaint alleges all of the elements of an equitable accounting claim. As your Honor recognized in *CBI Cap. LLC v. Mullen*, 19 Civ. 5219 (AT), 2020 WL 4016018, *7 (S.D.N.Y., July 16, 2022), *app. dism.* (Aug. 30, 2021): "Under New York law, the elements of a cause of action for an equitable accounting are: '(1) a fiduciary relationship[;] (2) entrustment of money or property[;] (3) no other remedy[;] and (4) a demand and refusal of an accounting.'" Quoting *Fuller Landau Advis. Servs. v. Gerber Fin.*, 333 F. Supp. 3d 307, 315 (S.D.N.Y. 2018).

Here, the Complaint alleges:

(1) the existence of a fiduciary relationship. *See* ¶¶ 1 (1st sentence) and 13;
(2) entrustment of money or property. *See* ¶ 14;
(3) no other remedy.  *See* ¶ 16; and,
(4) a demand and refusal of an accounting. *See* ¶ 11.

Accordingly, no credible argument can be made that the Complaint fails to state a cause of action. Nor has Defendant demonstrated entitlement to judgment of dismissal, as a matter of law, inasmuch as each of the above elements is not only sufficiently pled, but is also incontrovertible. Indeed, Defendant's position is difficult to square with his own counterclaim for an accounting. *See* Amended Answer and Counterclaims (DE # 23, *Ninth Counterclaim*).

B. <u>Fed. Rule Civ. Proc. 9(b)</u>

Likewise completely lacking merit is Defendant's urging of Fed. Rule Civ. Proc. 9(b) as a ground for dismissal.  First, contrary to Defendant's assertions, no fraud or mistake -- predicates for application of the rule -- is alleged. *See* Complaint *passim*.  Second, neither fraud nor other misconduct is a requirement for an equitable accounting under New York law. *See CBI Cap. supra.; see also Cortazar v. Tomasino,* 2013 Slip Op 32885, 2013 WL 6042775 (N.Y.Sup.Ct., Nov. 8, 2013) (citing *Morgulas v. Yudell Realty*, 161 A.D.2d 211, 213-14 (1st Dept. 1990).

C. <u>Fed. Rule Civ. Proc. 12(b)(1)</u>

Even more confused is Defendant's argument that this action must be dismissed under Fed. Rule Civ. Proc. 12(b)(1) for lack of subject matter jurisdiction. Again, no serious argument can be made, and none has been, that this Court lacks diversity subject matter jurisdiction to determine Plaintiff's state cause of action for an equitable accounting.  As alleged in the Complaint, this Court "has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), (a)(2) because this matter is between citizens of a State and of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs."  Complaint, ¶ 4. Indeed, counsel has apparently forgotten that, in Defendant's Answer, ¶ 4 (DE #23), he pled "Kahlon does not contest this Court's jurisdiction."

Hon. Analisa Torres
December 18, 2022
Page 3

    D.  <u>Statute of Limitations</u>

Like Defendant's factually vacant assertion the Complaint fails to state a cause of action (Point A, *supra*), his contention the Complaint is time-barred is entirely devoid of any factual detail, again defeating the purpose of your Honor's Rule III. Conspicuous by absence is (1) any allegation of the date the six-year statute allegedly accrued; (2) identification of any particular act or event which started the running of the statute; and (3) identification of any particular claim Defendant contends is time-barred. Moreover, the defense collides headlong with Defendant's assertion "… this action is premature at best". Pre-Motion Letter, p.2, ℙ 2.

    E.  <u>Failure to Join Necessary Party</u>

In further disregard of the purpose of Your Honor's pre-motion letter rule, Defendant simply pronounces, without analysis or authority, that the Company and TNJ are "necessary parties" in this action. Pre-Motion Letter, p.2, ℙ 1. No effort is made to explain how the absence of these entities would prevent the Court from according complete relief among the existing parties, impede either party's ability to protect its interests in the litigation, or subject either to the risk of multiple or inconsistent adjudicated obligations. Fed. Rule Civ. Proc. 19. In any event, if Defendant continues to insist that Plaintiff join the Company and TNJ as parties defendant[2], Plaintiff will accommodate him, subject to the Court's leave.

    F.  <u>Documentary Evidence</u>

Presumably, Defendant bases his "documentary evidence" defense on the deed by which the Company acquired the Property. More specifically, Defendant's argument that "the Premises was not sold by the Company to Project Verte, Inc. or anyone else …" (Pre-Motion Letter, p. 2 ¶ 1) appears to rely solely on the absence of a later recorded deed. The contention ignores what are for Defendant the difficult facts that: (i) PVI agreed to purchase the Property from Defendant for $10,000,000 and performed its obligations under that contract of sale by delivering, at Defendant's request, $10,000,000 of its stock to Defendant's company, TNJ; and (ii) TNJ successfully defended its claim to ownership of the $10,000,000 of PVI stock in an AAA Commercial Arbitration TNJ brought against its PVI co-shareholders.

Notwithstanding that PVI undisputedly delivered its stock to Defendant (TNJ) for the Property, Defendant now insists, in effect, that all of the consideration belongs to him because the Company thus far has avoided conveying a deed. Not only does Defendant's position offend equity, but his contention that "the Premises was not sold by the Company to [PVI]" contradicts law. PVI having agreed to purchase the Property and performed its side of the bargain, it is of no moment that the Company's obligation -- i.e., delivery of the deed to PVI -- remains executory. Moreover, as Plaintiff's co-member, Defendant was barred from self-dealing and owed Plaintiff an affirmative duty to communicate business *opportunities* to Plaintiff[3]. *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (1989). Defendant's claim that no sale has occurred because the Company has yet to deliver the deed thus turns the law on its head.

---

[2] Plaintiff presently can think of no claim she has against the Company.

[3] When fiduciaries engage in self-dealing, they are held accountable for any secret profit made. *R.C. Gluck & Co. v. Tankel*, 12 A.D.2d 339 (1st Dept. 1961).

Hon. Analisa Torres
December 18, 2022
Page 4

In any event, the issue whether Plaintiff, Defendant's co-shareholder, is entitled to a *pro rata* credit to true up Defendant's receipt of the PVI sales proceeds is part of the accounting both parties are seeking and by which both will be bound. Where, as here, the right to an accounting has been established and a dispute arises whether a particular asset is within the partnership, the dispute should be decided within the accounting presided over by the Court. [4]

G. <u>Standing</u>

Defendant's standing argument is another red herring. As I have explained to opposing counsel innumerable times, and as Plaintiff has testified: (1) Plaintiff and Avraham Yehuda are spouses; (2) the money invested in the Company was their joint marital property; and, (iii) the couple decided that their investment, represented by a 50% membership in the Company, would be held in Plaintiff's name, even though Mr. Yehuda was authorized, by agreement between them, to make decisions respecting their investment or the Company. In any event, as the named member, Plaintiff has standing to bring this suit under New York law. Fed. R. Civ. P. 17. Moreover, inasmuch as Defendant himself caused the membership to be issued to Plaintiff despite his knowledge he would be dealing instead with Mr. Yehuda, he should be estopped from now arguing Mr. Yehuda, rather than Plaintiff, should have been the party to sue.

H. <u>Counterclaims</u>

To the extent discernible from his letter, it appears Plaintiff intends to move for partial summary judgment of liability on his counterclaims. Pre-Motion Letter, p.3. Defendant's intended motion is, at best, problematic for the following reasons.

First, Defendant, has not cited any authority for his unstated assumption that a passive shareholder, like Plaintiff, has a legal duty to indemnify an actively culpable shareholder, like Defendant, for the personal consequences of his misconduct. Stated otherwise, Defendant has failed to demonstrate his claim is not barred by *in pari delicto* and other equitable doctrines, let alone that he would be able to eliminate triable issues going to such defenses.

Second, Defendant has failed to disclose or to explain why the SEC sued him and not Plaintiff. This fact alone justifies at least an inference that only Defendant, and not Plaintiff, was culpable for the underlying misconduct, barring Defendant from recovering any part of the fine from Plaintiff, an innocent third party, even if she allegedly benefitted from his misconduct. Not to put too fine a point on the matter, Defendant has also failed to explain why he waited a decade after the SEC's 2012 suit to assert a contribution claim against Plaintiff.

Finally, even assuming *arguendo* Defendant were somehow entitled to contribution from Plaintiff for his alleged payment of the SEC fines or settlement, his claim would be nothing more than an accounting item, to be determined and adjusted in the accounting both parties are seeking. Indeed, such an accounting may very well reveal that any amount due Defendant is dwarfed by unequal, unauthorized and secret profits he took from the Company during the period of the accounting.

---

[4] Should Defendant's verified statement of account omit his receipt of this revenue item, Plaintiff will object to his non-contribution of the asset and the appointed referee will hear and report to the Court on the issue.

Hon. Analisa Torres
December 18, 2022
Page 5

And again, Defendant's undeniable ten-year delay in making any contribution claim again speaks volumes and, at a minimum, creates an issue of fact as to whether Defendant's distributions from the Company exceeded Plaintiff's by more than the $1,645,000, he now claims Plaintiff owes him.

Your Honor's consideration of this matter is appreciated.

Respectfully submitted,

/s/ *Steven R. Haffner*
    Steven R. Haffner