UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SIGALIT YEHUDA                                    :
                                                  :
    Plaintiff,                                  :
                                                  :
             v.                          : 21-cv-08921 (AT)
                                                  :
JOSSEF KAHLON,                                    : **MEMORANDUM OF LAW IN**
                                                  : **SUPPORT OF MOTION FOR**
    Defendant/Counterclaim Plaintiff             : **SUMMARY JUDGMENT**
                                                  : **DISMISSING CLAIM AND**
             v.                          : **GRANTING JUDGMENT ON**
                                                  : **LIABILITY FOR COUNTERCLAIM**
AVRAHAM YEHUDA                                    :
                                                  :
    Counterclaim Defendant                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                                Law Office of Daniel L. Abrams, PLLC
                                                Daniel L. Abrams
                                                1250 Broadway, 36th Floor
                                                New York, NY 10001
                                                dan@lawyerquality.com

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
STATEMENT OF FACTS ....................................................................................................... 2
ARGUMENT ............................................................................................................................ 4
I.   SIGALIT'S SOLE CLAIM FOR AN ACCOUNTING IS MERITLESS AND SHOULD BE DISMISSED ............................................................................................................................ 5
II.   KAHLON IS ENTITLED TO SUMMARY JUDGMENT ON LIABILITY FOR HIS COUNTERCLAIM SEEKING CONTRIBUTION AGAINST SIGALIT AND AVI ................... 8
CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*1515 Macombs, LLC v. Jackson*, 50 Misc. 3d 795 (Civ. Ct. Bronx Cty. Nov. 23, 2015) .............. 8
*Adam v. Cutner & Rathkoph,* 238 A.D.2d 234, 242 (1st Dep't 1997)............................................ 6
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ............................................................ 4
*Atlantis Management Group II, LLC, v. Nabe,* 177 A.D.3d 542, 543 (1st Dep't 2019) ................ 6
*Dodge v. Richmond,* 10 A.D.2d 4, 14 (1st Dep't 1960), aff'd, 8 N.Y.2d 829 (1960)...................... 9
*Gottlieb v. Northriver Trading Co.*, 58 AD3d 550 (1st Dep't 2009).............................................. 7
*Guardian Music Corp. v. Guercio Enterprises, Inc.*, 459 F.Supp 2d 216, 223-24 (S.D.N.Y. 2006) ................................................................................................................................................ 8
*ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n,* 27 F. Supp. 3d 494 (S.D.N.Y. 2014), objections overruled sub nom. No. 12-CV-7183 LAK, 2014 WL 3891326 (S.D.N.Y. Aug. 8, 2014) ............................................................................................................................ 9
*Jacobs v. Cartalemi*, 156 A.D.3d 605, 608 (2d Dep't 2017).......................................................... 6
*Joseph DelGreco & Co., Inc. v. DLA Piper L.L.P.*, 899 F. Supp. 2d 268, 275-76 (S.D.N.Y. 2012) ................................................................................................................................................ 5
*Kelly v. Chester Fire Dist.,* 116 Misc.2d 334, 337, 455 N.Y.S.2d 312, 314 (Sup. Ct. Orange Cty., 1982) ......................................................................................................................................... 6
*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) ........................................................... 4
*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP,* 57 F. Supp. 3d 206, 211-12 (S.D.N.Y. 2014). ...................................................................................................................... 10
*Podell & Podell v. Feldman* (In re Leasing Consultants Inc.), 592 F.2d 103, 110 (2d Cir. 1979)10
*SEC v. Kahlon*, 873 F.3d 500, 511-12 (5th Cir 2017) ................................................................ 3, 9
*The Daisy Group v. Newport News,* 999 F.Supp. 548, 551 (S.D.N.Y. 1998)................................ 6

**Other Authorities**

CPLR 213(1)..................................................................................................................................... 7
FED. R. CIV. P. 56(a)........................................................................................................................ 4
New York LLC Law §§ 503, 504 ..................................................................................................... 8
Section 1102(b) of the New York LLC ............................................................................................ 6

# INDEX OF EXHIBITS

| | |
|---|---|
| Abrams Decl Exh. 1 | Deposition Transcript of Jossef Kahlon |
| Abrams Decl Exh. 2 | Letter From S. Haffner To J. Weiss |
| Abrams Decl Exh. 3 | Deposition Transcript of Sigalit Yehuda |
| Abrams Decl Exh. 4 | Deposition Transcript of Avi Yehuda |
| Kahlon Decl Exh. A | Form 1099's For Avi Yehuda |
| Kahlon Decl Exh. B | Irving Strauss Letter Re: Avi Yehuda |
| Kahlon Decl Exh. C | Relevant Bank Records Re: Avi Yehuda |
| Kahlon Decl Exh. D | Court Order Re: Kahlon and TJM |
| Kahlon Decl Exh. E | Deed, Property Tax Records, Title Ins. 3500 S. Ledbetter |
| Kahlon Decl Exh. F | Stock Certificates |

## **PRELIMINARY STATEMENT**

This is a case proves the adage "no good deed goes unpunished." Plaintiff Sigalit Yehuda ("Sigalit") and her husband, Avraham Yehuda ("Avi" or collectively, the "Yehudas") made more than $10,000,000 dollars from a $200,000 passive investment. Now they sue for more.

The Yehudas invested in TJ Management LLC ("TJM") and made more than $10 million dollars from 2006 to 2010. Yossef Kahlon ("Kahlon") as the operator of TJM caused TJM to pay these monies to Avi after booking profits from certain securities transactions. Kahlon not only provided the Yehudas a massive profit, he also provided full transparency, including access to TJM's banking and brokerage accounts and a daily accounting when TJM had an active trading business.

In exchange the Yehudas contributed nothing other than an initial $200,000 investment. Kahlon's reward for delivering these remarkable results was this frivolous lawsuit. But Kahlon's relationship with the Yehudas was a two-way street: Kahlon now counterclaims against the Yehudas; who never paid Kahlon back after Kahlon paid the Yehudas in profits but then returned some of the profits in a settlement with the Securities and Exchange Commission ("SEC"). The Yehudas have also failed to pay TJM expenses for legal fees, business losses, real estate taxes and related costs.

Kahlon stopped operating TJM's core business more than twelve years ago. TJM has done nothing in the past twelve years except litigate/negotiate with the SEC, and pay property taxes and maintenance costs on a vacant lot in Dallas, Texas. The Yehudas through Sigalit sue Kahlon based on a phony story about a real estate sale of this vacant lot. They know the real estate sale never happened. So does their lawyer, who even confirmed his awareness that TJM owned the property prior to filing suit. The Yehudas and their lawyer knew at all relevant times that the real estate at issue continues to be owned by TJM. The notion that TJM sold any property to Project Verte is a

1

brazen lie. As is the allegation in the Complaint that Kahlon made $10 million from the phantom sale.

The evidence establishes beyond any doubt that the property at issue, 3500 S Ledbetter in Dallas, Texas, continues to be owned by TJM. Neither Kahlon nor anybody else has profited from TJM's sale of the property, because that sale has not taken place. The Deed, tax and title insurance records show that TJM owns the property. Moreover, the Yehuda's and their lawyer have acknowledged that TJM continues to own the property. Summary judgment dismissing Sigalit's claim is warranted. Also, because neither Sigalit, who claims to own 50% of TJM, nor Avi, who received all of TJM's profits to date in a bank account in his name, has paid Kahlon or TJM any of the expenses for operating TJM, and because the underlying facts entitling Kahlon to judgment on liability are not in dispute, Kahlon moves for summary judgment on liability with respect to his Counterclaim for contribution towards TJM's losses and expenses. The amount of damages Kahlon is entitled to recover should be determined at an inquest.

## STATEMENT OF FACTS[1]

In approximately 2005, Avi sent Kahlon $200,000 for an investment in TJM. Kahlon Decl. at ¶ 3. TJM thereafter acquired title to certain land in Dallas, Texas, and also purchased and sold shares of stock in an effort to make money for TJM. Kahlon Decl. at ¶¶ 4-5, 18-19, 56.1 Statement at ¶¶ 1, 12. TJM had some success with the stock transactions, and compensated Avi with more than $10 million from 2006-2010. Kahlon Decl. at ¶ 5, Exhs. A, B and C; 56.1 Statement at ¶ 11. According to Avi and Sigalit, the monies received from TJM into Avi's account was a joint

---

[1] References to "56.1 Statement" refer to Kahlon's Rule 56.1 Statement dated January 30, 2023 and submitted in connection with this Motion. Reference to "Kahlon Decl." refer to Yossef Kahlon's Declaration dated January 28, 2023 and submitted in support of this Motion. Kahlon is also known as "Jossef Kahlon".

2

account enjoyed by both spouses, Avi and Sigalit. (56.1 Statement at ¶¶ 9-10, Exh. 3 (Sigalit Tr. at 43-47).

Eleven of TJM's transactions were eventually challenged by the Securities and Exchange Commission ("SEC"). TJM had appeared to earn profits from the transactions prior to the SEC's challenge, and Kahlon caused Avi to receive what appeared at the time to be profits from these transactions. Kahlon Decl. at ¶ 5; Exh. D; 56.1 Statement at ¶¶ 18-19. The SEC nevertheless endeavored to claw back revenue from these transactions. In the SEC's view, TJM was not entitled to rely on the exemption that TJM was relying on to effectuate these transactions, and therefore the purchase and resale of the stocks in question was not permissible. Kahlon Decl. at ¶¶ 6, 8, and Exh. D; 56.1 Statement at ¶¶18-19.

Kahlon retained counsel on behalf of himself and TJM to defend against the SEC's allegations and therefore protect TJM's previously-earned profits. Neither Sigalit nor Avi contributed monies towards this defense. Kahlon Decl. at ¶ 17; 56.1 Statement at ¶ 22. Avi ignored Kahlon's demand that he contribute money towards the defense. The legal defense ended up costing Kahlon and TJM more than a million dollars. Kahlon Decl. at ¶ 9, 56.1 Statement at ¶¶ 16, 22. The SEC sought and eventually obtained an order that more than $7.7 million in revenue previously obtained by TJM should be disgorged to the SEC along with associated relief, which included a $200,000 penalty against Kahlon, personally. Kahlon also suffered a lifetime ban from trading in penny stocks. Kahlon Decl. at ¶ 10, Exh. D, 56.1 Statement at ¶¶ 18-19.

The United States Court of Appeals for the Fifth Circuit affirmed the penalties in a 2-1 decision, holding TJM and Kahlon liable based on a "technical strict liability" violation for which no proof of scienter was required. *See SEC v. Kahlon*, 873 F.3d 500, 511-12 (5th Cir 2017). The majority based its decision on both strict liability and the discretion owed to the trial Court, but

3

without disputing the dissenting judge's observations that there was "no fraudulent injury" and "no proof of fraud" against Kahlon or TJM. *Id.*

Kahlon thereafter negotiated down his and TJM's liability to the SEC from more than $ 9 million to a settlement where Kahlon and TJM are only liable for $2,200,000 on a payment plan spanning seven years. Kahlon has caused himself and TJM to make payments necessary to be in compliance with that settlement. Kahlon Decl. at ¶¶ 15-16; 56.1 Statement at ¶¶ 15, 17-18. Neither Avi nor Sigalit has contributed anything towards either the settlement efforts or the settlement itself. Kahlon Decl. at ¶¶ 17. 20-22; 56.1 Statement at ¶¶ 16-17,22. Kahlon has periodically requested that Avi contribute to this settlement. Kahlon Decl. ¶ 17, *See also* Abrams Decl. Exh. 4, Avi Tr. at 56:14-57:5, 62:18-63:15. Avi has ignored these requests. *Id.*; 56.1 Statement at ¶ 16.

TJM owns real property in Dallas, Texas. (Kahlon Decl. at ¶¶ 4, 18, Exh. E, Deed, 56.1 Statement at ¶ 1. Kahlon has paid more than $100,000 in property taxes and other monies towards expenses related to this property. Kahlon Decl. at ¶¶ 18-20, 56.1 Statement at ¶ 8. The property has not been sold and remains TJM's property, contrary to the allegations in the Complaint. Neither Avi nor Sigalit have contributed any monies towards TJM's expenses since the initial investment. 56.1 Statement at ¶¶ 21-22; Kahlon Dec. at ¶¶ 17-21.

## ARGUMENT

Summary judgment is appropriate where the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the movant bears the burden of showing there is no genuine issue of fact, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (upholding dismissal where plaintiff defended summary judgment by relying on speculation that defendant

insurers had had certain undisclosed communications); *see also Joseph DelGreco & Co., Inc. v. DLA Piper L.L.P.*, 899 F. Supp. 2d 268, 275-76 (S.D.N.Y. 2012) ("mere speculation or conjecture as to the true nature of the facts" cannot defeat summary judgment), aff'd, 535 F. App'x 31 (2d Cir. 2013).

### I. SIGALIT'S SOLE CLAIM FOR AN ACCOUNTING IS MERITLESS AND SHOULD BE DISMISSED

In her Complaint, Sigalit asserts that Kahlon caused TJM to sell property known as 3450 E. Ledbetter Dr., Dallas Texas to a company called Project Verte for $10,000,000. *See* Cpt. at ¶¶ 7-10. This purported transaction is the entire basis for Sigalit's complaint, as she alleges that Kahlon has failed to distribute the "net proceeds" of the sale of 3450 East Ledbetter to Sigalit. Cpt. at ¶ 11. *See also* Cpt. at ¶ 15 ("By reasons of Kahlon's sale of the Property to Project Verte and the parties' relationship as co-members of the Company, Sigalit is entitled to a verified accounting from Kahlon to include a verified statement of account of his dealings with the Company and its property and earnings as set forth in above paragraph one including, without limitation, the net proceeds of the Company's sale of the Property to Project Verte, Inc.").

This claim should be dismissed because the undisputed facts show that the purported sale which is the entire alleged premise for the accounting claim *did not happen*. TJM continues to own the property at issue. Sigalit's attorney knew this even before he filed suit. While mis-addressing the Property, Counsel for Plaintiff and Counterclaim Defendant acknowledged prior to bringing this lawsuit that the Property belongs to TJM and has never been sold to Project Verte or anybody else. *See* Abrams Decl. Exh. 2. TJM did not sell its sole Texas Property and has not benefitted from any sale. Kahlon continues to pay property taxes and maintenance on the Property. 56.1 Statement at ¶ 19, Kahlon Decl. at ¶ 19, Exh. E.

5

TJM owns 3500 S. Ledbetter, which is the only relevant property. There was a sale of certain property *near* that address in Dallas which involved Project Verte, but Plaintiff should not use this sale to confuse the issue by referring to the "Texas Property" or some other misleading device; TJM has no interest in any Texas property other than 3500 S Ledbetter. The sale of property that TJM never owned is not relevant.

*First,* Sigalit cannot maintain her claim for an equitable accounting when the entire alleged factual basis of the claim is false. The right to an accounting is premised upon not just the existence of a fiduciary relationship, but on an asserted breach of a fiduciary relationship respecting property in which the party seeking the accounting has an interest. *See Jacobs v. Cartalemi*, 156 A.D.3d 605, 608 (2d Dep't 2017), *Adam v. Cutner & Rathkoph,* 238 A.D.2d 234, 242 (1st Dep't 1997); *Kelly v. Chester Fire Dist.,* 116 Misc.2d 334, 337, 455 N.Y.S.2d 312, 314 (Sup. Ct. Orange Cty., 1982) (dismissing claim for accounting where "the monies which are the subject of the demand for an accounting were not entrusted to (defendant)"), *rev'd on other grounds* 95 A.D.2d 799 (2d Dep't 1983). Sigalit cannot ask Kahlon to account for the proceeds of a sale that never happened. Moreover, since the real property remains in the hands of TJM, Sigalit has no present interest in this property, and cannot seek an accounting related to property which does not belong to her.

*Second,* and independently, Sigalit cannot prove she has no adequate remedy at law, which is an essential element of an equitable accounting. *See Atlantis Management Group II, LLC, v. Nabe,* 177 A.D.3d 542, 543 (1st Dep't 2019); *accord The Daisy Group v. Newport News,* 999 F.Supp. 548, 551 (S.D.N.Y. 1998). Here, assuming *arguendo* that Sigalit has a legitimate interest in TJM, she has an adequate remedy at law. Section 1102(b) of the New York LLC law provides,

"Any member may, subject to reasonable standards as may be set forth in, or pursuant to, the operating agreement, inspect and copy at his or her own expense, for any purpose reasonably related to the member's interest as a member, the records referred to in subdivision (a) of this

6

section, any financial statements maintained by the limited liability company for the three most recent fiscal years and other information regarding the affairs of the limited liability company as is just and reasonable."

It is undisputed that Sigalit never attempted to nor actually availed herself of her rights under Section 1102 to inspect books and records. She provides no facts for which this Court can conclude that the inspection rights provided in Section 1102 were not adequate for Sigalit to obtain the information she seeks. Nor does Sigalit allege a violation of Section 1102. Indeed, Sigalit never made a single request for information at any time until April 29, 2021, when her counsel used the pretense of a knowingly phony real estate sale to vaguely demand record going back all the way to 2004. *See* Sigalit Cpt. at ¶ 11. Her husband Avi had generous access to TJM's financial, brokerage and banking information for the entire period when TJM was running an active trading business. 56.1 Statement at ¶ 6 (Citing Exh. 4, Avi Tr. at 44-46). Avi was also provided access to TJM's attorneys during the SEC litigation. *Id.* Kahlon Decl. at ¶ 14. Indeed, Kahlon never refused to provide information to Avi or Sigalit. Exh. 4, Avi Tr. at 48:5-18.

***Third,*** and independently, to the extent that Sigalit demands an accounting going back to 2004, any legal or equitable demand that goes back more than six years from the filing of the Complaint is barred by the applicable statute of limitations for breach of fiduciary duty. *See* CPLR 213(1); *Gottlieb v. Northriver Trading Co.*, 58 AD3d 550 (1st Dep't 2009). Here, Sigalit has not claimed any breach of fiduciary duty at any time at all, much less in the six years prior to this Complaint. Indeed, TJM has done nothing of consequence since 2011, other than maintain the Texas property and engage in litigation and settlement negotiations with the SEC. Sigalit and Avi have acknowledged these facts; Sigalit could not identify a single transaction which TJM has undertaken since 2012. 56.1 Statement at ¶ 5, Exh. 3 Sigalit Tr. 76:2-4. Avi testified that TJM ceased activity no later than early 2011, observing that he wished Kahlon continued to run TJM;

7

"I didn't have any say. I thought he should continue, but he stopped." 56.1 Statement at ¶ 5, Exh. 4, Avi Tr. at 66:12-67:2.

**_Fourth,_** and to the extent that Plaintiff argues that the statute of limitations does not apply because it is an equitable claim, allowing Plaintiff to receive an accounting of transactions from 12-17 years ago is barred by the doctrine of laches. TJM is no longer operating a trading business and no longer employs its bookkeeper. Kahlon Decl. at ¶ 18. Plaintiff and her husband had complete access to the accounting of all transactions while the business was operating. 56.1 Statement at ¶ 6. Neither Plaintiff nor her husband ever asked for any accounting in the ten years after the business closed. 56.1 Statement at ¶ 6. Moreover, the transactions were wildly profitable to the Yehudas. The Yehudas cannot provide even a hint of evidence that either material information nor profits were withheld from them. Laches will bar an equitable accounting where the plaintiff has unreasonably delayed in filing suit in a manner that prejudices the defendant. *See Guardian Music Corp. v. Guercio Enterprises, Inc.*, 459 F.Supp 2d 216, 223-24 (S.D.N.Y. 2006); *1515 Macombs, LLC v. Jackson*, 50 Misc. 3d 795 (Civ. Ct. Bronx Cty. Nov. 23, 2015).

## II.   KAHLON IS ENTITLED TO SUMMARY JUDGMENT ON LIABILITY FOR HIS COUNTERCLAIM SEEKING CONTRIBUTION AGAINST SIGALIT AND AVI

It is well-settled that Members in a New York LLC share losses as well as profits. New York LLC Law §§ 503, 504. Sigalit and Avi acknowledge that they are responsible for 50% of TJM's losses; Sigalit because she claims a 50% membership interest, and Avi, because he has been the beneficiary of TJM's profits. Cite 56.1 Statement at ¶¶ 13-14; Exh. D, Avi Tr. at 17:6-19; 42:15-43:14. Sigalit and Avi benefitted from receiving more than $10,000,000 in gross profits, much of which was tied to profits TJM received on transactions which were later challenged by the SEC. Kahlon Decl. at ¶ 5, Exhs. A, B and C. TJM received some of these profits prior to the SEC claiming that revenues from these transactions ought to be disgorged. *Id.* at 6-8. TJM has

also suffered losses or incurred expenses from real estate taxes, business losses, legal fees, and maintenance costs, none of which Avi or Sigalit have contributed. *See Generally* 56.1 Statement at ¶¶ 17-23.

In 2017, by Avi's own admission Kahlon requested that Avi return certain monies that had been wired from TJM to Avi, in consideration of payments made by Kahlon and TJM to the SEC. Exh. 4, Avi Tr. at 56:14-57:5; 62:18-63:15. Neither Sigalit nor Avi have paid any of the $2,200,000 in loss suffered by TJM. Even though they have been compensated generously from profits from the very same sales for which the SEC obtained an order of disgorgement. 56.1 Statement at ¶ 17.

Sigalit and Avi are expected to argue that Kahlon is responsible for the entire loss based on the doctrine of *in pari delicto*. But that doctrine does not apply for at least three **independent reasons**. **First,** there is no suggestion that the parties' Operating Agreement was illegal or unenforceable, and therefore no reason for the Court to refrain from enforcing the parties' bargain. The *in pari delicto* doctrine does not apply unless the claim arises from an illegal or immoral contract. *See, e.g., ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d 494 (S.D.N.Y. 2014), *objections overruled sub nom.* No. 12-CV-7183 LAK, 2014 WL 3891326 (S.D.N.Y. Aug. 8, 2014) (rejecting in *pari delicto* defense to breach of lawful contract notwithstanding allegations of plaintiff's unlawful conduct in performing the contract); *see also Dodge v. Richmond*, 10 A.D.2d 4, 14 (1st Dep't 1960), *aff'd*, 8 N.Y.2d 829 (1960) ("It appears to be the rule, in this state at least, that an agreement which is lawful on its face and which does not contemplate or necessarily entail unlawful conduct in its performance is enforceable by the promisee even though he engages in unlawful activity in the agreement's performance.").

**Second,** and independently, Kahlon did not engage in any fraud or other intentional misconduct. *See SEC v. Kahlon*, 873 F.3d 500, 511-12 (5th Cir 2017). *In pari delicto* is applied

9

sparingly and ordinarily to deter intentional misconduct, not mere negligence. *MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 57 F. Supp. 3d 206, 211-12 (S.D.N.Y. 2014). The Second Circuit has ruled that "[w]hen application of the [*in pari delicto*] doctrine would not be in the public interest, the courts will permit recovery." *Podell & Podell v. Feldman (In re Leasing Consultants Inc.)*, 592 F.2d 103, 110 (2d Cir. 1979). To date Kahlon has suffered the entirety of the financial pain incurred because of the SEC's enforcement action, and also suffered a lifetime ban from trading in penny stocks. No public interest is served by further punishing Kahlon by not allowing him to enforce his rights within the LLC, nor to provide a windfall to Sigalit and Avi, who have been rewarded handsomely to the tune of more than $10,000,000 for their investment in TJM; partially because they have retained the fruits of the challenged transactions without paying any of the disgorgement.

Moreover, it is noteworthy that Kahlon stopped trading immediately after the SEC challenged the transactions. Avi encouraged Kahlon to keep going even in the face of the SEC challenge. In his testimony Avi ruefully observed "I didn't have any say. I thought he should continue, but he stopped." 56.1 Statement at ¶ 5, Exh. 4, Avi Tr. at 66:12-67:2. Avi no doubt "thought he should continue" because Kahlon had made him a fortune and was nevertheless left to contend with the SEC without any support from Avi. A passive investor who willfully accepts the fruits of conduct later declared to be unlawful is not favored in equity over an operator who made an unintentional mistake in connection with a complex regulatory landscape, and ceased the challenged activity once the mistake was identified by the SEC. There is simply no compelling reason to allow the Yehudas to preserve their windfall.

**Third**, and independently, neither the *in pari delicto* doctrine nor any other potential defense shields Sigalit and Avi from paying their share of the real estate property taxes and

maintenance costs associated with the Texas real estate, or for paying their share of the legal fees associated with defending TJM against the allegations by the SEC.

The Court should grant summary judgment on liability for Kahlon's counterclaim and order an inquest whereby the Court can assess and fix the amount of damages Sigalit and Avi owe to Kahlon.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment dismissing Sigalit's claim, grant summary judgment on liability for Kahlon's counterclaim for contribution from Sigalit and Avi, and set a date for an inquest to determine the amount of damages Sigalit and Avi owe Kahlon.

Dated: January 30, 2023

        LAW OFFICE OF DANIEL L. ABRAMS, PLLC
        1250 Broadway, 36th Floor
        New York, NY 10001
        Phone: (646) 821-4575


        By: _Daniel Abrams_____
            Daniel L. Abrams (DA 7258)