UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SIGALIT YEHUDA,                                : 
                                               : 21-cv-08921 (AT)
           Plaintiff,                        :
                                               :
      v.                                       : **DECLARATION OF**
                                               : **AVRAHAM YEHUDA**
JOSSEF KAHLON                                  :
                                               :
           Defendant/Counterclaim Plaintiff, :
                                               :
      v.                                       :
                                               :
AVRAHAM YEHUDA,                                :
                                               :
           Counterclaim Defendant.           :
                                               :
------------------------------------------------------------------x

       AVRAHAM YEHUDA hereby declares:

       1.    I am the Counterclaim Defendant in this case. I make this Declaration: (i) in opposition to Defendant/Counterclaim Plaintiff's motion for summary judgment; and (ii) in support of Plaintiff's motion for partial, interlocutory summary judgment, directing Defendant Kahlon to provide a verified statement of account of all of his dealings with the parties' company (TJ Management Group, LLC), and with its property and earnings during the period November 15, 2004 to date the accounting is provided.

       2.    In or about 2004, Defendant Jossef Kahlon ("Kahlon") asked me to invest in a a stock trading business for which he needed funds. Initially, Kahlon offered me a fifty (50%) percent interest in his company in exchange for a $200,000.00 investment. However, a few months after I provided the requested $200,000.00 investment, Kahlon advised he needed an additional $150,000.00 which he asked me to provide. I agreed to do so, increasing my investment to a total of $350,000.00 for a 50% interest in his company.

3. Shortly thereafter, by agreement with my wife, Plaintiff Sigalit Yehuda ("Sigalit"), I requested that Kahlon assign the 50% interest I had purchased in his company to Sigalit, to which he agreed. The reason for my request was that the $350,000.00 investment consisted of marital funds and, previously, our family investments had mostly been in my name. Notwithstanding the titling of the 50% interest in Kahlon's company in Sigalit's name, Sigalit and I agreed that I would deal with Kahlon and generally oversee the investment on her behalf. Kahlon agreed to this arrangement.

4. Consistent with our agreement with Kahlon, Kahlon prepared, signed and delivered to me, for Sigalit, an Assignment of Membership Interest, dated November 15, 2004, transferring to Sigalit the agreed 50% interest in Kahlon's company, TJ Management Group, LLC ("TJM"). (Exh. A to Complaint).

5. In addition to its stock trading operations, in or about 2007, TJM acquired three parcels of Texas real estate from a borrower as repayment of a defaulted loan TJM had made to the borrower. One of the three parcels was known as 3450 East Ledbetter Drive, Dallas Texas ("Tract 3"). Because the borrower had held title to the three parcels in a company named Flowerdale, LLC, the borrower assigned Flowerdale to TJM.

6. Subsequently, Kahlon caused Flowerdale to convey title to Tract 3 to TJM.

7. On or about April 16, 2020, I received a phone call from Amir Chaluts, who was Kahlon's partner in a corporation named Project Verte, Inc. ("PVI"). Mr. Chaluts advised me that PVI had purchased all three Texas parcels from Kahlon.

8. Following this call, I asked my attorney, Steven R. Haffner, to write a letter to PVI's attorney, Jordan Weiss, stating my understanding that Tract 3 was owned by TJM and that Sigalit,

TJM's 50% member[1], had no knowledge of the sale to PVI. The letter further stated that the remaining two Texas parcels were owned by Flowerdale, which Zuchaer had promised me he would assign to Zuchaer & Zuchaer Consulting Inc., a corporation in which I held one third of the shares, not Zuchaer & Zuchaer Consulting LLC, PVI's seller.

9. At the time of my telephone call with Mr. Chaluts he did not disclose to me the terms of PVI's purchase of the three Texas parcels. However, sometime after the call and my attorney's letter to PVI's Mr. Chaluts told me that he purchased the three parcels for fourteen million ($14,000,000.00) dollars, ten million ($10,000,000.00) dollars for Tract 3 and four million ($4,000,000.00) dollars for the remaining two Texas parcels.

10. Although Sigalit entrusted Kahlon with the assets of TJM and Kahlon had full management authority, it was Sigalit's and my understanding that Kahlon was obligated to notify us of TJM's sale of Tract 3 to PVI and should have done so.

11. Apart from the one loan transaction which ultimately resulted in TJM owning Flowerdale, and with it the three Texas parcels, TJM's activities until 2011 primarily involved the purchase and resale for profit of the shares of small companies.

12. Following our $350.000.00 investment, the volume of TJM's trades exploded. For example, during the period May 2008 through 2010, TJM purchased and sold over 18 billion shares for gains of almost eight million ($8,000,000.00) dollars[2].

---

[1] The Weiss letter Kahlon is relying upon mistakenly stated I was a 50% owner of TJM, when in fact Sigalit was. A revised letter correcting the mistake was prepared on April 23, 2020, but for some reason Kahlon has the uncorrected letter. A copy of the corrected April 23, 2020 letter is attached hereto as Exhibit F to the accompanying Declaration of Steven R. Haffner ("Haffner Decl.").

[2] And this volume of shares and gains were only from TJM's stock trades the SEC was investigating.

13. Although Kahlon initially needed only a few hundred thousand dollars to begin trading, a few years later, TJM's cash needs increased to enable it to fund the exploding volume of its purchases of shares for its trading operations. As a result, it retained more and more of its earnings to fund these operations. Although Kahlon never disclosed to me the amount of TJM's earnings he retained to fund TJM's ongoing investment activities and operations, my understanding is that, by 2008, he had caused TJM to retain well over one million dollars for that purpose.

14. In or about 2009, Kahlon notified me the SEC was investigating his trading activities and that TJM would need to reduce distributions in order to fund the defense and possible settlement of any SEC charges.

15. About a year later, Kahlon advised me the SEC would likely bring charges and that, because of this, he had decided he would terminate TJM's trading activities, which occurred in or about May 2011. At about the time of Kahlon's advice, TJM stopped wiring or otherwise making any distributions to us. In fact, the last distribution we received was by wire dated October 27, 2010, in the amount of $350,000.00.

16. Despite Kahlon having ended TJM's trading operations, TJM never made any final or other distribution to Sigalit and me from its retained earnings or any from any profits earned by TJM after the period covered by the October 27, 2010 distribution. Nor did TJM ever provide an accounting or documentation showing the amount of TJM's retained earnings or profits after the period covered by the October 27. 2010 distribution.

17. In addition to TJM's retained earnings as of 2011, TJM also owned Tract 3. However, I received no information from Kahlon or TJM about the expenses of Tract 3 or about any efforts or opportunities to sell that TJM asset. The first information I received about the sale

of Tract 3 to PVI came from Mr. Chaluts during his previously mentioned April 16, 2020 call to me.

18.     In or about 2017, Kahlon asked me to contribute to his defense of the SEC charges. However, he never disclosed what he was alleged to have done, or why the SEC was coming only after him and TJM. Nor did he discuss with me or Sigalit TJM's defense or settlement strategies. Finally, Kahlon refused my requests, beginning in 2011 and thereafter, for information about the amount of TJM's retained earnings and other assets in and since 2011.

19.     Kahlon again refused Sigalit's request for this information and also an accounting of his dealings with TJM, made by letter from my attorney addressed to him and dated April 29, 2021.  Kahlon's rejection of Sigalit's April 29, 2021 demand, resulted in this lawsuit.  A true and correct copy of Sigalit's April 29, 2021 demand for an accounting is attached as Exhibit E to the Haffner Decl.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 15, 2023

/s/ *Avraham Yehuda*
Avi Yehuda