

1250 Broadway
36th Floor
New York, NY 10001

February 8, 2022

**VIA ECF**

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re: *Zuchaer & Zuchaer Consulting v. Project Verte*, 20-CV-08703 (VM)

Dear Judge Marrero:

  I am the attorney for the counterclaim defendants, Jossef Kahlon ("Kahlon") and TNJ Holdings, Inc. ("TNJ"). I write pursuant to Section II(A) of Your Honor's Individual Practices respectfully requesting a ruling (or alternatively a conference) permitting Kahlon and TNJ to amend their answer to include the affirmative defenses of release, collateral estoppel, and res judicata. The Proposed Amendment, redlined from the original, is attached hereto as Exhibit A. After good faith discussions Counterclaim Plaintiff ("Project Verte") has refused to consent to the Proposed Amendment, asserting through counsel that the amendments would be futile.

  The additional defenses relate to the Interim Award of Arbitrators ("Award") dated January 11, 2022, which pending confirmation in court will eventually preclude both[1] Counterclaims against Kahlon and TNJ. The Award is attached hereto as Exhibit B.

  Briefly, the Counterclaims (Exhibit C hereto) assert that TNJ and Kahlon made a number of misrepresentations to Project Verte concerning certain property located in Dallas, Texas ("Texas Property"). TNJ allegedly uttered the misrepresentations in August of 2018 or earlier than that. Counterclaims at ¶¶ 20-23. The misrepresentations allegedly caused Project Verte to give TNJ a $10 million credit on account of TNJ enabling Project Verte to acquire an interest in the Texas Property, through an assignment from Flowerdale, LLC. Project Verte claims to have learned in the fall of 2019 that the Texas Property was worth a lot less than had been represented by TNJ, and that Flowerdale did not own the entire property. *Id.* at ¶¶ 33-40. Project Verte claims that if it had known the true facts about the Texas Property, it "would not have credited TNJ with $10,000,000 on its books…" reflecting TNJ's contribution of the Texas Property to Project Verte. *Id.* at ¶ 63.

---

[1]   There are three counterclaims; the third one does not name Kahlon or TNJ.

Phone: 646-821-4575
Fax: 646-536-8905
www.lawyerquality.com
E-mail: dan@lawyerquality.com



1250 Broadway  
36th Floor  
New York, NY 10001

The $10,000,000 credit was largely responsible for TNJ's equity interest in Project Verte. Award at 9, text and N.8.

The First Counterclaim seeks to invalidate the $10 million credit and the March 2019 Share Forfeiture and Note Transfer Agreement ("SFNTA", Exh. D hereto). Counterclaims at ¶ 65(b). The Second Counterclaim seeks the unwinding of the $10 million credit in the form of money damages, alleging that Project Verte "would not have credited TNJ with $10,000,000 on its books" were it not for TNJ's asserted misrepresentations. *Id.* at ¶ 80. Thus both Counterclaims against Kahlon and TNJ involve litigating the propriety of the so-called $10 million credit.

In May of 2020, TNJ brought an Arbitration against the majority shareholders in Project Verte, accusing the majority shareholders of illegally diluting TNJ's equity in Project Verte and eliminating TNJ's board representation through, *inter alia,* a series of unfair convertible note transactions. Following extensive document discovery, the parties therein had a five-day Arbitration hearing in August 2021. TNJ's equity interest was at the heart of the Arbitration: TNJ argued that its equity interest should revert to its initial 50% interest, while the majority shareholders argued that TNJ's interest was now less than 7%, due to the challenged convertible note transactions which TNJ claimed were legitimate.

The Award holds that TNJ has a 33% interest in Project Verte. In so holding the Award affirmed the validity and enforceability of the SFNTA which reduced TNJ's interest from 50% to 33.33%. On the other hand, the Award also declared as void and unfair a convertible note transaction which would have reduced TNJ's interest to under 7%. By affirming the SFNTA and TNJ's 33.33% equity interest which is set forth at Schedule 1 of the SFNTA, the Award raises defenses which Defendants would like to assert or clarify in an Amended Answer.

***First,*** by affirming that the SFNTA is valid and enforceable, once confirmed the Award will estop any attacks on the SFNTA's Release Provision. Project Verte and TNJ were parties to the SFNTA, and the Release Provision includes Kahlon as an affiliate of TNJ. Article 8.1 of the SFNTA has a broad Release which prohibits these counterclaims. Portions of the Release and the capitalization of the Company post-SFNTA are set forth at Page 11 of the Award. TNJ and Kahlon have been released for ***all*** claims "arising out of, relating to or in connection with…any prior agreements…insofar as they speak to intended ownership and capitalization of the Company…". SFNTA §8.1. The release by its terms is general and extends to both counterclaims Project Verte has asserted against Kahlon and TNJ, since the $10,000,000 credit TNJ received for its contribution of the Texas Property is unquestionably a prior agreement involving the capitalization of Project Verte. This credit is at the heart of both Counterclaims and reflects the majority of TNJ's initial capital investment.

Under the Delaware law that governs the SFNTA (*see* §9.2), if the language of a contract "clearly establishes a release from liability, the presumption is that the parties executing such a formal agreement

Phone: 646-821-4575  
Fax: 646-536-8905  
www.lawyerquality.com  
E-mail: dan@lawyerquality.com



**Law Office of Daniel L. Abrams**

1250 Broadway
36th Floor
New York, NY 10001

intended what they said." *Conley v. Dan-Webforming Int'l. A/S (Ltd,)*, 1992 WL 401628, at *10 (D. Del. Dec. 29, 1992). This applies even where the allegation is fraud-based, and the suggestion is that the wrongdoing was unknown at the time of the release. *Id.* at *9, 12. The Release Provision demonstrates the parties' intent to enter into a broad, mutual release of all claims. Consequently, the Release Provision bars the two counterclaims against Kahlon and TNJ.

*Second,* by affirming that the SFNTA is valid and enforceable, once confirmed the Award will estop both the attempted recission of the SFNTA and challenges to the SNFTA's share ownership as set forth in Schedule 1 of the SFNTA. As discussed above the First Counterclaim seeks recission of the SFNTA and the $10 million credit upon which much of TNJ's equity interest was based. The Second Counterclaim seeks money damages on the theory that the $10 million credit was the product of fraud. TNJ's rightful equity ownership was the central issue in the Arbitration. Collateral estoppel, or issue preclusion, "bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Postlewaite v. McGraw-Hill, Inc.*, 333 F.3d 42, 48 (2d Cir. 2003).

*Third,* the case will also be precluded by the doctrine of res judicata, or claim preclusion, whereby "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action."' *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (emphasis added). The Arbitration was the appropriate place to litigate TNJ's equity interest. The issue was in fact litigated and was at the epicenter of the Arbitration. Any claims that this interest was procured by fraud were either raised or could have been raised by Project Verte's majority shareholders in the Arbitration. To allow the counterclaims against Kahlon and TNJ to proceed to judgment after a confirmation of a final award risks inconsistent judgments, and rewards repetitive litigation.
.
Project Verte is expected to argue that it was not a party to the Arbitration. True, but its majority shareholders were. A corporation is ordinarily bound by a finding in prior litigation where the majority shareholder(s) were parties. *Wang v. Pataki*, 396 F. Supp. 2d 446, 455 (S.D.N.Y. 2005). There can be no serious doubt that Project Verte's interests were adequately represented by its majority shareholders in the Arbitration.

For the foregoing reasons, Kahlon and TNJ respectfully request permission to amend the answer in accordance with the Proposed Amended Answer and Counterclaim reflected at Exhibit A.

Respectfully Submitted,

*Daniel Abrams*
Daniel L. Abrams

Phone: 646-821-4575
Fax: 646-536-8905
www.lawyerquality.com
E-mail: dan@lawyerquality.com