UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SIGALIT YEHUDA

    Plaintiff,

        v.                 21-cv-08921 (AT)

JOSSEF KAHLON,               **MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE CROSS MOTION**

    Defendant/Counterclaim Plaintiff

        v.

AVRAHAM YEHUDA

    Counterclaim Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Law Office of Daniel L. Abrams, PLLC
Daniel L. Abrams
1250 Broadway, 36th Floor
New York, NY 10001
dan@lawyerquality.com

0

## PRELIMINARY STATEMENT

Plaintiff Sigalit Yehuda ("Sigalit") and her husband, Abraham Yehuda ("Avi" or collectively, the "Yehudas") concede that they made more than $10,000,000 dollars off of a low six-figure investment in TJ Management LLC ("TJM"). They claim to want more because of a real estate transaction that the Yehudas admit never actually happened. Their claim is frivolous. The Yehudas also admit that, while they have agreed to share losses with Kahlon, they have made no payments to Kahlon or TJM for more than eighteen years for any expenses, including expenses incurred for real estate taxes, stock losses, legal fees and penalties associated with TJM's settlement with the Securities and Exchange Commission ("SEC"). *See Generally* Avi Affidavit, ¶ 2. The Yehudas acknowledge that TJM made some payments and have requested contribution. On these undisputed facts, Kahlon is entitled to summary judgment dismissing Sigalit's claim, and also summary judgment on liability, with the precise amount of damages owed to be determined by an inquest.

## ARGUMENT

### I. THERE IS NO DISPUTE OVER THE OWNERSHIP OF THE LEDBETTER PROPERTY

In our Opening Papers, Kahlon showed that TJM continues to own the property located at 3500 S. Ledbetter Dr. ("Ledbetter Property"). Kahlon proved TJM owns the Ledbetter Property with the documents which are the quintessential hallmarks of ownership; to wit, the Deed, real estate tax statements, proof of title insurance and the sworn testimony of Kahlon. The Yehudas do not contest any of this factual evidence; instead they bizarrely assert that ownership of real estate "is a conclusion of law" instead of a matter of fact. Yehuda Response to 56.1 at ¶ 1. But there is no legal dispute over who owns this property.

The Record contains no evidence that anybody other than TJM is claiming an ownership interest in the Ledbetter Property. *See* Docket #'s 62 and 77 (Rule 56.1 Statements). The Yehudas entire case boils down to a bad-faith attempt to conflate the very real transfer of two Texas properties (Tracts 1 and 2) which were near the Ledbetter Property with the non-existent transfer of the Ledbetter Property (Tract 3). It is true that an entity which was not TJM sold two Texas properties near the Ledbetter Property to Project Verte. Contrary to Yehuda's insinuation, Kahlon's testimony about Texas land transfers refers to the properties which were actually sold, not the Ledbetter Property. *See* Yehuda MOL at 20, N. 12, citing Kahlon Tr. at 137:5-8.

In this case, the Yehudas do not and cannot allege any interest in Tract 1 or Tract 2; i.e., the Texas properties which were actually sold to Project Verte. Avi Yehuda actually tried and failed to obtain an indirect interest in Tract 1 and Tract 2 by suing Moshe Zuchaer and affiliated entities on various common law theories, claiming that Zuchaer promised to share profits from the development of these properties but did not abide by the promise. *See Generally, Avraham Yehuda v. Moshe Zuchaer, et. al.,* 21-CV-7092 (VEC) Doc. #30 (ordering dismissal of Avi Yehuda's claim on jurisdictional grounds). But more to the point, the Yehudas do not claim that TJM owns or ever owned Tract 1 or Tract 2.

As a result of the transfer of these other Texas properties, Kahlon received a credit towards an equity interest in Project Verte. The transfers of these two properties have nothing to do with this case, though the transfers have been relevant to litigation and arbitration between the principal shareholders of Project Verte. The Yehudas attempt to capitalize on ambiguous definitions of "Texas Property" and "Texas Land" from these other cases in order to make a frivolous argument appear non-frivolous. But these other cases did not involve any dispute over who owns the Ledbetter Property. To be clear, nobody is contesting or has ever contested TJM's rightful ownership of the Ledbetter Property in any litigation. Not even this one.

2

The Yehudas rely heavily on the related Southern District of New York litigation between, *inter alia*, Zuchaer & Zuchaer Consulting, LLC, Kahlon and Project Verte, Inc.  *See Generally Zuchaer and Zuchaer Consulting, LLC v. Project Verte, Inc.*, 20-CV-8703 (VM) ("Project Verte Litigation").  The Project Verte Litigation is pending but stayed due to the recent bankruptcy of Project Verte.  *See Generally Zuchaer & Zuchaer Consulting, LLC et. al., v. Project Verte, Inc.,* 20-CV-8703 (VM), Doc. 72 (ordering stay pending bankruptcy).  Far from creating any issue of fact concerning the ownership of the Ledbetter Property, in the Zuchaer Litigation Project Verte has acknowledged that TJM owns the Ledbetter Property.  *See* Haffner Aff. Exh. A, Project Verte Counterclaim at 8, ¶ 2 (Project Verte's litigation position is that "TJM owned one parcel (i.e. Ledbetter) that was supposed to have been conveyed….the fundamental purpose of the land transfer failed completely").  Neither Project Verte nor the Zuchaer Plaintiffs claim any interest in the Ledbetter Property.

The short of the Zuchaer Litigation is that Zuchaer is suing Project Verte on a note. Project Verte brought Kahlon in as a third party defendant, claiming that Kahlon tricked it into thinking the Ledbetter Property was going to be conveyed to it.  Kahlon denies this.  But more to the point, there is no dispute that the Ledbetter Property remains with TJM.  Project Verte does claim against Kahlon for money damages.  But it makes no claim to the Ledbetter Property.  Nor does the Zuchaer Litigation include a notice of pendency.

Stated another way, while Project Verte makes the unsworn allegation that the Ledbetter Property was supposed to be conveyed to it, Project Verte acknowledges that no such conveyance took place, and does not ask the presiding court to order any such conveyance.  Even if Project Verte's unsworn allegations are credited, it would only mean that Kahlon owned money to Project Verte.  It would not affect the Yehudas or TJM at all.  And it would be of no moment to the ownership of Ledbetter, which will remain with TJM no matter what happens.

3

The Yehudas also make reference to an Arbitration which was previously pending between Kahlon and the majority owners of Project Verte.  This Arbitration involved primarily the fixing of equity interests amongst the Project Verte shareholders.  The Arbitration did not involve the Ledbetter Property or adjudicate any claims of contested ownership over any real estate.  The Arbitration was decided, mostly in Kahlon's favor, without the arbitration panel making any determinations related to the Ledbetter Property. While the Panel did make a reference to the "Texas Land" which was transferred to Project Verte, the Panel did not define what "Texas Land" meant, much less include the Ledbetter Property in its definition of "Texas Land".  Indeed, there is no mention of the Ledbetter Property whatsoever in the Arbitration Award.  *See* Haffner Decl. Docket Entry 76-6, Arbitration Award at 9, N. 8.  Moreover, and despite the Arbitration increasing Kahlon's equity interest in Project Verte, the bankruptcy of Project Verte places Kahlon as a mere equity holder in a bankrupt entity; making any ability to benefit from the so-called "10 million dollar credit" speculative at best.

These other litigations simply provide no evidence that the Ledbetter Property has been sold to somebody else, nor any other evidence that is material here.  The Yehudas have set forth no genuine facts which are in material dispute.  They do not offer a single case authority to support their novel position, which appears to be that ownership to the Ledbetter Property has been placed into genuine dispute because another party who does not claim an ownership interest is seeking money damages against Kahlon for purportedly tricking it into thinking that the Ledbetter Property would be part of a sale.  The Yehudas also failed to procure a sworn statement from anybody at Project Verte.  The case *might* be different if Project Verte was claiming an ownership interest in the Ledbetter Property *and* that claim was supported with reference to admissible evidence.  But Sigalit's position is not supported by any disputed claim to the Ledbetter Property, much less sworn evidence supporting that claim.  Because there is no material factual dispute concerning TJM's ownership of the Ledbetter Property, Sigalit cannot

4

base her claim for an equitable accounting on TJM's purported failure to account for the proceeds of the non-existent transfer.

    II.    **THERE IS NOTHING TO SIGALIT'S ACCOUNTING CLAIM ONCE THE COURT CONCLUDES THAT TJM OWNS THE LEDBETTER PROPERTY**

Sigalit does not point to any allegation in her Complaint which states that Kahlon did anything wrong, other than her now-unproven allegation that Kahlon caused TJM to sell the Ledbetter Property to a company called Project Verte for $10,000,000 and failed to distribute the "net proceeds" of the sale. *See* Cpt. at ¶¶ 7-10, 11. Her pleading did not assert any other basis for seeking an accounting. *See* Cpt. at ¶ 15 ("By reasons of Kahlon's sale of the Property to Project Verte and the parties' relationship as co-members of the Company, Sigalit is entitled to a verified accounting from Kahlon to include a verified statement of account of his dealings with the Company and its property and earnings as set forth in above paragraph one including, without limitation, the net proceeds of the Company's sale of the Property to Project Verte, Inc.").

    The Complaint did not allege any wrongdoing by Kahlon other than the false allegations concerning the phony real estate sale. While Avi Yehuda now makes vague allegations concerning issues from 2008 through 2011 (a period in which Yehuda made millions of dollars without complaint), Sigalit cannot utilize Yehuda's Affidavit in opposition to a Motion for Summary Judgment to expand the scope of her case. *See Scott v City of New York Dept. of Correction*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009), *aff'd sub nom. Scott v New York City Dept. of Correction*, 445 Fed. Appx. 389 (2nd Cir. 2011). This is especially the case here, where the additional allegations in Mr. Yehuda's Affidavit (at ¶¶ 15-16, 18) are conclusory in nature, lack foundation, and concern matters which arose twelve years ago or more.

    As we pointed out in the Opening Brief with reference to prevailing New York State caselaw, the right to an accounting requires some evidence of wrongdoing. Sigalit cannot

maintain her claim for an equitable accounting when the only alleged wrongdoing has been definitively disproven. The Yehudas fail to distinguish any of the cases in the Opening Brief which show that there is no right to an accounting absent a breach of a fiduciary relationship respecting property in which the party seeking the accounting has an interest. *See Jacobs v. Cartalemi*, 156 A.D.3d 605, 608 (2d Dep't 2017), *Adam v. Cutner & Rathkoph,* 238 A.D.2d 234, 242 (1st Dep't 1997); *Kelly v. Chester Fire Dist.,* 116 Misc.2d 334, 337, 455 N.Y.S.2d 312, 314 (Sup. Ct. Orange Cty., 1982) (all cited in the Opening Brief, none of which were addressed by the Yehuda's); *accord Benedict v. Whitman Breed Abbott & Morgan*, 110 A.D.3d 935, 938 (2d Dep't 2013); 1 N.Y. Jur. 2d Accounts and Accounting, §§ 31, 32 and 36.

Moreover, the Yehudas do not distinguish Kahlon's cases which show that the Yehudas had an adequate remedy at law for seeking information about their old and lucrative stock sales and that they did not avail themselves of that remedy.

The Yehuda's case authorities at pages 20 to 21 of their Brief are inapposite. In *Koppel v. Wein, Lane & Malkin*, 125 A.D.2d 230, 234 (1st Dept. 1986), the plaintiff was seeking an accounting for sales proceeds for a real estate transaction which actually took place and had a right to an accounting of the sales proceeds. Here, the Complaint sought an accounting of a real estate "sale" which did not happen. *Ederer v Gursky*, 9 N.Y.3d 514, 525 (2007) involves a question of partnership law and the scope of personal liability to partners, and has nothing to do New York's LLC law nor any of the other issues presented here. Similarly, *Scholastic, Inc. v. Harris*, 259 D.3d 73, 90 (2d Cir. 2001) cited to New York Partnership Law § 74 and concerned a partner's right to an accounting upon dissolution. This case does not involve a partnership; nor is TJM being dissolved.

Finally, the Yehudas all but concede that the statute of limitations is a fatal problem for them, as the only TJM conduct they rely on in their Brief which Kahlon is alleged to have

6

breached his fiduciary duty and occurred in the last six years is the phony real estate sale. *See* Yehuda Brief at 22.

### III. KAHLON IS ENTITLED TO SUMMARY JUDGMENT ON LIABILITY FOR HIS COUNTERCLAIM SEEKING CONTRIBUTION AGAINST SIGALIT AND AVI, WITH AN INQUEST TO DETERMINE THE AMOUNT OF DAMAGES

There is no dispute that the Yehudas have made millions of dollars without contributing a penny to TJM in at least the past eighteen years. With no facts to speak of, the Yehudas introduce a number of legal doctrines which either do not apply at all or, at best for the Yehudas are issues to be determined as part of the inquest.

***First,*** the Yehudas argue in terse and conclusory fashion that judicial or equitable estoppel apply. Yehuda Brief at 23-24. They do not offer any supporting cases for either doctrine. Nor do they suggest any equities amongst these parties that could support the imposition of equitable estoppel. As for the doctrine of judicial estoppel, they do not offer proof that Kahlon adopted an inconsistent position in a prior case. Moreover, to the extent they claim that the SEC litigation is the predicate for judicial estoppel, it is a matter of record that Kahlon lost that case. "[T]he doctrine of judicial estoppel will be applied when a party has secured a judgment in his or her favor by adopting the prior position, and then has sought to assume a contrary position simply because his or her interests have changed" *Ferreira v. Wyckoff Hgts. Med Ctr.,* 81 A.D.3d 587, 588, 915 N.Y.S.2d 631 (2d Dept., 2011); *accord New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (applying the same rule under federal law). The doctrine cannot apply to preclude a litigant who lost the first case.

***Second,*** the Yehudas argue that Kahlon lacks standing because TJM is the real party in interest. Yehuda Brief at 25-26. The Yehudas employ rank hypocrisy here, as they started this lawsuit by suing Kahlon personally and not joining TJM, even through their (frivolous) allegation is that TJM itself sold property and failed to account for the proceeds of the sale. In

any event, TJM is not a necessary party here.  A limited liability company is not a corporation; members of a limited liability company owe fiduciary duties to each other.  *Out of the Box Promotions, LLC  v. Koschitzki,* 55 AD3d 575 (2nd Dept. 2008); *Willoughby Rehab. and Health Care Center, LLC v. Webster,* 13 Misc.3d 1230A (Sup.Ct.Nassau Cty 2006), order aff'd 46 AD3d 801 (2nd Dept. 2007)["a member of a limited liability company, has a fiduciary obligation to others in the partnership or limited liability company which bars not only blatant self-dealing, but also requires avoidance of situations in which the fiduciary's personal interest might possibly conflict with the interests of those to whom a fiduciary owes a duty of loyalty..."]; *Salm v. Feldstein,* 20 AD3d 469 (2nd Dept. 2005).

But for Kahlon's unilateral funding of TJM following more than a decade of the Yehudas failing to put in anything, TJM would have sustained damage. However, because Kahlon has continuously funded the shortfall as and when needed, TJM has not sustained any damage.  But Kahlon has.  Accordingly, Kahlon is the real party in interest.  *See McGuire Children LLC v. Huntress,* 24 Misc.3d 1202(A) (Sup.Ct. Erie County 2009) ("the fiduciary duties owed by partners and LLC members are owed directly to one another and ordinarily cause harm first to the fellow partner or LLC member...").[1]

Assuming *arguendo* that the Court concludes that TJM is a necessary party here, the Court should provide leave for Kahlon to make a motion to add TJM as a plaintiff party prior to the inquest.

---

[1]  The Yehudas case cites at pages 25 and 26 at best concern improper efforts by LLC members to sue third parties for harm done to the LLC.  None of their cases are like this one, which involve one LLC member suing another for harm created by a failure to contribute to the LLC under circumstances where the claimant has made up for the shortfall of the defendant and sues for contribution.

*Third*, the Yehudas argue that they have no contribution obligation because the is no capital call provision in the LLC agreement.  The argument is a non-sequitor as it responds to nothing in particular in Kahlon's papers.  Kahlon has not alleged that the Yehudas were required to meet a capital call.  Nor does Kahlon sue for breach of any capital call request.  The Yehudas requirement to contribute to the losses of TJM arise from their fiduciary relationship with Kahlon, and do not require any capital call provision. The Yehudas breached fiduciary duties to both TJM and Kahlon. Those duties arise from being an LLC member.

*Fourth,* the Yehudas challenge the quantum of evidence put forth by Kahlon showing that Kahlon extinguished TJM's liability to the SEC by entering into a settlement agreement with the SEC and timely making payments to the SEC.  The Yehudas purport to poke holes in Kahlon's evidence, but they set forth no evidence of their own.  Discovery in this case is over.  The Yehudas had time to seek whatever documents they wanted to seek from Kahlon.  If Kahlon's discovery was somehow deficient, the Yehudas could have made a motion to compel.  The evidence Kahlon has submitted to the Court in support of summary judgment is more than adequate to sustain a finding on liability.  *See* Kahlon Decl. at ¶¶ 15-16.  Some of the questions the Yehudas ask about the SEC settlement might be relevant to the *amount* of damages to be ascertained at the inquest, but it is clear that Kahlon has caused TJM to settle a major claim and that TJM and the Yehuda's have benefitted from those efforts.  At least some money is due Kahlon from the Yehudas.

*Fifth*, the Yehudas raise the defense of *in pari delicto*, but the cases they cite do not apply the doctrine where the parties have an otherwise legal agreement and only incidentally involved some illegal performance.  Yehuda Br. at 30-31.  The Yehuda's attempt to distinguish the *ImagePoint* case fails, particularly without any case cites showing that any federal or state court will apply *in pari delicto* as a defense to one LLC member paying another LLC member in

the context of an enforceable LLC agreement.  The Yehudas also concede the Kahlon was not found to be liable for fraud, that Kahlon ceased his trading activity as soon as the SEC, and that Avi nevertheless encouraged Kahlon to continue trading.  The Yehudas do not explain why this Court is somehow serving equity in allowing the Yehudas to retain this windfall.  Moreover, the Yehudas concede by silence that the *in pari delicto* defense does not shield their failures to pay for legal fees, or real estate taxes and other costs associated with the Ledbetter Property.

**Sixth**, the Yehudas try to link Kahlon's request for an inquest to determine damages with the Sigalit's request for an accounting.  The two requests have nothing to do with each other.  Sigalit seeks an accounting for the proceeds of a phony real estate transaction.  Kahlon seeks an inquest so that the Court can determine how much money the Yehuda's owe him based on millions of dollars worth of documented payments which followed the Yehuda's making more than $10 million off of a low-six figure investment.  Just because Kahlon is entitled to an inquest under these circumstances does not make Sigalit's accounting claim any less frivolous.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment dismissing Sigalit's claim, grant summary judgment on liability for Kahlon's counterclaim for contribution from Sigalit and Avi, and set a date for an inquest to determine the amount of damages Sigalit and Avi owe Kahlon.

LAW OFFICE OF DANIEL L. ABRAMS, PLLC
1250 Broadway, 36th Floor
New York, NY 10001
Phone: (646) 821-4575

By: *Daniel Abrams*
      Daniel L. Abrams (DA 7258)

10