UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YEHUDA SIGALIT,

                              Plaintiff,

          -against-

JOSSEF KAHLON,

                              Defendant/
                              Counterclaim Plaintiff,

          -against-

AVRAHAM YEHUDA,

                              Counterclaim Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/30/2023

21 Civ. 8921 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Yehuda Sigalit, brings this action against Defendant, Jossef Kahlon, seeking an equitable accounting. *See* Compl. ¶ 1, ECF No. 1. Kahlon, for his part, brings ten counterclaims against Sigalit and her husband, Avraham Yehuda, (collectively, the "Yehudas") asserting, *inter alia*, causes of action for equitable contribution, indemnification, unjust enrichment, breach of contract, and breach of fiduciary duty. *See* Countercl. ¶¶ 49–126, ECF No. 25.

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 61, 74. For the reasons stated below, Sigalit's motion is GRANTED, and Kahlon's motion is DENIED.

**BACKGROUND[1]**

In 2004 or 2005, the Yehudas invested money in TJ Management Group, LLC ("TJM"), a New York limited liability company that was operated by Kahlon, in exchange for a fifty-percent

---

[1] The facts in this section are taken from the parties' Rule 56.1 statements, responses, and declarations, unless otherwise noted. Disputed facts are so noted. Citations to a paragraph in a Rule 56.1 statement also include the opposing party's response. "[W]here there are no citations[,] or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (alteration omitted). On a motion for summary judgment, the facts must be read in the light most favorable to the non-moving party. *Id.* at 69.

interest in the company.  Kahlon Decl. ¶¶ 1, 3, ECF No. 64; Avraham Decl. ¶¶ 2–3, ECF No. 75.

TJM functioned as a private equity group in the stock trading business.  *See* Kahlon Decl. ¶ 3;

Avraham Decl. ¶ 2; *see also U.S. Sec. & Exch. Comm'n v. Kahlon*, 141 F. Supp. 3d 675, 677 (E.D.

Tex. 2015), *aff'd*, 873 F.3d 500 (5th Cir. 2017).  TJM purchased and resold penny stocks, and it

passed along profits of those sales to the Yehudas.  *See* Kahlon Decl. ¶ 5; Avraham Decl. ¶¶ 12–13,

15; Pl. 56.1 ¶¶ 10–12, ECF No. 77.

In 2010 or 2011, the U.S. Securities and Exchange Commission ("SEC") advised Kahlon that

it was considering charges against him for the unregistered sale of securities, and in May 2011,

Kahlon stopped conducting the transactions in question.  *See* Kahlon Decl. ¶¶ 6, 8; Avraham Decl.

¶ 15; *Kahlon*, 873 F.3d at 503.  In 2012, the SEC filed a complaint against Kahlon and TJM in the

Eastern District of Texas for the unregistered sale of securities.  *See Kahlon*, 873 F.3d at 502–03.  In

2016, the district court granted summary judgment in favor of the SEC, and in 2017, the Fifth Circuit

affirmed.  *See id.*; Kahlon Decl. ¶¶ 10–11.  After judgment, Kahlon and TJM settled with the SEC,

reducing their liability from over $9 million to $2.2 million.  Kahlon Decl. ¶ 15; Pl. 56.1 ¶ 15.

Kahlon alleges that attorney's fees for Kahlon and TJM exceeded $1 million.  *See* Kahlon Decl. ¶ 9.

Kahlon asked the Yehudas to pay a portion of the fees, and the Yehudas ignored the request.  *See id.*

¶ 16; Avraham Decl. ¶ 18.

At some point in time, TJM purchased real estate property in Dallas, Texas (the "Property").[2]

Kahlon Decl. ¶ 4; Avraham Decl. ¶ 5.  The Yehudas allege that Kahlon later sold the Property to

Project Verte, Inc. for $10 million; Kahlon claims that TJM did not sell the Property and continues to

own it.  *Compare* Compl. ¶¶ 9–10, *and* Avraham Decl. ¶¶ 7, 9, *with* Kahlon Decl. ¶ 19; *see also* Pl.

56.1 ¶¶ 1–4.  Kahlon does not dispute that he, or his company, received $10 million but claims that he

---

[2] Kahlon states that the address of the property is 3500 South Ledbetter Drive, Dallas, Texas.  Kahlon Decl. ¶ 4; Pl. 56.1
¶ 1.  The Yehudas state that the address of the property is 3450 East Ledbetter Drive, Dallas, Texas.  Avraham Decl. ¶ 5;
Compl. ¶ 7.

received the payment "for brokering the land not for selling the land."  Kahlon Tr. at 137:5-9, 138:13-20, ECF No. 63-1; *see* Pl. 56.1 ¶¶ 1–2; ECF No. 76-3 at 1–2; *see generally* Def. Reply at 5–7, ECF No. 81.

On November 1, 2021, Sigalit commenced this action, seeking an equitable accounting against Kahlon.  Compl. ¶ 1.  Specifically, Sigalit requested that Kahlon provide:

> a verified statement of account of Kahlon's dealings with [TJM] and its property and earnings during the period [from] November 15, 2004 to [the] date the demanded accounting is furnished, including, but not limited to, [TJM's]: (1) assets; (2) income, receipts and revenue received or accrued; (3) expenses paid or incurred; (4) distributions, dividends, salary, compensation or other monies taken or received by Kahlon (or by anyone at his direction); and, (5) all payments by [TJM] to third parties for services rendered to, or benefits received by, Kahlon (or to anyone at his direction)[.]

*Id.*  On March 29, 2022, Kahlon filed his answer and counterclaim, asserting *inter alia*, causes of action against the Yehudas for equitable contribution, indemnification, unjust enrichment, breach of contract, and breach of fiduciary duty.  *See* Countercl. ¶¶ 49–126.

On January 30, 2023, Kahlon moved for summary judgment on Sigalit's equitable accounting claim and "his [c]ounterclaim for contribution towards TJM's losses and expenses."  Def. Mem. at 2, ECF No. 65; *see* ECF No. 61.  On March 15, 2023, the Yehudas cross-moved for summary judgment on the equitable accounting claim and opposed Kahlon's motion.  ECF No. 74; Pl. Opp., ECF No. 78.

## DISCUSSION

I.   Legal Standard

Summary judgment is appropriate where the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party."  *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of demonstrating the absence of a genuine dispute of material fact by citing evidence in the record. *See Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). In doing so, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). On a motion for summary judgment, courts view the record in the light most favorable to the non-moving party. *Koch*, 287 F.3d at 165.

II.   <u>Analysis</u>

A.  Equitable Accounting

"The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property." *Soley v. Wasserman (Soley II)*, No. 08 Civ. 9262, 2013 WL 6388401, at *4 (S.D.N.Y. Dec. 6, 2013) (citation omitted). "Under New York law, the elements of an equitable accounting claim are: (1) a fiduciary relationship; (2) entrustment of money or property; (3) no other remedy; and (4) a demand and refusal of an accounting." *CBI Capital LLC v. Mullen*, No. 19 Civ. 5219, 2020 WL 4016018, at *7 (S.D.N.Y. July 16, 2020) (cleaned up). An equitable accounting occurs in two steps. First, "upon a showing that an accounting is warranted, an interlocutory decree is issued requiring the fiduciary to make an accounting." *Soley II*, 2013 WL 6388401, at *4 (citing *Wilde v. Wilde*, 576 F. Supp. 2d 595, 608 (S.D.N.Y. 2008)). Second, once the accounting is made, "a hearing is held to establish the final amounts owed to the principal." *Id.* (citing *Wilde*, 576 F. Supp. 2d at 608).

Kahlon concedes that a fiduciary relationship existed and continues to exist between him and Sigalit, *see* Countercl. ¶ 98; *see also* Pl. 56.1 at 8 ¶ 1, and does not dispute that the Yehudas entrusted him with money, *see* Kahlon Decl. ¶ 3; Avraham Decl. ¶¶ 2–3.[3]  Further, Kahlon concedes that Sigalit demanded an accounting and that he refused to provide one.  *See* Kahlon Decl. ¶ 21; Pl. 56.1 at 8 ¶ 2; Avraham Decl. ¶ 19; ECF No. 76-4.

As to the third prong, Kahlon argues that "Sigalit cannot prove she has no adequate remedy at law" because "Sigalit never attempted to nor actually availed herself of her rights under Section 1102 [of the New York LLC law] to inspect [TJM's] books and records."  Def. Mem. at 6–7.  Not so.  The right to inspect company books and records is separate and independent from the right to an equitable accounting, which "require[s] a person in possession of financial records to produce them, demonstrate how money was expended[,] and return pilfered funds in his or her possession."  *Metro. Bank & Tr. Co. v. Lopez*, 189 A.D.3d 443, 446 (N.Y. App. Div. 2020) (quoting *Hall v. Louis*, 184 A.D.3d 437, 438–39 (N.Y. App. Div. 2020)).  "Courts applying New York law have repeatedly observed that an action for an accounting is not mooted by the production of financial documents."  *Soley v. Wasserman (Soley I)*, No. 08 Civ. 9262, 2013 WL 526732, at *6 (S.D.N.Y. Feb. 13, 2013) (collecting cases).  Rather, as described above, an accounting is a two-step process to determine "the final amounts owed to the principal."  *Soley II*, 2013 WL 6388401, at *4.

Kahlon's remaining arguments are without merit.  Kahlon argues that "Sigalit cannot maintain her claim for an equitable accounting when the entire alleged factual basis of the claim is false"; specifically, Kahlon argues that the purported sale of the Property never happened and that TJM continues to own the Property.  *See* Def. Mem. at 5–6; Def. Reply at 5–7.  But Kahlon's argument is misplaced because Sigalit seeks an accounting for the $10 million consideration that Kahlon, or his

---

[3] Kahlon states that the Yehudas invested $200,000.  Kahlon Decl. ¶ 3.  The Yehudas state that they invested $350,000.  Avraham Decl. ¶¶ 2–3.

company, indisputably received in relation to the property, regardless of whether the sale actually occurred.[4]  *See* Pl. Opp. at 19.  And Sigalit's demand for an accounting extends beyond the alleged Property transaction.  *See* Compl. ¶ 1.  Whether the alleged sale of the Property occurred is irrelevant to Sigalit's claim for an equitable accounting of "Kahlon's dealings with [TJM] and its property and earnings," in which Sigalit has an interest as a fifty-percent owner of TJM.  *Id.*  For substantially the same reason, the Court rejects Kahlon's statute of limitations argument because Sigalit does not, and need not, allege a breach of fiduciary duty to sustain an equitable accounting claim.  *See Adam v. Cutner & Rathkopf*, 238 A.D.2d 234, 242 (N.Y. App. Div. 1997); *cf. CBI Capital*, 2020 WL 4016018, at *7.

Accordingly, for the reasons stated, Kahlon's motion for summary judgment on Sigalit's equitable accounting claim is DENIED, and Sigalit's motion for summary judgment on her equitable accounting claim is GRANTED.

### B.  Contribution

Kahlon separately "moves for summary judgment on liability with respect to his [c]ounterclaim for contribution towards TJM's losses and expenses."  Def. Mem. at 2; *see id.* at 8–11.  But Kahlon's motion does not identify which of his ten counterclaims he moves on and does not set forth a legal standard for his "contribution" counterclaim.  *See* Def. Mem. at 8–9.  Nor does Kahlon cite New York caselaw (or caselaw from any jurisdiction) to support his motion for summary judgment on the "contribution" counterclaim.[5]  *See id.*

---

[4] Further, Kahlon's own cited authority makes clear that "[a]n allegation of wrongdoing is not an indispensable element of a demand for an accounting where the complaint indicates a fiduciary relationship between the parties or some other special circumstance warranting equitable relief."  *Adam v. Cutner & Rathkopf*, 238 A.D.2d 234, 242 (N.Y. App. Div. 1997) (citation omitted); *cf. Jacobs v. Cartalemi*, 156 A.D.3d 605, 608 (N.Y. App. Div. 2017) (requiring breach when there no longer existed a fiduciary duty).  As stated above, the elements of an equitable accounting claim are: "(1) a fiduciary relationship; (2) entrustment of money or property; (3) no other remedy; and (4) a demand and refusal of an accounting."  *CBI Capital*, 2020 WL 4016018, at *7.  Sigalit has satisfied each element for the reasons stated.

[5] Similarly, Kahlon's first counterclaim states that the Yehudas are "jointly and severally [liable] for the amount of $1,150,000.00 plus interest pursuant to the doctrine of equitable contribution."  Countercl. ¶ 83.  Kahlon does not set forth

Rather, Kahlon notes that under the law governing limited liability companies in New York, "[m]embers in a New York LLC share losses as well as profits." *Id.* at 8 (citing N.Y. Ltd. Liab. Co. Law §§ 503, 504). Kahlon argues, therefore, that because the Yehudas have a fifty-percent interest in TJM, they are "responsible for [fifty percent] of TJM's losses." *Id.* However, Kahlon seeks contribution from the Yehudas "in consideration of payments made by Kahlon and TJM to the SEC" for the settlement in the SEC action against Kahlon and TJM, *id.* at 9, and, under New York law, "[no] member of a limited liability company . . . is liable for any debts, obligations[,] or liabilities of the limited liability company or each other, whether arising in tort, contract or otherwise, solely by reason of being such member." N.Y. Ltd. Liab. Co. Law § 609(a); *see id.* § 610; *Grammas v. Lockwood Assocs., Ltd.*, 95 A.D.3d 1073, 1074 (N.Y. App. Div. 2012) ("A member of a limited liability company cannot be held liable for the company's obligations by virtue of his or her status as a member thereof." (cleaned up)).

"[A] party may seek to hold a member of an LLC individually liable despite this statutory proscription by application of the doctrine of piercing the corporate veil." *Grammas*, 95 A.D.3d at 1074. To bring a claim under the doctrine of piercing the corporate veil, the plaintiff must show "that the shareholder exercised complete domination and control over the . . . LLC and abused the privilege of doing business in the . . . LLC form to perpetrate a wrong or injustice." *Id.* at 1075 (cleaned up); *see also Retropolis, Inc. v. 14th St. Dev. LLC*, 17 A.D.3d 209, 210 (N.Y. App. Div. 2005). Kahlon does not make such a showing here or offer any facts which support piercing the corporate veil so as to hold the Yehudas individually liable for TJM's obligations to the SEC.

---

any legal standard for the doctrine of equitable contribution or cite any caselaw that refers to this doctrine. *See generally* Countercl.; Def. Mem.

Accordingly, for the reasons stated, Kahlon's motion for summary judgment on his "contribution" counterclaim is DENIED.[6]

## CONCLUSION

For the foregoing reasons, Sigalit's motion for summary judgment is GRANTED, and Kahlon's motion for summary judgment is DENIED.

The Court shall issue a separate order setting a trial date and related pre-trial deadlines on Kahlon's counterclaims in due course.  The Clerk of Court is directed to terminate the motions at ECF Nos. 61 and 74.

SO ORDERED.

Dated: August 30, 2023
       New York, New York

ANALISA TORRES
United States District Judge

---

[6] The Yehudas' opposition papers argue, at points, that certain of Kahlon's counterclaims should be "dismissed."  *See, e.g.*, Pl. Opp. at 24–25.  However, the Yehudas do not move for summary judgment on Kahlon's counterclaims.  *See* ECF No. 74.  Therefore, the Court construes ECF No. 78 as an opposition to Kahlon's motion for summary judgment on his "contribution" counterclaim and not as a cross-motion for summary judgment on the counterclaims.