UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| SIGALIT YEHUDA | : |
| | : |
|     Plaintiff, | : |
| | : |
|                  v. | : 21-cv-08921 (AT) |
| | : |
| JOSSEF KAHLON, | : |
| | : |
|     Defendant/Counterclaim Plaintiff | : |
| | : |
|                  v. | : |
| | : |
| AVRAHAM YEHUDA | : |
| | : |
|     Counterclaim Defendant | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM IN SUPPORT OF KAHLON'S MOTION FOR PARTIAL RECONSIDERATION OF THIS COURT'S DECEMBER 31, 2013 ORDER**

Pursuant to Federal Rule of Civil Procedure 54(b) and Local Rule 6.3, Plaintiffs respectfully request that the Court reconsider a small and discrete portion of its August 30, 2023 Order. This case involves the interest holders in TJM, a company which was active in trading stocks more than a decade ago, but who's sole remaining asset is a piece of land in Dallas, Texas (the "Ledbetter Property"). Kahlon asks the Court to reconsider its factual finding that there was $10 million in consideration that Kahlon or his company "indisputably received in relation to the property, regardless of whether the sale actually occurred,". August 30 Order at 5-6 (Docket #82). The implication from the finding is that Kahlon benefitted from the Ledbetter Property in a $10 million transaction.

This finding could only have been made by the Court conflating the Ledbetter property with other, nearby land for which TJM had no interest (the "Stag Property"). There is not a shred of evidence (much less indisputable evidence) that Kahlon or his company received $10

million because of anything having to do with the Ledbetter property. The only evidence in the summary judgment record from a witness with knowledge is Kahlon's testimony that TJM's Ledbetter Property had nothing to do with this transaction. Plaintiff Sigalit did not offer any proof that the Ledbetter property was the cause of Kahlon receiving a $10 million credit in her Cross Motion for Summary Judgment. Her Rule 56.1 Statement contained exactly two affirmative assertions of undisputed fact; neither of which had anything to do with the Ledbetter Property or even real estate. *See* Docket # 77.

It is entirely unfair to saddle Kahlon with a false finding that he somehow made $10 million off of TJM's Ledbetter Property. No witness has testified to that effect. An erroneous finding which credits Kahlon with participating in such a large transaction with TJM property obviously prejudices Kahlon in further proceedings amongst the parties herein; moreover, if not corrected the false finding potentially could have collateral estoppel effects in litigation involving Kahlon and third parties as well. The Court should therefore amend its order to omit the false fact from its Order.

Under Federal Rule of Civil Procedure 54(b), interlocutory decisions "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Kliszak v. Pyramid Mgmt. Group.*, No. 96-CV-0041E, 1998 WL 268839, at *1 (W.D.N.Y. Apr. 30, 1998). Reconsideration and revision of a prior decision is generally justified in any one of the following three circumstances: (1) an intervening change in controlling law; (2) new evidence; or (3) the need to correct a clear error or to prevent manifest injustice. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted).

**FACTS RELATED TO ERRONEOUS FACTUAL FINDING**

Here, it was clear error for the Court to conclude that Kahlon or his company "indisputably" used TJM's Ledbetter Property for the $10 million transaction with Project Verte ("PV"). The Court cited Page 19 of Plaintiff's Brief, but Page 19 involves Plaintiff making unsubstantiated

2

assertions; assertions either untethered to any facts in the record, or seriously misrepresenting what those facts are. *See* Docket # 78 at 19.

Page 19 of Plaintiff's Brief does contain citations to Footnotes 10 and 11 which refer to arbitrations and litigations between Kahlon, his company TNJ, Project Verte and/or other shareholders of Project Verte. None of these citations contain or cite to evidence linking the Ledbetter Property in any way to Kahlon's $10 million transaction, nor provide any findings on the subject.

The *unsworn* statement that is consistent with the Court's finding is the hearsay statement Third Party Defendant attributes to Project Verte ("PV") investor Amir Chaluts. Yehuda Decl., Docket # 75. Accordingly to Mr. Yehuda, Mr. Chaluts told him that PV had purchased **three** Texas parcels for fourteen million ($14,000,000.00) dollars: ten million ($10,000,000.00) dollars for Tract 3 (i.e., the Ledbetter Property), and four million ($4,000,000.00) dollars for the remaining two Texas parcels. (Avi Decl. ¶¶ 7-9.). Critically, Mr. Yehuda and his counsel acknowledge that there are three separate tracts of Texas land, involving two separate addresses. TJM indisputably has no interest in the other two tracts of land, which have a "Stag Road" address. Docket # 76-5, Haffner Decl. Exh. E, (Haffner letter to counsel for PV, acknowledging that TJM has an interest in the Ledbetter Property, but not the property on Stag Road).

Plaintiff also relies on PV's unverified pleading in a related case, where they claim Kahlon tricked PV into thinking Kahlon would include the Ledbetter Property in a sale. *See* Docket # 76-1, Haffner Exh. 1, Project Verte Counterclaim at 8, ¶ 2 (Project Verte's unverified litigation position is that "TJM owned one parcel (i.e. Ledbetter) that was supposed to have been conveyed….the fundamental purpose of the land transfer failed completely" because it did not include Ledbetter). But the fact remains that this was an unverified pleading, and no sworn statement tying the Ledbetter Property to Kahlon's or his company's receipt of $10 million appears anywhere in the record.

3

The Yehuda's also make reference to an Arbitration which was previously pending between Kahlon and the majority owners of PV, which included Mr. Chaluts. As we explained in the Reply Papers, the Arbitration did not involve the Ledbetter Property. While the Panel did make a reference to the "Texas Land" which was transferred from an entity controlled by Kahlon to Project Verte, the Panel did not define what "Texas Land" meant. It is unclear whether the Arbitrators included the Ledbetter Property, the Stag Property, both or neither in their definition, or whether they even seriously considered the issue of which properties to include. They had no need to consider which properties were part of the "Texas Land" in the context of the issues they had to decide. Indeed, there is no mention of the Ledbetter Property or Stag Property whatsoever in the Arbitration Award. *See* Docket # 76-6, Haffner Decl. Exh. F, Arbitration Award at 9, N. 8. The Court should not read this Arbitration Award and conflate "Texas Land" with "Ledbetter Property".

Finally, the Court observed that Kahlon "does not dispute that he, or his company, received $10 million but claims that he received the payment "for brokering the land not for selling the land."" Opinion at 2-3. Here, the Court does not distinguish between the Stag Property which TJM did not own when Kahlon's company conveyed it to Project Verte (Tracts 1 and 2) and the Ledbetter Property (Tract 3) which TJM owns. Kahlon made this very distinction on the same portion of the transcript which the Court cites (Kahlon Tr: 138:13-20):

> "Because you mentioned parcel three (Ledbetter), parcel three was never transferred not to Project Verte and not for anybody there. Parcel three that you claim in your lawsuit, that because of parcel three I got $10 million, you can go online and see TJ –" (interrupted by Plaintiff's counsel).

Double negatives aside, Kahlon is testifying that Tract 3 (Ledbetter) was not part of this transaction. Kahlon's testimony is the only actual testimony on the subject which is part of the summary judgment record, and while the testimony was interrupted and not complete, there is no

4

reasonable construction of it that amounts to an "indisputable" admission by Kahlon that Tract 3, or the Ledbetter Property, was in any way part of a transaction with Project Verte. Courts do not grant summary judgment or make factual findings based on vague snippets from depositions which are susceptible to multiple meanings, and which conflict with other evidence. *Felton v. Board of Com'rs of Greene County*, 796 F.Supp. 371, 376 (S.D.Ind. 1991).

## CONCLUSION

For the reasons stated above, Kahlon respectfully asks that the Court reconsider its August 30, 2023 ruling to the extent that it found there was $10 million in consideration that Kahlon or his company "indisputably received in relation to the property, regardless of whether the sale actually occurred," and amend the order to omit this finding.

Dated: September 13, 2023

LAW OFFICE OF DANIEL L. ABRAMS, PLLC
1250 Broadway, 36th Floor
New York, NY 10001
Phone: (646) 821-4575

By: *Daniel Abrams*
     Daniel L. Abrams

5