UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
YEHUDA SIGALIT,

    Plaintiff,

-against-

JOSSEF KAHLON,

    Defendant.
------------------------------------------------------------------x
JOSSEF KAHLON,

    Counterclaim-Plaintiff,

    - against –

YEHUDA SIGALIT and AVRAHAM YEHUDA,

    Counterclaim-Defendants.
------------------------------------------------------------------x

**DECLARATION OF JOSSEF KAHLON REGARDING FINANCIAL RECORDS OF TJ MANAGEMENT, LLC**

Case No. 21-cv-08921 (MMG) (JC)

I, JOSSEF KAHLON, hereby declare, pursuant to 28 U.S.C. § 1746 that:

1. I am a citizen of the State of New York and over the age of 18.

2. On or about May 21, 2003, I caused the company known as TJ Management Group, LLC ("TJM") to be organized as a limited liability company under the laws of the State of New York.

3. At the time of TJM's organization, I was the only named member of such entity.

4. TJM was established as a private equity group and was involved in various business activities, including the purchase and sale of shares of public companies, primarily penny stock companies, and the acquisition of real estate, and which investments led to the generation of significant profits up through 2011.

5. At all material times subsequent to TJM's organization, notwithstanding the sale of a 50% interest in TJM to Plaintiff/Counter-Defendant, Avraham Yehuda ("Avi"), I have continuously remained as the only named member of TJM, which, at all material times hereto, has remained a single member limited liability company and, as such, has been treated as a disregarded entity for tax purposes under the internal revenue code.

6. As a disregarded entity, TJM was not required or otherwise obligated to prepare or file either corporate state or federal tax returns. Rather, at all material times since its organization, any gains or losses realized by TJM, irrespective of any distributions made to either myself or Avi during any tax year, have flowed through to me personally, and included on Schedule C of my personal 1040 federal tax return filed with the IRS, and to the extent of any profit, taxed at my individual tax rate, with any attendant tax paid accordingly to the IRS.

7. On or around September 10, 2007, TJM acquired the vacant parcel of real property located at 3500 S. Ledbetter Drive, Dallas, Texas (the "Property"). Through the filing of the instant declaration, the Property has been and remains titled in the name of TJM.

8. At all material times after the acquisition of the Property, I caused the annual property taxes for the Property to be paid by TJM, either directly or indirectly. To this point, during the foregoing period, property taxes for the Property have been paid either via TJM directly, or through payments made by me from my personal accounts on behalf of TJM. Likewise, at all material times hereto, I have caused, directly or indirectly, TJM to pay maintenance and utility costs related to the Property. Similar to the above tax expenses, these costs, in large part, have also been paid out of my personal accounts for the benefit of TJM.

9. As part of the accounting in this case, I have caused to be provided to Avi and his lawyer, proof of the foregoing property tax payments incurred by or for the benefit of TJM.

10. Thereafter, on or about May 31, 2011, TJM management received notice, more commonly known as a "Wells Notice" (the "Wells Notice") informing TJM that it had been under investigation by the Securities and Exchange Commission ("SEC") and, as a result of which investigation, the SEC intended to take legal action against TJM and myself, individually. A true and correct copy of the Wells Notice is attached hereto as **Exhibit "1."**

11. Notably, prior to receipt of the Wells Notice from the SEC, from the period of 2006 to 2010, TJM generated significant revenues from its trading activities, which enabled TJM to distribute profits to Avi for such tax years in the approximate amount of $10,466,300.00. Notwithstanding his 50% ownership stake in TJM, because of Avi's non-resident tax status, the foregoing distributions were treated as non-employment compensation to Avi, for which he was issued corresponding 1099 forms for tax purposes.

12. Immediately upon receipt of the Wells Notice from the SEC, TJM immediately ceased all trading activities, causing all of TJM's then open positions, to become entirely worthless. At the time of receipt of the Wells Letter, the total value of TJM's open positions was worth approximately $3,300,000.00.

13. Thereafter, the SEC filed a complaint against TJM and me, individually, Case No. 12-cv-00517-RAS, in the United States District Court, for the Eastern District of Texas (the SEC Litigation"), wherein the SEC sought, in pertinent part, to bar TJM from further trading activities, and for a disgorgement of profits.

14. As requested as part of the SEC's investigation and corresponding SEC Litigation, any and all requested documents and records maintained in the name of TJM were promptly turned over by either myself and/or my attorneys to the SEC.

15. As a result of TJM's cessation of trading activities, and the pending SEC Litigation, all bank accounts used by TJM in connection with its trading activities, *to wit*, checking and money market accounts held in the name of TJM at HSBC, were closed out by the or myself for inactivity in 2015, which accessible statements, I have provided to Avi as part of the accounting in this matter. Subsequent to the HSBC account closures in 2015, TJM has not had nor used any other bank accounts nor engaged in any type of further trading activities whatsoever.

16. Indeed, to the extent I was already paying TJM's expenses from my personal account already, at all material times subsequent to the closure of TJM's HSBC accounts in 2015, I have paid all of TJM's expenses including, but not limited to, legal fees, administrative fees, Property related expenses and costs related to the SEC Litigation, from my personal accounts on behalf of TJM. I have provided proof of the foregoing expenses and corresponding payments to Avi as part of the accounting in this matter.

17. Thereafter, in connection with the SEC Litigation, on or about September 30, 2016, the SEC was granted summary judgment in connection with its claims against TJM and me (the "SEC Judgment"), which, in pertinent part, permanently barred myself and TJM from participating in future trading activities, and ordered myself and TJM, jointly and severally, to disgorge the total sum of $7,758,178, as profits earned by TJM during the applicable period set forth in the SEC Litigation, in addition to prejudgment interest in the amount of $1,522,895, for a total sum of $9,281,073, for which I, and TJM, were jointly and severally responsible, for paying to the SEC in connection with TJM's trading activities.

18. In connection with the SEC Litigation including, but not limited to, the subsequent appeal filed by TJM with the Fifth Circuit Court of Appeals, I advanced more than $1,000,000.00 on behalf of TJM to cover its legal fees in connection with the SEC investigation,

SEC Litigation and subsequent appeal related to the SEC Litigation, for the benefit of TJM. To this point, the legal fees incurred by TJM were paid from my personal accounts for the benefit of and on behalf of TJM.

19.     Thereafter, in or around 2017, following the 5th Circuit Court of Appeals affirmed the SEC Judgment entered against me and TJM, jointly and severally. Following affirmation of the SEC Judgment, I was able to successfully negotiate a settlement with the SEC on behalf of myself and TJM to reduce the SEC Judgment amount previously entered. As a result of my personal efforts, and the efforts of lawyers representing myself and TJM, for whom I paid all of the respective fees for from my personal bank accounts, I was able to reach a settlement to fully resolve the SEC Judgment for the amount of $2,300,000.00 (the "SEC Settlement").

20.     Thereafter, in accordance with the terms and conditions reached with the SEC under the SEC Settlement, I made payment, on behalf of myself and TJM, jointly and severally, from my personal bank accounts, of the total sum of $2,300,000.00 to the SEC, the proof for which payments I have provided to Avi as part of the accounting in this matter.

21.     Accordingly, as further detailed herein, at no time since its organization, has TJM ever filed corporate tax returns nor maintained any type of separate financial records or bank accounts held in TJM's name since at least 2015. At all times subsequent to 2015, in addition to the relevant periods described herein following receipt of the SEC's Wells Notice in 2011, I have caused TJM's operating expenses, in the forms and manner described herein, to be paid from my personal bank accounts, in the absence of which payments made by me, TJM would not have had sufficient funds to satisfy its ongoing obligations including, but not limited to, related to the SEC Judgment or SEC Settlement or otherwise relating to the Property.

worthless following receipt of the Wells Notice, the corresponding permanent bar entered against me and TJM, as part of the SEC Judgment, and the closure of TJM's bank accounts by HSBC in 2015.

24. I declare under the penalty of perjury that the foregoing statements are true to the best of my knowledge, information, and belief.

Dated: February 10, 2025.

_____
Jossef Kahlon