

**David H. Haft, Esq.**
dhaft@darroweverett.com

May 6, 2025

**VIA ECF**
Hon. Margaret M. Garnett
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2102
New York, NY 10007

<div align="center">Re: Case No. 1:21-cv-08921-MMG - YEHUDA SIGALIT v. JOSSEF KAHLON</div>

Dear Judge Garnett:

    As the Court may recall, the undersigned represents Defendant Jossef Kahlon in connection with the above-described matter and submits this letter application pursuant to your Honor's Individual Rules (1)(B)(1) regarding letter correspondence. As discussed during the Court's most recent hearing held in this matter, please allow this correspondence (with exhibits hereto) to serve as Mr. Kahlon's clarification regarding the alleged sale of land owned by Flowerdale LLC, located in Dallas, Texas (the "Land"), to Project Verte, Inc. ("PV"), and the accounting of the purported $10 million consideration allegedly received by Mr. Kahlon in connection with said transaction.

    First and foremost, for clarity, at no point relevant to this matter did either Mr. Kahlon or TJ Management Group, LLC ("TJM") possess ownership of Flowerdale LLC ("Flowerdale"), including during the alleged sale to PV. Flowerdale was originally the owner of the following three parcels:

- 3200 Stag Road, Dallas, TX (131.21 acres)
- 3500 Great Trinity Forest Way, Dallas, TX (7.31 acres)
- 3500 S. Ledbetter Drive, Dallas, TX (8.2375 acres)

    The parcel located at 3500 S. Ledbetter Drive was acquired by TJM in or around 2007 from Capital TT, then the 100% owner of Flowerdale. The other two parcels were subsequently sold, via an assignment of Flowerdale, to Zuchaer & Zuchaer, Inc. ("Z&Z"), an entity jointly owned by

<a>
</a>
<b>
</b>



Moshe Zuchaer ("Zuchaer") and Avi Yehuda ("Yehuda"), subject to a purported joint venture agreement between the two parties, dated approximately March 2009.

In late 2017, at the request of his partner Amir Chalutz, Mr. Kahlon—one of the founding partners of PV—facilitated the purchase of Flowerdale from Zuchaer for a total of $4 million plus interest, which PV funded via a promissory note issued to Z&Z. As agreed among the partners, Mr. Kahlon oversaw the rezoning process, which, if successful, would have significantly increased the value of the Land—an outcome seen as vital to PV. Mr. Kahlon invested approximately $700,000 toward engineering and professional services related to the rezoning. At that time, Mr. Kahlon held a 50% stake in PV, a self-funded company. Due to Mr. Kahlon's contributions, it was agreed that he would receive an $8 million credit, and the other two partners would receive a $2 million credit, to be reflected in PV's internal books. However, the rezoning application was rejected due to technical issues and required refiling. In the meantime, an unrelated dispute arose between Mr. Kahlon and his PV partners. These partners, including Amir Chalutz and Jane Gol, known real estate moguls with extensive holdings in New York and abroad, who had increased their combined ownership to 66%, conspired to dilute Mr. Kahlon's interest and engaged in actions intended to marginalize his role, ultimately forcing him to initiate binding arbitration.[1]

However, once arbitration commenced, Mr. Kahlon's partners employed their considerable resources to dissuade Mr. Kahlon from continuing the process, engaging in various tactics obstructive actions including, but not limited to:

- Filing a lawsuit against Mr. Kahlon claiming he owed $50 million, based on a blank promissory note;
- Tampering with official PV documents and records;
- Filing a lawsuit in Delaware related to the Flowerdale assignment (which was later voluntarily dismissed);
- Reporting false allegations to the U.S. Securities and Exchange Commission (SEC) while posing as "whistleblowers." Despite misleading the arbitrators about the

---

[1] The final arbitration award ruled in Mr. Kahlon's favor, restoring his ownership and standing in PV.



- nature of the investigation, the SEC conducted a thorough investigation and formally cleared Mr. Kahlon of any wrongdoing;
- Z&Z subsequently sued PV over the note. PV, controlled by Chalutz and Gol, counter-sued Z&Z and improperly included Mr. Kahlon using the same allegations raised and later dropped in Delaware; and
- Pursuing Yehuda to file a lawsuit against Mr. Kahlon, whereby Mr. Chalutz approached Yehuda and, according to Yehuda's own statements, falsely claimed that Mr. Kahlon had sold the Texas property to PV as part of the Flowerdale assignment. Unaware that Yehuda was a co-owner of Z&Z, Chalutz "encouraged" him to initiate the current lawsuit against Mr. Kahlon, which he ultimately did.

During these proceedings, Yehuda testified under oath that before filing his lawsuit, he never independently verified any of the information supplied by Mr. Chalutz regarding the Land sale or the alleged $10 million consideration. He admitted to relying solely on Chalutz's statements to form the basis of his claims. Indeed, upon learning of the lawsuit, Mr. Kahlon's then-attorney, Rick Nadish, Esq., emailed Yehuda's counsel, Mr. Haffner, a document showing that TJM was the record owner of 3500 S. Ledbetter Drive—a public record easily accessible online. Yet, Mr. Haffner ignored the document, and Yehuda later testified that he had never seen it. Moreover, it was later revealed through discovery that Mr. Haffner was aware of the actual ownership before initiating the lawsuit. In an email exchange with PV's counsel, Jordan Weiss, Esq., months before the suit was filed, Mr. Haffner was explicitly informed that TJM held no interest in Flowerdale or the Land assigned to PV by Z&Z and that TJM continued to own its parcel. Despite this knowledge, Yehuda and his counsel, influenced by Chalutz, proceeded with the action based on knowingly false premises. However, even after being repeatedly advised by Mr. Kahlon's attorneys that the allegations in Yehuda's complaint were factually incorrect and that the case should be dismissed, Mr. Haffner failed to act or share this critical information with his client. Yehuda testified during the deposition that he was unaware of these communications. A copy of Yehuda's 2022 deposition is attached for the Court's reference. Additionally, Yehuda, also represented by Mr. Haffner, filed lawsuits against Zuchaer and his entities—first in New York County Supreme Court and, after dismissal for lack of jurisdiction, in Miami-Dade County, Florida—further proving his ownership in Flowerdale, a fact he failed to disclose in this



The Honorable Margaret M. Garnett
United States District Judge
Page 4 of 4

proceeding. Copies of these complaints filed by Yehuda are also attached for the Court's reference.

Thereafter, unable to accept the unfavorable arbitration result, Mr. Kahlon's former PV partners—in a final act of defiance, placed PV into receivership in Delaware, and then subsequently into a Chapter 7 bankruptcy. As a result, the bankruptcy trustee, who sued Z&Z, unwound the Texas Land transaction. That litigation resulted in a settlement under which the Land was re-conveyed to Z&Z, and the promissory note (which was never paid by PV) was voided. This outcome was known to both Yehuda and his attorney, as evidenced by the concurrent litigation between Yehuda and Zuchaer. Consequently, the $8 million "credit" recorded for Mr. Kahlon in PV's books became worthless, and he suffered a direct financial loss of $700,000—his out-of-pocket expenses incurred in connection with his rezoning efforts.

We hope this detailed clarification resolves any confusion surrounding the "$10 million" transaction. Should the Court require any additional information or documentation, please do not hesitate to contact the undersigned's office. Thank you for your consideration regarding this matter.

Very Truly Yours,

*/s/ David H. Haft*
**David H. Haft**
**Partner**

Enclosure(s)
CC: Steven Haffner, Esq.
    Email: Haffner.Steven@gmail.com
    Via ECF