UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

SIGALIT YEHUDA,

        Plaintiff,   21-cv-08921 (MGG)

  v.

JOSSEF KAHLON

        Defendant/Counterclaim Plaintiff,

  v.

AVRAHAM YEHUDA,

        Counterclaim Defendant.
_____

**MEMORANDUM OF LAW IN SUPPORT OF: PLAINTIFF'S MOTION FOR CONTEMPT, DISCOVERY SANCTIONS, AND SPOLIATION; AND PLAINTIFF'S AND COUNTERCLAIM DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING DEFENDANT'S "SECOND", "FIFTH" AND "EIGHTH" COUNTERCLAIMS**

 

**GORDON & HAFFNER, LLP**
*Attorneys for Plaintiff Sigalit Yehuda and Counterclaim Defendant Avraham Yehuda*
480 Mamaroneck Avenue
Harrison, New York 10528
(718) 631-5678

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES ………………………………………………….. | i-iv |
| PRELIMINARY STATEMENT ……………………………………………… | 1 |
| STATEMENT OF FACTS ……………………………………………………. | 1 |
| ARGUMENT …………………………………………………………………... | 6 |

POINT I:    Defendant's Flagrant Disobedience of Judge Torres' SJ Order And Numerous of This Court's Explicit Orders and Directives Given Him at The Last Two Court Conferences Transcribed And Entered on The Docket Warrant Contempt Sanctions …………… 6

    1. Legal Standard ……………………………………………. 6

    2. Analysis ………………………………………………….. 7

        A. Plaintiff's Claims to Judgment Against Defendant Based on a "Truing-Up" of Defendant's Excess Distributions Taken from the Company's 2008 through 2011 Trading Profits Should Be Deemed Established …………………. 7

POINT II:    Since Defendant's Pattern Of Persistent, Deliberate And Prolonged Disregard Of This Court's Conference Orders and Other Discovery Conduct Has Prevented Disclosure of Facts Essential to An Adjudication On the Merits of Plaintiff's Claims, Severe Discovery Sanctions Are Justified ……………………………………………. 9

    1. Legal Standard ……………………………………………. 9

        A. Appropriate Sanctions ……………………………………. 10

POINT III:    Defendant's Counterclaims Against His Co- Member Sounding In Contribution Are Not Actionable and Therefore Must Be Dismissed As A Matter of Law Under FRCP 12(C) ……………………………. 11

    1. Legal Standard ……………………………………………... 11

    2. Analysis …………………………………………………... 11

        A. No Claim for Contribution Lies Against a Co-Member of A New York Limited Liability Company ..…………………. 11

CONCLUSION ……………………………………………………………….. 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                 Page

*Burns Int'l Sec. Servs. Inc. v. Int'l Union United Plant Guard Workers of Am.*,
    47 F.3d 14 (2d Cir. 1995) ……………………………………………………..… 11

*Campagnie des Bauxites de Guinea v. Insurance Co. of N. Am.*,
    651 F.2d 877 (3d Cir. 1981) ………………………………………………….… 8

*Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*,
    951 F.2d 1357 (2d Cir. 1991) ………………………………………………..… 7

*Grammas v. Lockwood Assocs.*,
    *Ltd.*, 95 A.D.3d 1073, 1074 (2nd Dept. 2012) ……………………………….… 11

*John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*,
    845 F2d 1172 (2d Cir. 1988) ………………………………………………..… 10

*National Hockey League v. Metropolitan Hockey Club*,
    427 U.S. 639, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976) ……………………….... 10

*King v. Allied Vision, Ltd.*,
    65 F.3d 1051 (2d Cir. 1984) ……………………………………………….… 6

*Paramedics Electromedicina Comercial, Ltda. v. GE Med.*
*Sys. Info. Techs., Inc.*,
    369 F.3d 645 (2d Cir. 2004) ………………………………………………..… 6

*Polish Am. Resource Corp. v. Byrczek*,
    270 A.D.2d 96 (1st Dept. 2000) ……………………………………………….. 9

*Southern New Eng. Tel. Co. v. Global NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010) ………………………………………………….. 6

*Stiftung v. Sumitomo Corp.*,
    88 Fed. Appx. 443 (2d Cir. 2004) …………………………………………….. 6

*Update Art, Inc. v. Modiin Publ'g, Ltd.*,
    843 F.2d 67 (2d Cir, 1988) ………………………………………………….... 8

*White v. Rankin*,
    18 A.D. 293, 295 (2d Dept. 1897) …………………………………………….. 9

**STATUTES**

18 U.S.C. § 401 ................................................................................... 6

CPLR § 3212 (f) ................................................................................. 7

Fed. R. Civ. Proc. Rule 37(b)(2), (b)(2)(C) and (a)(4)(A) ..................... 10

Fed. R. Civ. Proc. Rule 12 (c) ............................................................. 11

NY LLC Law § 609(a) ....................................................................... 11

**Preliminary Statement**

Plaintiff Sigalit Yehuda and Counterclaim Defendant Avraham Yehuda submit this memorandum of law in support of Plaintiff's motion for contempt, discovery sanctions and spoliation; and also in support of Plaintiff's and Counterclaim Defendant's motion, pursuant to Fed. R. Civ. Proc. 12(c), for judgment on the pleadings, dismissing Defendant's "Second", "Fifth" and "Eighth" Counterclaims.

**Statement of Facts**

A. <u>Defendant's Contempt of this Court's August 30, 2023 Order</u>

This motion is the culmination of prolonged and tortuous efforts to obtain Defendant's obedience to this Court's August 30, 2023 Order (Torres, J.). That order, *inter alia*, granted Plaintiff's cross-motion for summary judgment on her equitable accounting claim for:

> a verified statement of account of [defendant] Kahlon's dealings with [TJM] and its property and earnings during the period [from] November 15, 2004 to [the] date the demanded accounting is furnished, including, but not limited to, [TJM's]: (1) assets; (2) income, receipts and revenue received or accrued; (3) expenses paid or incurred; (4) distributions, dividends, salary, compensation or other monies taken or received by Kahlon (or by anyone at his direction); and, (5) all payments by [TJM] to third parties for services rendered to, or benefits received by, Kahlon (or to anyone at his direction)[.]

August 30, 2023 Order (ECF No. 109) (the "SJ Order").

Nearly two years, and fully three court conferences later, Defendant has yet to provide the court-ordered accounting for the Plaintiff's and Defendant's company TJ Management, LLC (the "Company" or "TJM"), despite the SJ Order's unequivocal direction that he do so.

On October 18, 2024 -- almost eighteen months after the SJ Order -- Defendant's counsel filed a notice claiming Defendant had complied with the SJ Order by producing what the notice called "relevant financial documents reasonably available to him" (ECF No. 109). However, the referenced "relevant financial documents" (none sworn or otherwise verified) consisted only of

1

three (3) single-page IRS 1099-Misc. forms and seven (7) single-page IRS Schedule C forms, which not only lacked most of the information required by the SJ Order but also lacked any back up documents or other substantiation.

Although Defendant's assemblage of these documents came nowhere near satisfying his obligations under the SJ Order, in the hope of avoiding the burden on the Court and expense to the parties of contempt proceedings, on December 10, 2024, Plaintiff's undersigned counsel emailed a letter to Defendant's then counsel, Minyao Wang, Esq., notifying him of salient deficiencies in Defendant's "accounting". A copy of the December 10, 2024 letter is attached as Ex. A to the accompanying Declaration of Steven R. Haffner, dated May 13, 2025 ("Haffner Decl."). The letter, in pertinent part, stated:

> I could write a long letter identifying all of the deficiencies in Defendant's "accounting" However, a cursory review reveals that missing required documents and information, at a minimum, include the company's: (l) monthly and yearly brokerage statements; (2) bank account statements; (3) ledgers; (4) profit and loss statements; (5) balance sheets; (6) reconciliations; (7) credit card statements; (8) asset schedules; and (9) annual schedules of expenses incurred and paid. Also missing are verified statements of the annual distributions, dividends, income or other compensation taken or received by Defendant, together with back-up including complete tax returns with accountant worksheets. Notably, also missing is any information for the periods 2004 through 2007 and 2018 to present
>
> Although it appears your client's noncompliance was intentional, giving him the benefit of the doubt, I propose we write to the Court tomorrow requesting an extension to allow Defendant to complete his accounting.
>
> Unless I hear by noon tomorrow that Defendant is serious about complying with the Order, Plaintiff will file tomorrow her objection addressed to Defendant's failure to provide the court ordered accounting and I will write to the Judge requesting a conference to discuss a motion for contempt. I hope that will not be necessary.

Following receipt the next day of Defendant's unsatisfactory response to this letter, Plaintiff filed her Objections to Accounting ("Points of Objection") on December 11, 2024 (ECF

2

No. 111) (Haffner Decl., Ex. B). The Points of Objection once again notified Defendant[1] of his obligations under the SJ Order and, in 14 enumerated provisions, detailed the specific deficiencies of Defendant's purported accounting (Ex. A to Points of Objection, Ex. B to Haffner Decl., ECF No. 111). Among the many deficiencies identified were the absence of: (i) a verified statement based on the Company's financial statements and records, including its profit and loss statements, balance sheets, ledgers, and its bank, brokerage and credit card statements; (ii) a schedule of annual expenses; (iii) a statement of capital contributions; (iv) a schedule of assets; and (v) a verified statement of annual distributions, income or other compensation taken or received by Defendant. Plaintiff's Points of Objection also alerted Defendant that the little he actually produced omitted all documents and information for the period 2004 through 2007 and 2018 through October 13, 2024 (date of his purported accounting).

    B. <u>Defendant's Disobedience of this Court's Conference Orders and Directives</u>

Defendant was again notified, this time by the Court at the January 10, 2025 conference in this case, of his "gross noncompliance" with Judge Torres' SJ Order[2]. *See* January 10, 2025 Transcript (1/10/25 Tr.) 20:1-3 (ECF No. 117) (Haffner Decl., Ex. D).

Rather than schedule contempt proceedings, however, the Court, "out of an abundance of grace", afforded "Mr. Kahlon 30 days to produce in whatever form and under what auspices they exist any documents that he has or can get access to that can satisfy the five categories set forth in the complaint … that was ordered by Judge Torres." *Id.*, 26:8, 14-19. Also at that conference, the

---

[1] Six months earlier, on May 18, 2024, and in response to a request from the Court, the undersigned sent Mr. Minyao an email, explaining in detail, with citation to New York Court of Appeals authority, how Plaintiff expected the Court would handle the equitable accounting. Haffner Decl., Ex. C.

[2] Notably, your Honor also directed Defendant "to file a verified statement of accounting and any supporting documents" in your Order dated May 29, 2024, following the May 28, 2024 Conference in this case. (ECF No. 102).

Court further ordered Defendant to provide, within 31 days, a sworn affidavit explaining in detail with respect to any required documents not produced, what efforts Defendant made to find or obtain them and what happened to them. *Id.*, 26:24-25, 27:1-13. Further, the Court warned Defendant's counsel (David H. Haft) "to make crystal clear to your client that the next step is a contempt judgment …." Finally, the Court directed Mr. Haft to inform Defendant "that if the materials have not been produced, he is required to appear in person at that conference." *Id.*, 28:18-21. To all this, Mr. Haft replied:

> That's fine your Honor. I understand your Honor's ruling, and I will begin immediately putting that together for my client and we will comply with your Honor's order without question. *Id.*, 30:24-25, 31:1-3

In disregard of this Court's admonitions and in dishonor of his representations to the Court, Mr. Haft appeared at the February 25, 2025 court conference without having produced documents and information satisfying the five categories set forth in the complaint and also without having submitted an affidavit providing anything close to a sufficient accounting for the missing documents and information. In further violation of Your Honor's direction at the January 10, 2025 conference, counsel also appeared without Mr. Kahlon. Finally, Defendant also failed to produce any documentation disclosing "what the $10 million was for." *See* Transcript of February 25, 2025 Conference ("2-25-25 Tr.") (ECF No. 128) (Haffner Decl., Ex. E); 2-25-25 Tr. 13:8-13.

In fact, putting aside Defendant's failure to include a verified statement of accounting, the February 25, 2025 Conference revealed that his "Supplemental Production", served after the January 10, 2025 Conference (Haffner Decl., Ex. F), failed to include even a single brokerage[3],

---

[3] Also, conspicuous only by absence are the Company's brokerage and money market statements for 2011, the year when Defendant alleges he "closed out" those accounts because of the SEC investigation. Those statements would show the Company's trading capital in those accounts when Defendant closed them in 2011, which was at least one year after the Company's mid-2010

4

bank, or credit card statement, profit and loss statement, balance sheet or ledger, all of which were needed to verify the numbers appearing in the incomplete Schedule C's provided. 2-25-25 Tr. 8: 6-14. Also lacking were Defendant's 2005 through 2008 Schedule C's, as well as any documents or information providing a breakdown or verification of the information appearing on the Schedule Cs Defendant did manage to produce.

Among the Court's specific findings and rulings made at the February 25, 2025 Conference, were the following:

***Kahlon Affidavit***

> -- the affidavit doesn't even begin to cover the things that I directed you to cover in January. 2-25-25 Tr. 20:11-13

***Source of $10 Million Payment for the Ledbetter Property***

> -- now we're going on multiple court orders to provide documentation that satisfactorily explains the source of the $10 million payment and what happened to it. *Id.* 14:1-4
>
> ***
>
> … I could not possibly have been clearer in January, and my directive came, as Mr. Haffner pointed out, a year and a half after Judge Torres also was very clear in directing that an accounting of the $10 million, where it came from and what happened to it be provided. *Id.* 15:7-12

***Defendant's Repeated Violations of Both the SJ Order and this Court's Orders***

> Mr. Haffner, I'm certainly open to and would welcome a contempt motion on your part, as well as whatever other motion in terms of proceeding to some kind of judgment in this matter *based on the entirely*

---

distribution to Plaintiff, which Defendant admits (and his 1099s show) was its last distribution to Plaintiff. Nor did Defendant provide any other documents or information disclosing the Company's balances in those accounts when Defendant closed them in 2011 or what Defendant did with those funds thereafter. Since the Company would have been required to maintain substantial trading capital to complete the enormous volume of low profit trades of these non-marginable "penny stocks" which would have been necessary to generate the trading profits in excess of $6,000,000.00 the Company reported for 2010, the inescapable inference is that Defendant's continued refusal to produce these statements has been intentional. 2-25-25 Tr. 7:12-18.

5

> *insufficient participation of the defendant and repeated violation of both Judge Torres' and my orders.* Id. 16:5-10 (emphasis added)
>
> ***
>
> … circumstances certainly provide you with the basis to make a motion of that type. *Id.* 18:4-5

This motion ensued.

## Argument

### POINT I

### DEFENDANT'S FLAGRANT DISOBEDIENCE OF JUDGE TORRES' SJ ORDER AND NUMEROUS OF THIS COURT'S EXPLICIT ORDERS AND DIRECTIVES GIVEN HIM AT THE LAST TWO COURT CONFERENCES TRANSCRIBED AND ENTERED ON THE DOCKET WARRANT CONTEMPT SANCTIONS

1. <u>Legal Standard</u>

Both under statute and a federal district court's inherent power to manage its affairs, this Court has the power to hold a party in civil contempt to enforce, compliance with its orders and to compensate a party injured by another's contempt. 18 U.S.C. § 401; *Stiftung v. Sumitomo Corp.*, 88 Fed. Appx. 443, 444 (2d Cir. 2004). Contempt orders and awards are reviewed under the abuse of discretion standard, though more rigorous. *Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143-45 (2d Cir. 2010). A party may be found in civil contempt and sanctioned for failure for his failure to comply with a court order if "(1) the order is clear and ambiguous; (2) proof of noncompliance is clear and convincing; and, (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1984).

Moreover, where a party's discovery recalcitrance reaches the point where it has prevented plaintiff from presenting evidence on an issue material to the prosecution of her action, the court

may deem the issue established in accordance with the plaintiff's claims. *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366-68 (2d Cir. 1991).

2. <u>Analysis</u>

As plainly obvious and repeatedly and correctly noted by this Court at the court conferences in this matter (Haffner Decl, Exs. D and E): (1) the SJ Order and this Court's conference orders were clear and unambiguous; (2) proof of Defendant's gross noncompliance is clear and convincing; and (3) Defendant contemnor has not diligently attempted to comply in a reasonable manner and, in fact, repeatedly continued his utter disregard and disrespect of this Court's orders after it generously afforded him numerous opportunities to comply. *See also discussion supra* at pp. 1-6.

> A. Plaintiff's Claims to Judgment Against Defendant Based on a "Truing-Up" of Defendant's Excess Distributions Taken from the Company's 2008 through 2011 <u>Trading Profits Should Be Deemed Established</u>

Also obvious considering the record of this motion, Defendant deliberately endeavored and, in fact, has prevented an adjudication on the merits of Plaintiff's accounting claim. Nor is there any question that the discovery orders violate and the sanction sought relate to Plaintiff's accounting claim against Defendant for his inequal distributions to her of TJM profits. *Daval Steel Products, supra*, 951 F.2d at 1366. In these circumstances, Plaintiff is entitled to an order taking as established her claim whose proper adjudication Defendant deliberately frustrated and precluding Defendant from introducing contrary evidence. *Id.* at 1367.

Because Defendant had exclusive control over TJM's finances and Plaintiff relied on his distributions to her as accurate representations of her one-half interest in the net profits of the

Company[4], Defendant's refusal to account has rendered determining an award of specific damages problematic. Fortunately, however, Defendant's 2010 Schedule C (Haffner Decl, Ex. F), though sparse, together with Defendant's 2008 and 2009 1099's, provide a sufficient basis for liquidating Plaintiff's accounting claim for Defendant's excess distributions taken from the Company's trading profits for the years 2008 through 2011, totaling at least $7.7 Million dollars.

Line 1 of Defendant's 2010 Schedule C reports TJM's gross profits derived from gross receipts of $11,110,512, less $4,420,343 reported on line 4 as "cost of goods sold". However, the only identification of this exceedingly large "costs of goods" figure is given on the second page on line 39 as "other costs." Given Plaintiff received a 1099 in 2010 for $2,200,000 and a 1099 is a deductible expense, it follows that at least $2,200,000 of the $4,420,343 figure were not operating expenses. Also not credible and evidently fabricated is Defendant's reported $2,220,343 balance of reported but unaccounted for "other costs" ($4,420,343-$2,200,000=$2,220,343). Over two million in annual costs is not ordinary and necessary for a business that trades penny stocks. Thus, absent verification, the deduction must be disregarded even without a contempt or discovery order.

Applying the above analysis, TJM's net income was $11,110,512, entitling Plaintiff, as a 50% member, to a $5,555,256 2010 distribution. Since Defendant distributed only $2,200,000 to Plaintiff, as reported by Defendant's 2010 1099, Plaintiff's accounting claim against Defendant for 2010 alone is **$3,355,256** ($5,555,256 - $2,200,000).

Next, although Defendant failed to produce his 2008 and 2009 Schedule Cs, he did produce the 1099's issued to Plaintiff showing distributions to her for those years. Given Defendant's

---

[4] "The availability of such a sanction is particularly important when, as here, the very material sought to be discovered … will normally be in the possession of a defendant and will frequently be unknown to a plaintiff." *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 72 (2d Cir, 1988) (quoting *Campagnie des Bauxites de Guinea v. Insurance Co. of N. Am.*, 651 F.2d 877, 885 (3d Cir. 1981).

8

refusal to account, Plaintiff's accounting claims for underpaid 2008 and 2009 distributions may be determined by extrapolating the underpayment ratio in 2010. Applying the 2010 ratio, Plaintiff's 2009 $1,700,000 distribution (reported in Defendant's 1099 issued to her) supports an accounting claim for that year of **$2,590,611.** By the same metric, Plaintiff's 2008 $1,176,300 distribution (reported by Defendant's 2008 1099 issued to her) supports an accounting claim for that year of **$1,792,550.** In addition, Plaintiff is entitled to an accounting claim for 2011 of approximately **$500,000**[5], representing 50% of TJM's profits for that year ($1,130,954 minus normal and customary expenses had Defendant documented them) as reported by Defendant's 2011 Schedule C. (ECF No. 111-1 at p. 7). While extrapolation is not as certain as calculations based on verifiable books and records as managing member of TJM, Defendant was legally obligated to maintain accurate books and records until dissolution.

Since Defendant is now alleging he does not have those records, "all 'obscurities and doubts' created by the failure to keep clear and accurate records are to be resolved adversely to him. *Polish Am. Resource Corp. v. Byrczek*, 270 A.D.2d 96 (1st Dept. 2000) (quoting *White v. Rankin*, 18 A.D. 293, 295 (2d Dept. 1897).

## POINT II

**SINCE DEFENDANT'S PATTERN OF PERSISTENT, DELIBERATE AND PROLONGED DISREGARD OF THIS COURT'S CONFERENCE ORDERS AND OTHER DISCOVERY CONDUCT HAS PREVENTED DISCLOSURE OF FACTS ESSENTIAL TO AN ADJUDICATION ON THE MERITS OF PLAINTIFF'S CLAIMS, SEVERE DISCOVERY SANCTIONS ARE JUSTIFIED**

1. <u>Legal Standard</u>

---

[5] Defendant's 2011 Schedule C TJM income contradicts repeated representations by his counsel at court conferences that following the 2010 SEC investigation TJM no longer had trading profits.

It is well settled courts have broad discretion in the discovery context to impose sanctions against parties who have persistently and flagrantly failed to prosecute a matter and participate in discovery in good faith, including dismissal of the party's pleadings and an award of reasonable attorneys' fees. In addition, Fed. R. Civ. Proc. Rule 37(b)(2), (b)(2)(C) and (a)(4)(A) address those costs (attorneys' fees) incurred as consequence of a party's failure to obey a court order.

A. <u>Appropriate Sanctions</u>

Since a more brazen pattern of disobedience with discovery orders would be difficult to come by, this Court is well justified in dismissing Defendant's counterclaims based on his numerous serious and flagrant violations of discovery orders. *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,* 845 F2d 1172, 1175-77 (2d Cir. 1988). Moreover, the sanction dismissing Defendant's counterclaims is particularly justified in this case because, after pressing for a jury trial of his counterclaims, four weeks before that trial Defendant had not produced the very documents he would have needed at the trial. As the Court noted at the January 25, 2025 Conference:

> -- obviously, we're not having a trial on February 10 because I have no idea what evidence would possibly be presented to the jury because certainly no evidence that could support the counterclaims has been produced, as far as I am aware. 1/25/25 Tr., 26:8-13; and also 13:20-25

Likewise justified is an award in favor of Plaintiff in the amount of her attorneys' fees incurred attending additional conferences necessitated by Defendant's misconduct and the preparation of this motion[6]. *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976) ("… monetary sanctions serve to encourage litigants

---

[6] Plaintiff respectfully requests that her counsel be permitted to submit an application for attorneys' fees following full submission of this motion.

and their counsel to promptly comply with discovery orders at the risk of being penalized for disobedience").

## POINT III

### DEFENDANT'S COUNTERCLAIMS AGAINST HIS CO-MEMBER SOUNDING IN CONTRIBUTION ARE NOT ACTIONABLE AND THEREFORE MUST BE DISMISSED AS A MATTER OF LAW UNDER FRCP 12(C)

If not dismissed for his gross discovery misconduct (*see supra,* pp. 1-6), Defendant's "second", "fifth" and "eighth" Counterclaims sounding in contribution must be dismissed as a matter of law on the face of Defendant's pleading.

1. <u>Legal Standard</u>

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim, except the former is made after the close of pleadings. In both postures, the district court must accept all allegations as true and draw all inferences in the non-moving party's favor. "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs. Inc. v. Int'l Union United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1995).

2. <u>Analysis</u>

   A. <u>No Claim for Contribution Lies Against a Co-Member of a New York LLC</u>

Contrary to Defendant's assertions, New York law bars suit against a co-shareholder shareholder for contribution. *See* NY LLC Law § 609(a) ("[No] member of a limited liability company. . . is liable for any debts, obligations or liabilities of the limited liability company or each other, whether arising in tort, contract or otherwise, solely by reason of being such member[.]"); *Grammas v. Lockwood Assocs., Ltd.*, 95 A.D.3d 1073, 1074 (2nd Dept. 2012) ("A member of a limited liability company cannot be held liable for the company's obligations by

virtue of his or her status as a member thereof."). Indeed, this Court (Torres, J.) already so held in the SJ Order, pp. 6-8 (ECF No. 82).

Accordingly, Defendant's "second", "fifth" and "eighth" counterclaims, all seeking contribution must be dismissed as a matter of law.

## Conclusion

For the foregoing reasons, the Court should grant Plaintiff's and Counterclaim Defendant's motion for contempt, discovery sanctions and related relief and such other and further relief as may be appropriate.

Dated: May 13, 2025

**GORDON & HAFFNER, LLP**
*Attorneys for Plaintiff Sigalit Yehuda and Counterclaim Defendant Avraham Yehuda*
480 Mamaroneck Avenue
Harrison, New York 10528
(718) 631-5678

_____
Steven R. Haffner (SH 6271)
