UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/6/2025
```

YEHUDA SIGALIT,

                    Plaintiff,

           -against-

JOSSEF KAHLON,

                    Defendant.

JOSSEF KAHLON,

                    Counterclaim Plaintiff,

           -against-

YEHUDA SIGALIT and AVRAHAM YEHUDA,

                    Counterclaim
                    Defendants.

21-CV-08921 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

      Plaintiff Sigalit Yehuda ("Sigalit") brought this action nearly four years ago against Defendant Jossef Kahlon, seeking an equitable accounting of Kahlon's dealings with TJ Management Group, LLC ("the Company") and its property and earnings, and, based on this accounting, an award of one-half of any unauthorized or unmatched distributions, assets, and/or the value of benefits, received, accrued, or taken by Kahlon. Two years ago, the Court granted summary judgment in favor of Sigalit, however, to date, Kahlon has inexplicably failed to provide a sufficient accounting. Sigalit and Counterclaim Defendant Avraham Yehuda (together, the "Yehudas") moved for contempt and related relief, including discovery sanctions, judgment on the pleadings on several of Kahlon's counterclaims, and an award of attorney's fees and expenses. For the reasons stated herein, the motion is GRANTED IN PART, and the Court (i) awards $3,355,256 to Sigalit on her equitable accounting claim; (ii) awards a total of

$43,690.35, including $38,646 in attorney's fees and $5,044.35 in expenses, to the Yehudas; (iii) dismisses Kahlon's counterclaims as a terminal sanction and for failure to prosecute; (iv) and imposes a daily $150.00 fine upon Kahlon to compel compliance with this judgment.

### RELEVANT FACTS & PROCEDURAL BACKGROUND

The Court assumes familiarity with the facts and procedural history of this action and summarizes only the facts relevant and necessary to resolving the Yehudas' motion.

Sigalit and Kahlon were co-members of the Company, each owning 50% of the Company. In or about 2007, Sigalit alleges the Company acquired title to a parcel of land in Dallas, Texas (the "Property"), which Kahlon purportedly sold for $10,000,000 to Project Verte, Inc. Sigalit initiated this action, seeking an equitable accounting of Kahlon's financial management of the Company, and, thereafter, a final judgment in her favor of her share of the net proceeds of the sale of the property and any other unauthorized or unmatched distributions, receipt of property or other assets, and the value of benefits received or accrued by Kahlon. *See generally* Dkt. No. 1. In responding to the complaint, Kahlon asserted ten counterclaims against the Yehudas, seeking compensatory damages in light of the Yehudas' *pro rata* responsibility for the expenses incurred by or on behalf of the Company, based on, among other things, breach of contract and breach of fiduciary duty. Dkt. No. 25.

On August 30, 2023, Hon. Analisa Torres, then presiding over this action, entered summary judgment in favor of Sigalit on her equitable accounting claim and denied Kahlon's motion for summary judgment on his "contribution" counterclaim. Dkt. No. 82; *Sigalit v. Kahlon*, No. 21-CV-08921 (AT), 2023 WL 5609099, at *4, 6 (S.D.N.Y. Aug. 30, 2023). With respect to Sigalit's motion, among other things, Judge Torres reasoned that Kahlon's insistence the Company did not sell and continued to own the Property was inapposite, since Sigalit sought

an accounting for the $10 million consideration that Kahlon indisputably received in relation to the Property, regardless of whether the sale actually occurred. *Id.* at 5–6. With respect to Kahlon's motion, Judge Torres observed that Kahlon did not specifically identify which of his ten counterclaims he sought summary judgment on nor set forth any legal standard for his "contribution" counterclaim. *Id.* at 6. Notwithstanding, Judge Torres held that Kahlon had not established any basis to support piercing the corporate veil and hold the Yehudas individually liable for the Company's obligations to the SEC arising from the 2011 investigation. *Id.* at 7. On December 14, 2023, Judge Torres denied Kahlon's motion for reconsideration, holding that there was no clear error in her determination that Kahlon received $10 million in consideration "in relation to the property." Dkt. No. 90 at 2; *see also* Dkt. No. 25 ¶ 10.

On February 21, 2024, this action was reassigned to the undersigned. On May 28, 2024, the parties appeared for a conference at which the Court ordered Kahlon to comply with Judge Torres' order and file a verified statement of accounting and any supporting documents on or before September 30, 2024, and also indicated that the parties should prepare for trial on the counterclaims. *See* Dkt. No. 102. On July 22, 2024, the Court entered a scheduling order with trial on the counterclaims to begin on February 10, 2025. Dkt. No. 106.

To date, Kahlon has still not filed a verified statement of accounting or supporting documentation, and the instant motion stems from Kahlon's willful failure to comply with Judge Torres' grant of summary judgment in favor of Sigalit, as well as this Court's subsequent orders thereto. Initially, on September 25, 2024, Kahlon requested an extension of time to file a verified statement of accounting, which the Court granted. Dkt. No. 108. On October 18, 2024, Kahlon did not file any accounting, and instead filed a three-sentence submission, stating that Kahlon had produced "relevant financial documents reasonably available to him" and that such

documents were "self-explanatory and no further elaboration is required." Dkt. No. 109. In

sum, the relevant documents included several tax documents, specifically 1099 forms and

Schedule C forms, but no underlying documents or records to support the figures represented

therein. *See* Dkt. Nos. 136-6 at Kahlon Supp Production 000001–08 (Schedule Cs for 2010

through 2013) & 136-7 at KAHLON-VERIFICATION 0008–10 (1099s for 2008 through 2010).

On December 11, 2024, Sigalit filed objections to Kahlon's submission, outlining the serious

deficiencies, including the absence of any documents or information related to 2004 through

2007 and 2018 through the date of the submission. Dkt. No. 111. After adjourning the matter

several times in order to afford opportunities for the parties to resolve their dispute over the

sufficiency of Kahlon's submission, all of which were unsuccessful, the Court ordered the parties

to appear for a conference, which was held on January 10, 2025. *See* Dkt. Nos. 112, 114, 116.

       At the January 10, 2025 conference, counsel for Kahlon represented that there were no

available corporate records for the Company because Kahlon had been funding the Company's

expenses from his own personal account. Dkt. No. 117 ("Jan. Tr.") at 8. The Court clarified that

Kahlon was still bound to provide the accounting, supported by appropriate documents, to satisfy

the judgment entered in favor of Sigalit and Judge Torres' order, regardless of whether those

documents were from personal or business accounts. *Id.* at 10–11 ("[T]he fact that [Kahlon]

made the choice to pay those expenses [related to the SEC investigation and Property] out of his

personal bank account [does not] exempt[] him from proving . . . what has come in and what has

gone out during the relevant time period."). Indeed, counsel for Kahlon conceded that proof of

such expenses would be integral to proving up the counterclaims. *Id.* at 12; *see also id.* at 25–26

("[The Company] is a disregarded entity for tax purposes. It is a flow-through entity to Mr.

Kahlon only. So those tax records appear on Schedule C of Mr. Kahlon's personal tax returns

only.").  However, counsel for Kahlon did not provide any colorable basis or reason why any such records, including financial records presumably produced to the SEC during the course of their investigation, had not been produced, except for a handful of tax filings.  *See id.* at 14, 16–17 (counsel for Sigalit explaining that the produced tax documents were "ten single-page documents"), 18–22 (counsel for Kahlon claiming records produced to the SEC "simply do not exist").

Counsel for Kahlon further represented that the $10 million which precipitated this action was received in exchange for Kahlon's brokerage of a sale of a parcel of land that is not the Property and was never owned by the Company but by a separate entity controlled by Kahlon. Jan. Tr at 4–5, 29; *see also* Dkt. No. 25 ¶ 10 (Kahlon's answer denying that the $10 million was received in consideration for any purported sale of the Property, but for "services rendered"); *Sigalit*, 2023 WL 5609099, at *3.  Counsel for Kahlon has reiterated this position at various stages in this litigation, as described *infra*, despite this assertion being squarely rejected by Judge Torres in her opinion granting summary judgment in favor of Sigalit.[1]

---

[1] Over the pendency of this action before the undersigned, Kahlon failed to substantiate this assertion with any records or documentation submitted to the Court, until the eleventh hour, almost two years after Judge Torres' opinion.  On April 10, 2025, counsel for Kahlon directly e-mailed the Court a letter and appended materials, purporting to explain how the "$10 million" was, in actuality, $8 million in credit in Project Verte in connection with a transaction involving the unrelated property and which ultimately became worthless when the underlying promissory note was voided.  The Court informed counsel for Kahlon that if he intended to rely on the April 10 e-mail and the materials appended for any purpose, or wished for the Court to rely on them for any purpose, the materials must be filed on the Court's ECF system.  Nearly a month later, on May 6, 2025, Kahlon filed the letter and appended materials on ECF.  Dkt. No. 132.  To the extent the submission is construed as another motion for reconsideration of Judge Torres' determination that the $10 million was received in relation to the Property, such relief must be denied.  *See Guang Ju Lin v. United States*, Nos. S3 09-CR-00746 (SHS), 13-CV-07498 (SHS), 2015 WL 747115, at *2 (S.D.N.Y. Feb. 18, 2015) ("A litigant is entitled to a single motion for reconsideration."); *see also* Local R. Civ. P. 6.3.  Moreover, as repeatedly held by Judge Torres and the undersigned, the accounting that Kahlon is required to produce goes far beyond the Property and its disposition.

On pain of contempt, the Court ultimately gave Kahlon another 30 days as a final opportunity to fulfill the judgment entered against him by Judge Torres, specifically directing Kahlon to (1) produce any and all documents accounting for the Company's (i) assets; (ii) income, receipts, and revenue received or accrued; (iii) expenses paid or incurred; (iv) distributions, dividends, salary, compensation or other monies taken or received by Kahlon or by anyone at his direction; and (v) all payments to third parties for services rendered to, or benefits received by Kahlon or to anyone at his direction; and (2) submit a sworn affidavit under penalty of perjury detailing why other documents which would have been responsive cannot be produced, *e.g.*, because they have been destroyed. Jan. Tr. at 26–27. The trial on the counterclaims was adjourned, given Kahlon's failure to produce any supporting evidence that could be presented at such a trial. *Id.* at 28. The Court scheduled another conference at which Kahlon's physical presence would be required if he did not fulfill the judgment or fully comply with the specific directives from the Court.[2] *Id.* at 31.

On February 10, 2025, Kahlon filed a declaration, which substantively reiterated the representations made by his counsel at the January 10, 2025 conference and represented that he had produced (i) proof of tax payments made with respect to the Property; (ii) accessible statements from checking and money market accounts held in the name of the Company at HSBC; and (iii) proof of expenses and costs related to the SEC investigation. *See* Dkt. No. 122 ¶¶ 10, 16–17, 21.[3] Kahlon also represented that the Company never prepared, and was never

---

[2] The conference was adjourned to February 25, 2025, on Plaintiff's counsel's request and on the consent of Kahlon's counsel. *See* Dkt. No. 120.

[3] The original declaration filed by Kahlon was missing a page, skipping from paragraph 21 to paragraph 24 in the last two pages. *See* Dkt. No. 119. As a courtesy, Court staff promptly reached out to Kahlon's counsel by e-mail to apprise him of the issue and directed him to re-file the document, but counsel did not respond to the Court message and did not file the full declaration until after the February

obligated to prepare, corporate tax returns; has had no active trading operations since 2011; no active bank or other financial accounts since 2015; and, other than the Property, held no assets since its open trading positions became worthless upon receipt of the notice of the SEC's investigation. *Id.* ¶¶ 7, 23. Kahlon did not, however, represent that the documents and records turned over to the SEC were destroyed and/or otherwise outside of his possession, control, or custody, and did not provide detailed information regarding the Company's business activities and investments in order to assess whether the distributions made to Sigalit were equitable in accordance with her part-ownership. *See id.* ¶¶ 5 (describing the Company's business activities as including the purchase and sale of shares of penny stock companies and the acquisition of real estate), 15; *see also* Dkt. No. 136-6 at Kahlon Supp Production 000001–08.

On February 25, 2025, the Court held a conference at which only counsel appeared, not Kahlon personally, in contravention of the Court's prior directive at the January 10 conference that Kahlon was required to be present if he did not fully comply with the Court's instructions regarding his accounting.[4] *See* Feb. Tr. at 10–11. At the conference, counsel for Sigalit argued that the supplemental materials produced by Kahlon as outlined in his February 10 declaration were, once again, deficient in several respects, including that Kahlon had still simply failed to actually produce a verified statement of account, any trading statements documenting the penny

---

25, 2025 conference, after being admonished directly by the undersigned. *See* Dkt. No. 128 ("Feb. Tr.") at 4.

[4] Counsel for Kahlon represented that, while he disagreed that the declaration was deficient, Kahlon had intended to be at the conference but was bedridden with a fever and advised counsel that morning that he was not going to be able to attend. Feb. Tr. at 11. The Court ordered Kahlon to file a sworn affidavit, under penalty of perjury, attaching any relevant supporting documentation, regarding the reason why he failed to appear at the February 25 conference, and to file such affidavit no later than February 28, 2025. Dkt. No. 121. Based on Kahlon's failure to comply, on March 3, 2025, the Court entered sanctions against Kahlon. Dkt. No. 123. A few days later, on March 5, 2025, the Court reconsidered and vacated the sanctions against Kahlon in light of certain personal and confidential information submitted by Kahlon's counsel directly to the Court and with the consent of Sigalit's counsel. Dkt. No. 124.

stock trades facilitated by the Company, or any itemized information to substantiate the figures reflected in an unaudited Schedule C. *See id.* at 5–8. The Court agreed. *See id.* at 20–21. Moreover, in response to counsel for Kahlon reiterating the assertion that the $10 million consideration is unrelated to the Property, the Court found, in light of the entire history of this action, that contempt proceedings and other dispositive relief were warranted, given "the entirely insufficient participation of [Kahlon] and repeated violation of both Judge Torres' and [the undersigned's] orders" and set a briefing schedule for the Yehudas' instant motion. *Id.* at 16, 18–19.

On May 13, 2025, the Yehudas filed their motion for sanctions and other related relief. Dkt. No. 133. The motion is unopposed. The Court ordered Kahlon to file an opposition no later than June 10, 2025. Dkt. No. 131. Over a month later, after receiving no communications from Kahlon or his counsel, on July 11, 2025, Kahlon filed a "notice of motion," back dated to June 20, 2025. Dkt. No. 140. No supporting memorandum of law or other materials were filed. On July 11, 2025, counsel for the Yehudas filed an application for attorney's fees and costs, including an itemized billing record, which was amended and supplemented, with the Court's permission, on August 15, 2025. Dkt. Nos. 138, 143.

On September 4, 2025, Kahlon's most recent counsel, David Haft, moved to withdraw, citing irreconcilable differences with his client. Dkt. No. 144, 145. An order granting the motion will be entered separately from this Opinion. Mr. Haft is the fourth attorney to withdraw from representing Kahlon in the course of this matter, and at least the second to do so due to irreconcilable differences. *See* Dkt. Nos. 70, 92, 126.

## DISCUSSION

The through line of the various excuses, changing explanations, and insufficient submissions proffered by Kahlon is that he has been willfully and repeatedly noncompliant with this Court's orders and his "conduct is entirely inconsistent with a litigant who is interested in . . . seeing this litigation come to an appropriate conclusion." *See* Feb. Tr. at 16. Accordingly, sanctions are warranted, as described *infra*, and the Court dismisses the counterclaims under its inherent authority to impose sanctions and for failure to prosecute under Rule 41 of the Federal Rules of Civil Procedure.

## I.    KAHLON IS IN CIVIL CONTEMPT AND SANCTIONED ACCORDINGLY

Under Rule 70(e) of the Federal Rules of Civil Procedure, a court may hold a disobedient party in contempt in order to enforce a judgment for a specific act. Fed. R. Civ. P. 70(e). "A court [also] has the inherent power to hold a party in civil contempt in order to enforce compliance with an order of the court or to compensate for losses or damages." *Barbera v. Grailed, LLC*, No. 24-CV-03535 (LJL), 2025 WL 2098635, at *15 (S.D.N.Y. July 25, 2025) (quoting *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981))[5]; *see also* 18 U.S.C. § 401. "The contempt power serves to protect the due and orderly administration of justice and to maintain the authority and dignity of the court." *Barbera*, 2025 WL 2098635, at *15 (quoting *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016)). To hold an alleged contemnor in contempt, "the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that that order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

the order." *Id.* (quoting *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995)); *see also*

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645,

655 (2d Cir. 2004) (describing the third finding as "the contemnor has not diligently attempted to

comply in a reasonable manner").[6]

The procedural history of this action reflects Kahlon's gross noncompliance with the

judgment entered against him and the Court's subsequent orders thereto.  The Court has

witnessed first-hand Kahlon's flagrant disobedience of this Court's clear and unambiguous

orders and directives, primarily his persistent failure to produce a full and verified accounting.

Kahlon has plainly refused to make any reasonably diligent attempt to comply with the judgment

entered against him.  To date, Kahlon has not provided a sufficient excuse or justification for his

failure to obtain a verified accounting or explained why he will not and has not produced

underlying materials which could be used to verify the very limited documents he has produced.

Moreover, Kahlon has similarly foregone the opportunity to be heard as to why sanctions should

not be entered against him or why he should not be found in civil contempt by failing to oppose

the Yehudas' motion.  Accordingly, the undisputed history of Kahlon's conduct during the

---

[6] The Yehudas also argue that dismissal of the counterclaims and an award of attorney's fees and
costs is warranted as a motion for discovery sanctions under Rule 37 of the Federal Rules of Civil
Procedure.  *See* Dkt. No. 137 ("Mot.") at 10–11.  The reasoning set forth herein justifying contempt
sanctions would apply with equal force to discovery sanctions under Rule 37.  *See Johnson v. Clearview
AI, Inc.*, No. 23-CV-02241 (KPF), 2025 WL 1865220, at *3 (S.D.N.Y. July 2, 2025) (summarizing a
district court's latitude and relevant considerations in imposing discovery sanctions, which may include
striking the pleadings in whole or in part or dismissing the action or proceeding in whole or in part, and
must typically include an award of reasonable expenses, including attorney's fees, caused by the failure).
However, the dismissal of the counterclaims and award of attorney's fees and costs are more
appropriately treated as contempt sanctions pursuant to Rule 70(e), given the direct relationship between
the equitable accounting claim and the counterclaims.  *See* Jan. Tr. at 13 (describing the counterclaims as
more of an "offset" of Sigalit's entitlement to distributions); *but see* Fed. R. Civ. P. 69(a)(2) ("In aid of
the judgment or execution, the judgment creditor. . . . may obtain discovery from any person—including
the judgment debtor—as provided in these rules or by the procedure of the state where the court is
located.").

pendency of this action warrants holding him in civil contempt. *See, e.g.*, *SEC v. Durante*, 641 F. App'x 73, 76–77 (2d Cir. 2016) (affirming the district court's contempt finding where the contemnor had a "long history of deceit in concealing income and assets that might be used to satisfy the [j]udgment"); *Ginter Logistics Serv. Co. v. ACH Freight Forwarding, Inc.*, No. 07-CV-08677 (LAP), 2010 WL 4455402, at *2–3 (S.D.N.Y. Oct. 21, 2010) ("The facts support the conclusion that the [f]inal [j]udgment and subpoena were clear and unambiguous, that there is proof of non-compliance, and that [the contemnor] was not reasonably diligent in its attempts to comply with the order.").

The Yehudas argue that appropriate sanctions for Kahlon's behavior include: (1) finding that Sigalit is entitled to at least $7,700,000 in distributions for 2008 through 2011; and (2) awarding the Yehudas' attorney's fees and costs. Mot. at 8, 10. The Court agrees in part—Sigalit is entitled to $3,335,256 as a distribution for 2010, and the Yehudas are entitled to an award of their attorney's fees and costs. The Court further holds that dismissal of all of Kahlon's counterclaims is warranted, and the Yehudas' motion under Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings on certain of the counterclaims is therefore moot.

### A. Sigalit Is Entitled to $3,355,256 as a Distribution for 2010

Kahlon's refusal to provide a verified accounting has prevented Sigalit from collecting on the judgment entered in her favor. *See, e.g.*, *Warshaw Grp. Inc. v. Materialink LLC*, 23-CV-01916 (JPC), 2025 WL 1745030, at *2 (S.D.N.Y. June 24, 2025) (holding a defaulting defendant in contempt where its failure to comply "threaten[ed] to impede [the plaintiff's] ability to collect on its judgment"). Obtaining a verified accounting was the threshold piece of her equitable contribution claim—without the verified accounting, and based on the limited documents actually produced by Kahlon, the Court is hamstrung in awarding the full claimed amount of Sigalit's portion of Kahlon's unauthorized or unmatched distributions, or the property, other

assets, and value of benefits received, accrued, or taken by Kahlon. *See Sigalit*, 2023 WL 5609099, at *2.

Notwithstanding these evidentiary gaps, in their moving papers, the Yehudas argue that Sigalit is entitled to $7,700,000 by drawing several adverse inferences. First, the Yehudas calculated that the distribution she is owed for 2010 is $3,355,256, by comparing the distribution to which Sigalit is entitled according to the 2010 Schedule C produced by Kahlon (Dkt. No. 136-6 at Kahlon Supp Production 000001–02 (the "2010 Schedule C" or "2010 Sched.")) with the distribution she actually received as reflected in her 1099 form for that year (Dkt. No. 136-7 at KAHLON-VERIFICATION 0010 (the "2010 1099")). *See* Mot. at 8. In reaching this figure, the Yehudas disregard the $4,420,343 for "cost of goods sold," which is solely attributed to "other costs." 2010 Sched. at 2. The Yehudas contend that this figure is "exceedingly large" given that roughly half of that should be disregarded because it presumably includes the distribution she received that year ($2,200,000), which is otherwise not accounted for in the 2010 Schedule C and would not constitute an operating expense because it would be deductible. *See* Mot. at 8. The Yehudas further argue that the remaining unaccounted for "other costs" ($2,220,343) should be disregarded, given Kahlon's failure to verify or otherwise produce any underlying material which could support this figure. *Id.* In light of the Court's prior finding that Kahlon is in civil contempt of the judgment entered against him, the Court agrees to draw an adverse inference against Kahlon and preclude him from deducting the "cost of goods sold" for purposes of determining Sigalit's distribution share. *See, e.g.*, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-01318 (GBD) (BCM), 2018 WL 4760345, at *13 (S.D.N.Y. Sept. 28, 2018) (drawing an adverse inference against defaulting defendants for

purposes of a pending damages inquest with respect to documents and information they failed to produce).

Therefore, Sigalit's distribution share would be $5,555,256, which is 50% of the Company's net income, $11,110,512, a figure derived from the total gross receipts with no reduction for cost of goods sold. *See* 2010 Sched. at 1. Because Sigalit only received $2,200,000 as her distribution for 2010, she is entitled to $3,355,256. *See* 2010 1099.

The Yehudas further argue that the Court should award distributions for 2008, 2009, and 2011 by (i) applying an "underpayment ratio," meaning the differential between the amount Sigalit was paid and the amount she was entitled to in 2010, to the distributions reported on the 1099s for 2008 and 2009; and (ii) awarding 50% of the Company's net income for 2011 as reported on the 2011 Schedule C. Mot. at 8–9. The Yehudas concede, however, that this "extrapolation is not as certain," although they argue that Kahlon was legally obligated to maintain accurate books and records for the Company and it appears he failed to do so. *Id.* at 9. The Court declines to enter judgment for a further award of distributions for 2008, 2009, and 2011 because there is an insufficient evidentiary basis to infer that Kahlon underpaid Sigalit in those years or otherwise engaged in a pattern of underpaying Sigalit. *See, e.g.*, *Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 657–58 ("[Civil Contempt] sanctions may not be imposed as a purely punitive measure. . . . 'A sanction may,' as here, 'be both coercive and compensatory. Yet, some proof of loss must be present to justify its compensatory aspects.'") (quoting *N. Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989)).

Accordingly, the Court will enter judgment on Sigalit's equitable accounting claim in the amount of **$3,355,256**.

### B. Kahlon Shall Reimburse the Yehudas' Attorney's Fees and Costs

Kahlon's persistent noncompliance also contributed substantially to the unnecessarily protracted duration of this litigation. For all the reasons noted above, and on the record at various proceedings in this matter, Kahlon's misconduct was willful and in bad faith, and accordingly, an award of the Yehudas' attorney's fees and costs is warranted. *See, e.g., A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, Nos. 96-CV-09721 (PKL) (THK), 98-CV-00123 (PKL) (THK), 2002 WL 2012618, at *11 (S.D.N.Y. Sept. 3, 2002); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) ("[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 258–59 (1975)); *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 142 (2d Cir. 2023) ("[O]ur 'case law is clear that a district court may not impose attorney's fees as a sanction without first making an explicit finding that the sanctioned party, whether a party or a party's counsel, acted in bad faith in engaging in the sanctionable conduct.'") (quoting *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) (per curium)).

"The traditional approach to determining a fee award is the 'lodestar' calculation, which is the number of hours expended multiplied by a reasonable hourly rate." *Hudson Furniture, Inc. v. Mizrahi*, No. 20-CV-04891 (PAC) (RWL), 2024 WL 565095, at *9 (S.D.N.Y. Feb. 7, 2024), *report and recommendation adopted*, 2025 WL 1453584 (S.D.N.Y. May 21, 2025); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011) (describing a district court's "broad discretion in determining the amount of a fee award"). The lodestar creates a "presumptively reasonable fee." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "[T]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hudson Furniture, Inc.*, 2024 WL 565095, at

*9 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Yehudas have submitted a declaration from counsel, contemporaneous records of time expended, and an accountant's invoice. Dkt. Nos. 138 & 143. Kahlon has not disputed the rate requested by counsel or otherwise opposed the fee application.

*First*, the Court finds counsel's proposed hourly rate of $570 is within the prevailing market rate for lawyers in this District of reasonably comparable skill, experience, and reputation, who practice commercial litigation. Courts in this District have held that hourly rates ranging from $250 to $1,260 for attorneys practicing commercial litigation were reasonable. *See Tessemae's LLC v. Atl. Cap. LLC*, No. 18-CV-04902 (KHP), 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) (involving state law claims and collecting cases); *see, e.g.*, *Bhungalia Family, LLC v. Agarwal*, 317 F. Supp. 3d 727, 739–40 (S.D.N.Y. 2018) (finding $495 hourly rate was reasonable for an attorney with 20-plus years of experience practicing in commercial litigation in this District); *Weiwei Gao v. Sidhu*, No. 11-CV-02711 (WHP) (JCF), 2013 WL 2896995, at *6 (S.D.N.Y. May 7, 2013), *report and recommendation adopted*, 2013 WL 2896995 (June 13, 2023) (finding $550 hourly rate was reasonable for a breach of contract case where the attorney had primary responsibility). Counsel for the Yehudas, Steven Haffner, has nearly 40 years of litigation experience, specializing in complex commercial litigation, and practiced at a reputable global law firm prior to starting his own firm. *See* Dkt. No. 138 ¶ 5. In light of Haffner's experience, $570 is a reasonable hourly rate.

*Second*, as a general matter, the Court finds that the nature and quality of the work submitted by counsel in connection with this litigation, including counsel's success on the contempt motion, supports a finding that the amount of time expended on this matter is reasonable. Mr. Haffner's diligence in attempting to move this matter forward and resolve

15

disputes without court intervention, under the very difficult circumstances created by Kahlon's contumacious behavior, was exemplary. *See Wells Fargo Tr. Co., N.A. v. Fast Colombia S.A.S.*, No. 23-CV-00603 (PGG) (RWL), 2023 WL 8591953, at *9 (S.D.N.Y. Oct. 16, 2023), *report and recommendation adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) ("The relevant issue is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.") (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). However, certain work done on this matter is attributed to David Gordon, whom counsel has not made any representations as to the hourly rate charged, not Haffner. *See* Dkt. No. 138-1 at 2 (Gordon indicated as billing for work done on May 9, 10, and 12, 2025). Accordingly, the Court will not award attorney's fees for the work done by Gordon and will not include the 3.3 hours expended which are attributed to him. As to the work done by Haffner, the contemporaneous time records submitted comport with the Court's own experience with this litigation and its review of the record. *See* Dkt. No. 138-1. Accordingly, the Court finds that 67.80 hours is a reasonable amount of time expended on this matter over the past 15 months. *See, e.g.*, *Hudson Furniture, Inc.*, 2024 WL 565095, at *11 (finding nearly 700 hours expended over the course of more than three years was reasonable given the work performed included, *inter alia*, repeated motions to compel the defendants to comply with their litigation obligations and a motion for sanctions); *Tessemae's LLC*, 2019 WL 2635956, at *5.

*Finally*, the Court will award the reasonable out-of-pocket expenses incurred by counsel for the Yehudas—$5,044.35—including costs of photocopies, transportation, retaining an accountant, and court reporters. Dkt. Nos. 138 ¶ 2 (Haffner declaration), 138-1 at 3 (listing costs), 143 (accountant invoice); *see Hudson Furniture, Inc.*, 2024 WL 565095, at *13 ("To be

awarded, costs must be properly substantiated through invoices or receipts, or a sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items.") (quoting *Rosales v. Gerasimos Enterprises Inc.*, No. 16-CV-02278, 2018 WL 286105 (RA), at *2 (S.D.N.Y. Jan. 3, 2018)); *see, e.g.*, *Bhungalia Family, LLC*, 317 F. Supp. 3d at 745 ("Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.") (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).

In sum, the Yehudas are awarded $38,646 in attorney's fees, representing 67.80 hours of work at a $570 hourly rate, plus $5,044.35 in expenses, for a total award of **$43,690.35**.

### C. Kahlon's Counterclaims Are Dismissed

In *Rossbach v. Montefiore Medical Center*, the Second Circuit provided recent additional guidance for courts when considering case-terminating or "terminal" sanctions. 81 F.4th at 137–42 (2d Cir. 2023). The Court held that a district court could impose terminal sanctions under its inherent power, where a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 141 (quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2012)). The Court cautioned, however, that "[t]he sanction of dismissal with prejudice should be used only upon a finding of willfulness, bad faith, or reasonably serious fault." *Id.* (quoting *Mitchell v. Lyons Pro. Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013)). As held *supra*, the Court finds that Kahlon acted willfully and in bad faith, given his repeated failure to produce a verified accounting following Judge Torres' summary judgment order and his persistent noncompliance with this Court's orders in the years since. Therefore, dismissal of the counterclaims is warranted as a terminal sanction under this Court's inherent power.[7]

---

[7] Moreover, as indicated *supra*, Kahlon's limited production of documents in an incremental fashion over ten months, *see* Dkt. Nos. 109, 122, 132, which to this day is still not compliant with Judge

Moreover, dismissal of the counterclaims is warranted in light of Kahlon's failure, as plaintiff on the counterclaims, to prosecute those claims and comply with this Court's orders. *See* Fed. R. Civ. P. 41(b); *see, e.g.*, *Glob. Refining Grp., Inc. v. PMD Analysis Inc.*, Nos. 21-CV-00532 (JLR) (BCM), 21-CV-09182 (JLR) (BCM), 2023 WL 5733968, at *17–18 (S.D.N.Y. Aug. 15, 2023), *report and recommendation adopted*, 2023 WL 5734171 (Sept. 5, 2023); *Xiamen ITG Grp. Corp. v. Peace Bird Trad. Corp.*, No. 19-CV-06524 (DLI) (ST), 2024 WL 5399245, at *18–20 (E.D.N.Y. Aug. 30, 2024). Dismissal under Rule 41(b) is "a harsh remedy to be utilized only in extreme situations." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001). A district court considering such a dismissal must weigh the following factors:

> (1) The duration of the [counterclaimant's] failure to comply with the court order, (2) whether [the counterclaimant] was on notice that failure to comply would result in dismissal, (3) whether the [counterclaim defendants] are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the [counterclaimant's] interest in receiving a fair c hance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014). No single factor is dispositive. *Id.*

Here, all five factors weigh in favor of dismissal. *First*, Kahlon has failed to comply with Judge Torres' judgment, and the Court's orders thereto, for over a year, *see, e.g.*, Dkt. No. 102 (directing Kahlon to file a verified accounting on or before September 30, 2024), and he has done substantively nothing to advance his claims or defend against the instant motion. At the January 2025 conference, counsel for Kahlon readily acknowledged that the financial records of the Company were "essential" to the "case in chief with respect to [Kahlon's] counterclaims."

---

Torres' judgment, constitutes a pervasive and enduring failure to comply with discovery, meriting dispositive sanctions such as dismissal or default, under Rules 16(f) or 37(b)(2)(A). *See, e.g.*, *Ramgoolie v. Ramgoolie*, 333 F.R.D. 30, 38 (S.D.N.Y. 2019) (finding seven months of noncompliance "more than enough time to merit dispositive sanctions").

Jan. Tr. at 12. Kahlon's repeated failure to provide a verified accounting, or essentially any underlying records or documents, is directly counter to the active prosecution of his counterclaims. *Second*, Kahlon was on notice that dismissal of his counterclaims was possible. *See* Feb. Tr. at 17–18 ("I agree with you that to the extent all of these issues are interconnected in terms of the contempt and repeated violation of court order[s] . . . and the substantive issues . . .[,] it seems to me you're well positioned to [seek a] . . . dismissal of the counterclaims, for a complete failure to prosecute the matter and participate in discovery in good faith[.]"). *Third*, "[p]rejudice to [the Yehudas] may be presumed, as a matter of law, from [Kahlon's] . . . abdication of his responsibilities as a party to this action." *See Glob. Refining Grp. Inc.*, 2023 WL 5733968, at *18; *see also Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005) ("Where, as here, [the counterclaimant's] delay is unreasonable, prejudice may be presumed as a matter of law."). *Fourth*, Kahlon has received more than a fair chance to be heard and has foregone the multiple opportunities the Court has extended to him to provide a verified accounting, to produce the complete underlying documents, or to explain in an acceptable way why those documents did not exist or were no longer available, *see, e.g.*, Jan. Tr. at 26 ("Frankly, out of an abundance of grace, I'm going to give Mr. Kahlon 30 days . . . to produce [an accounting].", as well as the opportunity to oppose the instant motion, *see* Dkt. No. 140. The balance between the interests of the Court and Kahlon clearly weighs in favor of the Court's interest in alleviating excess cases on the docket, given this case has been pending for almost four years. *Finally*, given that Kahlon has persistently ignored this Court's orders, it is clear that "no lesser sanction than dismissal would effectively address his failure to prosecute." *Glob. Refining Grp. Inc.*, 2023 WL 5733968, at *18 (quoting *Garcia v. Thomas*, No. 21-CV-

00636 (GBD) (BCM), 2023 WL 3354757, at *4 (S.D.N.Y. Apr. 23, 2023), *report and recommendation adopted*, 2023 WL 3346789 (S.D.N.Y. May 10, 2023).

Therefore, dismissal of the counterclaims is also warranted for Kahlon's failure to prosecute the claims or to comply with this Court's orders.

### D. A Daily Fine to Compel Compliance with this Judgment Is Warranted

The Court may also impose a contempt sanction in the form of a fine payable to the Court in order to compel compliance with this judgment. *See Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 657 ("[T]he court has broad discretion to design a remedy that will bring about compliance.") (quoting *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)). In considering the character and magnitude of the harm threatened by continued disobedience—which is solely monetary—and the probable effectiveness of any suggested sanction in bringing about compliance, as evidenced by Kahlon's prompt response to the Court's previously withdrawn entry of sanctions, *see* Dkt. Nos. 123 & 124—the Court shall impose a daily fine of **$150.00** upon Kahlon until he complies with this judgment, subject to the conditions described further below. *See, e.g.*, *Ginter Logistics Serv. Co.*, 2010 WL 4455402, at *3; *Warshaw Grp Inc.*, 2025 WL 1745030, at *2.

### CONCLUSION

For the foregoing reasons, the Court (i) awards **$3,355,256** to Sigalit on her equitable accounting claim; (ii) awards a total of **$43,690.35**, including $38,646 in attorney's fees and $5,044.35 in expenses, to the Yehudas; (iii) dismisses Kahlon's counterclaims as a terminal sanction under the Court's inherent power and under Rule 41(b) for failure to prosecute and to comply with this Court's orders; (iv) and imposes a daily fine of **$150.00** upon Kahlon to compel compliance with this judgment. The daily fine payments shall begin **two weeks from the date**

**of this Opinion and Order**, and only if Kahlon has failed to pay the judgment owed to Sigalit and the award of attorney's fees and costs to the Yehudas prior to that date.

Counsel to the Yehudas is hereby ORDERED to file a letter with the Court on **October 20, 2025**, informing the Court whether the judgment has been paid in full. Counsel to Kahlon is hereby ORDERED to serve a copy of this Opinion on Kahlon electronically and by a mail delivery service that provides proof of delivery, and file proof of service on the docket within two business days. Any order allowing counsel to withdraw does not obviate compliance with this directive.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 133, 138, and 143; enter judgment accordingly; and CLOSE this case.

Dated: October 6, 2025
      New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge