**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

YEHUDA SIGALIT,                                      :
                                                     :
        Plaintiff,                                  :
                                                     :        Civil Action No.: 1:21-cv-08921
    v.                                           :
                                                     :        Judge: Hon. Margaret M. Garnett
                                                     :
JOSSEF KAHLON,                                       :
                                                     :
        Defendant.                                 :
                                                     :
------------------------------------------------------------------x

**MEMORANDUM OF LAW IN REPLY**
**IN FURTHER SUPPORT**
**OF DEFENDANT'S MOTION**
**PURSUANT TO FED. R. CIV. P. 60(b)(1) AND 60(b)(6)**

**RESPONSE TO COUNTER FACTUAL TIMELINE**

Plaintiff, in opposition to Mr. Kahlon's motion, presents a "Counter-Statement of Facts"

asserting that Mr. Kahlon began his story "in the middle, picking up the narrative of his contempt

with an April 14, 2025[1] court conference," and further contends that, "[b]y the time of the

conference," Mr. Kahlon was in "unexcused disobedience" of Judge Torres' August 30, 2023

Order (ECF No. 82) directing that he provide Plaintiff with a verified statement of account, as

well as "at least two conference orders" directing compliance with that order. (ECF No. 177.)

Mr. Kahlon strongly disagrees with this characterization, which is both incomplete and

misleading in its framing of what occurred and why.

Judge Torres issued her summary judgment order on August 30, 2023. (ECF No. 82). The

order granted Plaintiff's motion but did not contain any directives. Mr. Kahlon moved for

---

[1] There was no April 14, 2025 conference, nor does the moving papers mention any. This reference is likely to the transcript of the proceedings from a February 25, 2025 conference.

reconsideration on September 13, 2023 (refiled September 20, 2023), and the motion was denied

on December 14, 2023. (ECF Nos. 84, 90). The Court then directed the parties to submit a joint

letter updating the "status of settlement negotiations" and whether they intended to proceed to

trial. (ECF No. 91). No mention was made with respect to the accounting. Shortly thereafter, Mr.

Kahlon's first counsel moved to withdraw. (ECF No. 92). On April 25, 2024, Mr. Haft filed a

notice of appearance as counsel for Mr. Kahlon. (ECF No. 97).

After Mr. Haft first appeared, his co-counsel Mr. Minyao Wang filed a letter with the

Court in which the "Parties propose that Defendant's verified statement of account and

supporting documents (if any) be submitted by September 30, 2024; Plaintiff's points of

objection be filed by November 15, 2024; and, depending on the accounting items and objections

and whether any require a hearing, the Court (either a judge or a referee) can schedule limited

discovery and evidentiary hearings." (ECF No. 100, 1).

The Court ordered a conference[2] on May 28, 2024, and subsequently issued an order

directing Mr. Kahlon to "file a verified statement of accounting and any supporting documents

on or before **September 30, 2024."** (ECF No. 102).

This was the first time that a specific directive was issued to Mr. Kahlon with respect to

the issue of accounting.

On September 25, 2024, Mr. Wang filed a letter with the Court asking for additional time

citing "competing professional and personal obligations for myself and my co-counsel, David

Haft." (ECF No. 107).

Then on October 18, 2025, Mr. Haft filed a notice with the Court with respect to the

accounting. (ECF No. 109). Plaintiff disputed the sufficiency of the production, and the Court set

---

[2] There is no transcript of the proceedings with respect to that conference.

a January 10, 2025 conference to address the "dispute regarding the statement of accounting." (ECF No. 116).

At the January 10, 2025 conference, the Court criticized Mr. Haft with respect to the production, but specifically indicated that the Court would "give Mr. Kahlon 30 days to produce in whatever form and under what auspices they exist any documents that he has or can get access to that can satisfy the five categories set forth in the complaint of the equity accounting that is being sought that was ordered by Judge Torres." (ECF No. 177, 26).

As Mr. Kahlon presented in the moving papers, in "December 2024, [he] provided Mr. Haft with access to my company email account so that he could review and collect communications and records responsive to discovery requests, including communications with accountant and the company's comptroller." (ECF No. 171-2, ¶5; ECF No. 171-3). Again, in December 2024, Mr. Kahlon texted Mr. Haft instructing him "Just so you know if anything i want to give him all the of the accounting" and Mr. Haft responded with "Ok thank you. Will let you know." (ECF No. 171-2, ¶6; ECF No. 171-4). And then in January 2025, Mr. Kahlon repeatedly asked Mr. Haft if he needed anything and Mr. Haft responded with reassurances that everything was in order. (ECF No. 171-2, ¶¶ 8-22). When on January 23, 2025, Mr. Kahlon asked if he was going to be "late on anything," Mr. Haft said that they were actually "ahead of schedule." (ECF No. 171-2, ¶19;  ECF No. 171-12).

In short, the timeline presented in Mr. Kahlon's declaration goes as far back as December 2024, *before* the Court's January 10, 2025 conference.

Thus Contrary to Plaintiff's statements, Mr. Kahlon's motion papers *extensively* highlight how he both attempted to provide Plaintiff with the financial records of the company, starts from December 2024 (not April 2025), and affirmatively shows Mr. Kahlon providing Mr. Haft with

hundreds of responsive documents in 2024 and directing Mr. Haft to produce them to Plaintiff.

## ARGUMENT

### I.    MR. KAHLON IS NOT PRECLUDED FROM SEEKING RULE 60(B) RELIEF

Defendant seeks vacatur under Rule 60(b)(1) and (b)(6) because Plaintiff's May 13, 2025 dispositive motion was treated as unopposed as a result of former counsel's failure to file any substantive opposition.

Plaintiff attempts to sidestep the Rule 60(b) standards by arguing that Defendant is precluded by "unchallenged explicit findings" in the contempt proceedings and/or by the Court's order denying Defendant's request to enlarge/reopen the time to appeal.

"[I]ssue preclusion applies only in the presence of the following four elements: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the parties had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Bouchard Transp. Co. v Long Is. Light. Co.*, 807 F App'x 40, 42 [2d Cir 2020] (cleaned up).

None of these requirements is satisfied.

### A.  Issue preclusion does not apply because the "identical issue" was never raised or litigated in previous proceedings

The issue presented here is whether counsel's negligence and abandonment caused the dispositive motion to go unopposed and whether that failure constitutes "excusable neglect" under Rule 60(b)(1) and/or "extraordinary circumstances" under Rule 60(b)(6). That issue was not litigated or decided in the contempt proceedings, which addressed compliance with discovery-related directives under a different legal standard and did not adjudicate attorney

abandonment or the absence of substantive opposition to Plaintiff's dispositive motion.

Nor was it litigated or decided in Defendant's motion to enlarge/reopen the time to appeal. That motion was narrowly focused on notice of the October 6, 2025 Opinion and Order—i.e., whether Mr. Haft informed Mr. Kahlon of the decision, the entry of judgment, and/or the end of Mr. Haft's representation—and whether the technical requirements for reopening an appellate deadline were met. (ECF No. 166-1 at 1.) It did not adjudicate the broader Rule 60(b) question presented here: whether counsel's failure to file substantive opposition and related nonfeasance warrants relief from the underlying judgment.

### B. Mr. Kahlon did not have a full and fair opportunity to litigate these issues previously

Plaintiff also cannot satisfy the "full and fair opportunity to litigate" element. The core of this motion is that Mr. Kahlon was deprived of meaningful advocacy at the dispositive stage by counsel's negligence and malfeasance. Where a litigant is represented, the mechanism for litigating issues—filing opposition papers, submitting declarations and exhibits, requesting hearings, and building a record—runs through counsel. Here, any meaningful presentation of counsel's own abandonment necessarily depended on Mr. Haft, the very attorney whose nonfeasance is at issue. Plaintiff's position therefore creates a Kafkaesque catch-22: Mr. Kahlon is supposedly barred for not having raised counsel's negligence earlier, even though the reason it was not raised earlier is that the negligent attorney controlled (and failed to perform) the acts required to raise it.

In any event, neither the contempt proceedings nor the appeal-timing motion provided a vehicle to litigate Rule 60(b) excusable neglect and abandonment on a developed evidentiary record. This motion is the first time those issues have been presented to the Court with

supporting evidence and by substitute counsel for adjudication under the Rule 60(b) standards. Collateral estoppel therefore does not apply.

## II.     MR. KAHLON HAS ESTABLISHED "EXCUSABLE NEGLECT" UNDER RULE 60(b)(1)

Rule 60(b)(1) permits relief from a final order or judgment for "mistake, inadvertence, surprise, or excusable neglect." "Excusable neglect" encompasses situations where a missed deadline is "attributable to negligence." *Dixon v. A Better Way Wholesale Autos, Inc.*, 692 F. App'x 664, 664 [2d Cir. 2017]. In assessing whether neglect is "excusable," courts consider: "(1) the danger of prejudice to the [non-movant], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.* at 664–65. Of these factors, the Second Circuit "focuses closely on the third factor." *Id.*

As set forth in Mr. Kahlon's moving papers, Mr. Kahlon establishes each factor: there is no cognizable prejudice to Plaintiff with having their motion opposed; the delay is modest and has minimal impact; the reason for the default lies in former counsel's failure to file any substantive opposition and was not within Mr. Kahlon's reasonable control; and there was no strategic motive or bad faith.

Plaintiff in opposition fails to rebut Defendant's evidentiary showing.

## III.    MR. KAHLON HAS ESTABLISHED "EXRAORDINARY CIRCUMSTANCES" UNDER RULE 60(b)(6)

Alternatively, Mr. Kahlon has established a basis for relief under Rule 60(b)(6), which permits vacatur for "any other reason that justifies relief" where "extraordinary circumstances" render enforcement of the judgment manifestly unjust.

As Mr. Kahlon noted in the moving papers, and as Plaintiff acknowledges as a general proposition, "mental illness or other debilitating cause" leading to abandonment may constitute "extraordinary circumstances" warranting Rule 60(b)(6) relief. (ECF No. 177, 6).

Here, the evidentiary record contains multiple instances in which Mr. Haft represented that he was dealing with serious medical issues, including testing, emergency room visits, and hospitalization, during the period when opposition to Plaintiff's dispositive motion was due and should have been prepared. (ECF No. 171-2 ¶¶ 41–44; ECF Nos. 171-24, 171-25, 171-26.) Those communications align with the functional reality reflected in the docket: despite a court-ordered opposition deadline, no opposition was filed.

In addition, Mr. Kahlon respectfully requests that the Court take judicial notice of ECF No. 124, in which Mr. Haft provided "certain confidential personal information" to the Court in connection with his failure to timely file Mr. Kahlon's declaration. That entry further corroborates that Mr. Haft's failures were not isolated, but part of a broader pattern of incapacity and nonperformance affecting core litigation obligations.

Mr. Kahlon does not purport to know the full details of Mr. Haft's medical circumstances, and he does not ask the Court to adjudicate them beyond what the record supports. But the record does support the operative point for Rule 60(b)(6): Mr. Haft's repeated illness-related communications and repeated failures to perform basic litigation functions resulted in constructive abandonment of Mr. Kahlon at a dispositive juncture. Under these circumstances, enforcing a judgment entered on an unopposed record would be manifestly unjust, and the Court should grant Rule 60(b)(6) relief in the alternative.

## IV.    MR. KAHLON HAS DEMONSTRATED A MERITORIOUS DEFENSE

Plaintiff opposes Mr. Kahlon's motion under Rules 60(b)(1) and 60(b)(6) on the ground that he has "failed to demonstrate a potentially meritorious defense." (ECF No. 177 at 14.) Yet, in the same memorandum, Plaintiff acknowledges—albeit in a footnote—that "[b]eginning at page 13 of Dft.'s MOL, Kahlon asserts arguments in opposition to Sigalit's May 13, 2025 motion." (ECF No. 177 at 15.)

Mr. Kahlon's meritorious defenses are in fact set forth in detail in his moving brief, beginning at the cited section. (ECF No. 171-1 at 19–34.) There, Mr. Kahlon advances substantial merits defenses to Plaintiff's May 13, 2025 motion, including multiple independent grounds why Plaintiff's requested relief is legally unsupported, factually disputed, and grossly overbroad; why contempt-type relief and adverse inferences were unwarranted; and why Plaintiff cannot obtain the demanded money judgment through a sanctions motion. (*Id.*)

Plaintiff does not engage these defenses on the merits or explain why they are not meritorious. Instead, Plaintiff merely asserts—contrary to its own footnote—that no potentially meritorious defense was shown. The Court should therefore find the "meritorious defense" requirement satisfied.

## CONCLUSION

For all the foregoing reasons, Mr. Kahlon requests that his motion pursuant to Rule 60(b) be granted, and upon granting of the motion, his opposition to Plaintiff's motion be considered, and upon consideration, for Plaintiff's motion to be denied accordingly.

DATED:  March 12, 2026                    Respectfully submitted,

/s/ *Jacob Chen*
Jacob Chen
DGW Kramer LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: 917-983-2806
E-mail: jchen@dgwllp.com

***ATTORNEYS FOR MR. KAHLON***

**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMITATION**

Pursuant to the Individual Rules and Practices of the Honorable Margaret M. Garnett, I hereby certify that this Memorandum of Law complies with the applicable word-count limitation. Specifically, this Memorandum contains 2,106 words, as determined by the word-processing program used to prepare the document. This word count excludes the caption, signature block, and this Certificate of Compliance. but includes footnotes.

March 12, 2026

Respectfully Submitted,

/s/ *Jacob Chen*
Jacob Chen
DGW Kramer LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: 917-983-2806
E-mail: jchen@dgwllp.com

***ATTORNEYS FOR MR. KAHLON***